| | |
|---|---|
| 1 | Scott F. Gibson, Arizona State Bar No. #010884 |
| 2 | (Pro Hac Vice Pending) |
|   | SGibson@DentonPeterson.com |
| 3 | Jay Parmelee, SBN 274676 |
|   | Jay@DentonPeterson.com |
| 4 | **DPD | DENTON PETERSON DUNN** |
|   | ATTORNEYS & COUNSELORS AT LAW |
| 5 | 1930 N. Arboleda Road, Suite 200 |
| 6 | Mesa, Arizona 85213 |
|   | Telephone: (480) 325-9900 |
| 7 | Facsimile: (480) 325-9901 |
|   | https://arizonabusinesslawyeraz.com |
|   | *Attorneys for Plaintiffs* |

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA – UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| CG ENTERPRISES HOLDINGS, LLC, a California limited liability company; and STEPHEN M. COON, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>WSP USA, INC., a New York corporation; WSP USA BUILDINGS, INC., a New York corporation; kW MISSION CRITICAL ENGINEERING, D.P.C., a New York design professional corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 24CV00024<br><br>**Assigned to the Honorable Christopher Honigsberg – Dept. 18**<br><br>**PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PROCEEDING WITH ENFORCEMENT OF RESTRICTIVE COVENANTS AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declarations of Stephen M. Coon and Jay Parmelee; and [Proposed] Order hereon]<br><br>Complaint Filed:   January 2, 2024<br>Trial Date:             None Set |

---

1

**PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PROCEEDING WITH ENFORCEMENT OF RESTRICTIVE COVENANTS AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**

**TO ALL INTERESTED PARTIES AND TO THEIR RESPECTIVE ATTORNEYS:**

**PLEASE TAKE NOTICE** that Plaintiffs CG Enterprises Holdings, LLC ("CG") and Stephen M. Coon ("Steve") hereby apply to this Court *ex parte* for a temporary restraining order and order to show cause why a preliminary injunction should not issue restraining and enjoining Defendants WSP USA Inc., WSP USA Buildings INC., and kW Mission Critical Engineering, d.p.c. from enforcing or attempting to enforce any restrictive covenants contained in any employment or independent contractor agreements between any Defendant and Steve. The court will set a hearing upon filing of this application. Plaintiffs request a hearing as soon as the Court is available.

This Application is made on the grounds that non-compete and non-solicitation clauses affecting California business enterprises are void under Business and Professions Code § 16600, and any attempt by Defendants to enforce such a provision will cause irreparable harm to Plaintiffs. Plaintiffs are likely to succeed on the merits of the accompanying declaratory relief lawsuit, brought under Business and Professions Code § 16600.5.

This Application is based on the Complaint on file, the exhibits thereto, the Declarations of Jay Parmelee and Stephen M. Coon filed concurrently herewith, the attached memorandum of points and authorities, and on such other and further oral and/or documentary evidence as may be presented at the hearing of this *ex parte* application.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PROCEEDING WITH ENFORCEMENT OF RESTRICTIVE COVENANTS AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**

1  Counsel for Plaintiffs notified the presumed counsel for Defendants on January 16,
2  2024, via email and phone call, of this application. The presumed counsel for Defendants is
3  Todd D. Wozniak, Nipun J. Patel, and Justin Kadoura of Holland & Knight LLP, 1650
4  Market Street, Suite 3300, Philadelphia, PA 19104, todd.wozniak@hklaw.com,
5  nipun.patel@hklaw.com, justin.kadoura@hklaw.com (215) 252-9600. *See* Declaration of Jay
6  Parmelee.

8  Dated: January 16, 2024                              **DENTON PETERSON DUNN, PLLC**

10                                                      /s/ Jay Parmelee_____
                                                        Jay Parmelee
11                                                      *Attorneys for Plaintiffs*

---

3
**PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PROCEEDING WITH ENFORCEMENT OF RESTRICTIVE COVENANTS AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Relief Requested

Plaintiffs petition this Court ex parte to issue a temporary restraining order to enjoin Defendants from enforcing or attempting to enforce any restrictive covenants contained in any employment or independent contractor agreements between any Defendant and Steve. Such relief is appropriate in view of the conduct of Defendants, which filed for arbitration on the same day as Plaintiff filed this lawsuit to obtain injunctive relief. The contract between the parties allows either party to ask a court of competent jurisdiction for injunctive relief. Given that the restrictive covenants violate California law and policy, and given that CG is a California limited liability company seeking to employ Steve, the fundamental rights of Plaintiffs will be violated by any other enforcement of the restrictive covenants and irreparable harm will occur. Therefore, the Court should issue a temporary restraining order to prevent a multiplicity of actions and irreparable harm from occurring.

## II.  Factual Background

Steve is a Professional Electrical Engineer with more than fifteen years of experience in the strategic design of electrical topologies. Declaration of Stephen M. Coon ("Coon Decl.") at ¶ 4. Steve also has in-depth knowledge of cross discipline engineering in mission critical infrastructure design. *Id*., at ¶ 5. Steve has experience managing over fifty employees and growing a company from the ground up. *Id*., at ¶ 6. Steve is highly reputable in his particular field of professional electrical engineering. *Id*., at ¶ 7. CG Enterprises Holdings, LLC ("CG") is a start-up California limited liability company that Steve founded in late 2023. *Id*., at ¶ 8. Steve wishes to continue his work in mission critical engineering through CG. *Id*., at ¶ 9.

Defendants WSP USA, Inc. and WSP USA Buildings Inc. (collectively and interchangeably, "WSP"), and kW Mission Critical Engineering, d.p.c. ("kW Engineering") seek to prevent Steve from working through CG. *Id*., at ¶ 10 and Exhibit A thereto. WSP owns kW. *Id*., at ¶ 11 and Exhibit A thereto. WSP is a large publicly traded New York corporation

which, in 2022, employed 66,200 individuals and earned $11.93 billion in revenues. *Id*., at ¶ 12 and Exhibit B thereto. WSP has acquired nearly 194 companies around the world, including 17 in the United States. *Id*., at ¶ 13 and Exhibit C thereto. WSP USA, Inc. has been authorized to do business in California since 1978; WSP USA Buildings, Inc has been so authorized since 2012. *Id*., at ¶¶ 14-15 and Exhibits D and E thereto.

WSP seeks to prevent Steve from working on any mission critical engineering projects anywhere in the United States until November 2024 pursuant to non-competition and non-solicitation clauses in his employment agreement with Defendants. *Id*., at ¶ 16 and Exhibit A thereto. Those restrictions are void under well-established California public policy.

Steve formerly was a part owner of kW Engineering. *Id*., at ¶ 17. He and the other owners sold their interest in kW Engineering to WSP in December 2020. *Id*., at ¶ 18. kW Engineering merged its business with WSP. *Id*., at ¶ 19. As part of that merger, Steve entered into a Retention Bonus Agreement (the "Retention Agreement") with kW Engineering. *Id*., at ¶ 20 and Exhibit F thereto. The Retention Agreement contains provisions that restricted Steve's ability to work for no more than three years from the closing date (i.e., until December 28, 2023). *Id*., at ¶ 21 and Exhibit F thereto. Steve no longer has any obligations to kW Engineering or WSP USA under the Retention Agreement. *Id*., at ¶ 22 and Exhibit F thereto.

As part of the merger, Steve also entered into a Senior Leadership Employment Agreement (the "Agreement") with kW Engineering "or its successors in interest" whereby Steve would perform services for kW Engineering, and kW Engineering would compensate Steve for the services rendered. *Id*., at ¶ 23 and Exhibit G thereto. Those provisions violate fundamental California public policy. The Agreement contains a "Non-Competition and Non-Solicitation" section. *Id*., at ¶ 24 and Exhibit G thereto. The Agreement states that:

> During the Employee's employment with the Company or its successor-in-interest and for a period of 12 months following the termination of Employee's employment for any reason (voluntary or involuntary), Employee shall not directly or indirectly own, manage, operate, control, be

**PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PROCEEDING WITH ENFORCEMENT OF RESTRICTIVE COVENANTS AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**

employed by, consult with or participate in the ownership, management, operation, or control of any business, in a manner that would reasonably be expected to divert business from any of the Company's "Clients" or "Prospective Clients" with whom Employee had any involvement in developing, servicing, soliciting, or maintaining during the year prior to Employee's termination.

*Id*., at ¶ 25 and Exhibit G thereto.

The Agreement clarifies that:

Clients is defined as clients who the Company provided services for at any time during the 12-month period immediately preceding Employee's termination. "Prospective Clients" includes any person or entity: (a) to whom the Company has submitted qualifications or a proposal with Employee's direct personal involvement during the 12 months prior to Employee's termination; or (b) concerning whom Employee was assisting the Company in preparing a submittal of qualifications or a proposal at the time of Employee's termination.

*Id*., at ¶ 26 and Exhibit G thereto.

The Agreement also includes two "Non-Solicitation" clauses which similarly purport to limit Steve's ability to communicate with or interact with current, historical, or prospective clients of kW Engineering and any person or entity who was an employee, consultant, or contractor of kW Engineering or any of WSP's 17 USA Affiliates:

During the Employee's employment with Company or its successor-in-interest, and for a period of 12 months following the termination of Employee's employment for any reason (voluntary or involuntary), Employee shall not directly or indirectly (on Employee's own or in combination or association with others, and whether for Employee's own benefit or for the benefit of other persons or entities) engage in activity which involves or could result in the actual or potential termination of the Company's relationship with or the solicitation, hiring, or engagement of any person or entity who is, at the time, or was within the last 12 months of Employee's employment within the Company, an employee, consultant, or independent contractor of the Company or any of its affiliates, including for greater certainty, any affiliate U.S. Company of WSP USA ("Affiliate").

*Id*., at ¶ 27 and Exhibit G thereto.

The Agreement further states that:

> During Employer's employment with the Company and for a period of 12 months following the termination of Employee's employment for any reason (voluntary or involuntary), Employee shall not directly or indirectly (on Employee's own or in combination or association with others, and whether for Employee's own benefit or for the benefit of other parties or entities) contract, call upon, solicit or otherwise accept business from, render services to, market services or products to, divert business from, and/or interfere with the Company's relationship or business with any of the Company's existing Clients or Prospective Clients (as that term is defined above) that Employee interacted with on behalf of the Company, was introduced to by virtue of Employee's employment with the Company, or otherwise learned confidential information concerning during the last 12 months of Employee's employment within the Company.

*Id.*, at ¶ 28 and Exhibit G thereto.

The Agreement had a two-year term. *Id.*, at ¶ 29 and Exhibit G thereto. Under Paragraph 2, the term of the Agreement would automatically be extended from year to year unless either party gave advance written notice of their intent not to renew at least 30 days before the end of the current term. *Id.*, at ¶ 30 and Exhibit G thereto. On or about November 2, 2022, Steve gave notice of his intent not to renew more than 30 days before the end of the term. *Id.*, at ¶ 31. Effective January 1, 2023, the Agreement between Steve and kW Engineering terminated, and Steve's employment with kW Engineering converted to an at will employment. *Id.*, at ¶ 32. On or about October 18, 2023, Steve gave written notice terminating his at-will employment with kW Engineering effective November 3, 2023. *Id.*, at ¶ 33.

Ironically, if Steve had remained employed with kW Engineering until December 31, 2023, Defendants would have no grounds for restricting his employment under the Agreement. *See* Exhibit G to Coon Decl., ¶ 11 (when Steve became an at-will employee on January 1, 2023, the restrictive covenants expired "one (1) year from the date that Senior Leader is converted to an at-will employee provided that Senior Leader remains employment with Company one year after converting to an at-will employee"). *Id.*, at ¶ 34. In other words, Defendants not only seek

7

**PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PROCEEDING WITH ENFORCEMENT OF RESTRICTIVE COVENANTS AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**

to restrict Steve contrary to fundamental California public policy, but also seek a one-year restriction because he terminated his employment 58 days "early."

The Agreement requires the parties to resolve their disputes by binding arbitration with the American Arbitration Association ("AAA") in New York pursuant to AAA's Employment Arbitration Rules and Procedures. *Id.*, at ¶ 35 and Exhibit G thereto. But the Agreement also allows either party to seek "apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce or prevent any violations of the provisions" of the Agreement. *Id.*, at ¶ 36 and Exhibit G thereto.

On January 2, 2024, the same day this action was filed, WSP commenced arbitration proceedings with the AAA, filing a Motion for Emergency Interim Relief and requesting that the arbitrator enjoin Steve from competing with WSP and soliciting its employees or vendors during the pendency of the arbitration. *Id.*, at ¶ 37 and Exhibit A thereto. On January 12, 2024, the arbitrator ruled that because the parties had not adopted the Optional Rules for Emergency Measures of Protection, WSP could not seek emergency interim relief in any arbitration proceedings. *Id.*, at ¶ 38. Consequently, any issues related to injunctive relief must be resolved by a "court of competent jurisdiction." This Court meets that contractual requirement.

Plaintiffs filed this case with the Court on January 2, 2024. *Id.*, at ¶ 39. Plaintiffs seek injunctive relief related to the rights and obligations of the parties under the Agreement. Id., at ¶ 40.

### III. <u>Argument</u>

#### A. *Legal Standard*

When considering whether to grant a temporary restraining order, trial courts evaluate the likelihood that the moving party will succeed on the merits at trial and the balance of harms that would be suffered by plaintiff if relief is not granted, as compared to the harms that would be incurred by the opposing party if relief is granted. *Church of Christ in Hollywood v. Superior Court*, 99 Cal.App.4th 1244, 1251 (2002) (*Hollywood*) citing *IT Corp. v. County of Imperial*,

8

**PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PROCEEDING WITH ENFORCEMENT OF RESTRICTIVE COVENANTS AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**

35 Cal.3d 63, 69-70 (1983). Trial courts have discretion to balance the relative weight of each consideration: "the greater the plaintiff's showing on one, the less [that] must be shown on the other…" *Hollywood*, *supra*, at pp. 1251-52, citing *Butt v. State of California*, 4 Cal.4th 668, 678 (1992).

This case involves Defendants' attempts to enforce illegal restrictive covenants against Steve and CG. The unenforceability of the covenants is unassailable. Beginning in 1872, "California settled public policy in favor of open competition, and rejected the common law 'rule of reasonableness' when the Legislature enacted the Civil Code." *Edwards v. Arthur Andersen LLP,* 44 Cal.4th 937, 945, 189 P.3d 285, 290 (Cal. 2008). That statutory prohibition is codified in no uncertain terms: "Except as provided in this chapter, *every contract* by which anyone is *restrained from engaging in a lawful profession, trade, or business of any kind* is to that extent void." CAL. BUS. & PROF. CODE § 16600(a) (emphasis added). "Today in California, covenants not to compete are void, subject to several [statutory] exceptions," none of which apply to our case.[1] *Edwards*, 189 P.3d at 290. Since the original enactment of the prohibition in 1872, California courts "have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." *Id.*, 189 P.3d at 291. The Legislature has directed the courts to read § 16600 "broadly" to "void the application of any noncompete agreement in an employment context, or any other noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception to this chapter." CAL. BUS. & PROF. CODE § 16600(b). A void restrictive covenant is "unenforceable regardless of where and when the contract was signed" and regardless of whether "the employment was maintained outside of California." CAL. BUS. & PROF. CODE § 16600.5(a),(b).

---

[1] Those exceptions involve the sale of a business (§ 16601), dissolution of a partnership (§ 16602), and termination of a limited liability company (§ 16602.5).

**PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PROCEEDING WITH ENFORCEMENT OF RESTRICTIVE COVENANTS AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants are threatening to enforce these void restrictive covenants against Steve, in violation of well-established California law. Indeed, California law grants him the right to file a private action for injunctive relief and to recover damages arising from violations of § 16600 *et seq. See* CAL. BUS. & PROF. CODE § 16600.5(e). Moreover, the Court has the authority to prevent Defendants from seeking to enforce the restrictive covenants in another venue.

In *Robinson v. Jardine Ins. Brokers Int'l Ltd.*, 856 F. Supp. 554, 561 (N.D. Cal. 1994), the plaintiff sought to prevent the defendant from enforcing a temporary restraining order the defendant obtained from an English Court which required plaintiff to comply with a noncompete provision in an employment agreement plaintiff allegedly entered into with defendant (the "English Court's TRO"). The Northern District Court of California issued a preliminary injunction preventing the defendant from enforcing the English Court's TRO in the United States. The court reasoned that the non-compete provision in the alleged employment agreement was void under CAL. BUS. & PROF. CODE § 16600. 856 F. Supp. 554, 559. The court also reasoned that plaintiff would suffer immediate and irreparable harm if the preliminary injunction was not issued because plaintiff would be prevented from serving clients who chose to transfer business to plaintiff, which would cause loss or damage to those client relationships. *Id.* Further, the court reasoned that, given the defendant's size as company, defendant's possible loss of a few clients and employees did not outweigh the hardship to an individual employee in plaintiff's position. *Id.*

### B. Plaintiffs will Suffer Irreparable Harm if Injunction is Not Granted

The right of an individual to engage in his profession, trade, or business is a fundamental right in California, and violation of that right necessarily causes irreparable harm to the individual. Every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void, unless it falls within a few specific exceptions which are inapplicable to this case. CAL. BUS. & PROF. CODE § 16600 (a). The interests of an employee in his own mobility and betterment are deemed paramount to the

10

PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM PROCEEDING WITH ENFORCEMENT OF RESTRICTIVE COVENANTS AND OTHER RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES

competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change. *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575, 102 Cal. Rptr. 3d 1, 8 (2009) citing *Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 906–908, 72 Cal.Rptr.2d 73. If Defendants are able to enforce the restrictive covenants in the Agreement, which restrain Steve from engaging in his lawful profession, both Steve and CG will suffer irreparable harm. Coon Decl. at ¶¶ 41-49.

  Steve is a Professional Electrical Engineer with over fifteen years of experience in the strategic design of electrical topologies. Steve also has in-depth knowledge of cross discipline engineering in mission critical infrastructure design. If the non-compete in the Agreement is enforced, Steve will not be able to get a job in his particular field of engineering until November 2024. The non-compete in the Agreement restrains Steve from directly, or indirectly, acting in a manner that would reasonably be expected to divert business from any of the Company's "Clients" or "Prospective Clients" with whom Steve had any involvement during the year prior to Steve's termination. The "Company" includes both kW Engineering and its successor in interest, WSP. WSP certainly thinks that Steve has the ability to redirect business, which is why WSP commenced arbitration proceedings in New York to keep Steve from working.

  Likewise, if the non-solicitation clauses are enforced, Steve will be prevented from obtaining a job in an area of his expertise until November 2024. The non-solicitation clauses prohibit Steve from, among other things: (1) indirectly engaging in activity which could result in potential termination of the Company's relationship with any person or entity who was an employee, consultant, independent contractor of WSP for the last twelve months of Steve's employment, or (2) indirectly rendering services to any of WSP's existing or prospective clients. If Steve is employed by any company that does any of the same business as WSP or any of its 17 US affiliates, Steve is arguably indirectly engaging in activity which could result in potential termination of the Company's relationship with any person or entity who was an

employee, consultant, independent contractor of WSP for the last twelve months of Steve's employment. Similarly, if Steve is employed by any company that serves any of the same clients or prospective clients as WSP or its 17 US affiliates, Steve is arguably indirectly rendering services to any of WSP's exiting or prospective clients. Steve cannot accept a position in his career field without arguably violating one of the non-solicitation clauses.

If Defendants are allowed to enforce the restrictive covenants, Steve will not only be restricted in his ability to be mobile and better himself, but will be in a position where it will be difficult for him to obtain employment. If Steve is forced to change careers for the next year, particularly with his amount of experience, it will be difficult for Steve to find a job in any field because Steve is underqualified for high level positions in an area outside of his area of expertise, but overeducated for low level positions. If Steve is able to obtain a job, it is highly unlikely he will able to receive the amount of income he can earn in a field where he has over fifteen years of expertise in a field where he has no experience. Furthermore, Steve's ability to obtain a job in his field of expertise after the restrictive covenants expire will be reduced because he missed out on the opportunity to refine his craft and build relationships in 2024. If Defendants are allowed to enforce the restrictive covenants in the Agreement, Steve will be immediately and irreparably harmed.

Likewise, CG will be immediately and irreparably harmed if Defendants are allowed to prevent CG from hiring Steve. Steve has been licensed as a Professional Electrical Engineer in California since 2018, which on its own makes him a valuable employee with specialized skills. He also has significant management experience and the ability to scale a business. If CG cannot hire Steve, CG will miss out on the work Steve would have done for CG, the relationships Steve would have built for CG, and the growth CG could have experienced under Steve's leadership. While CG could, and would have to, hire an engineer that is not Steve if Defendants are allowed to enforce the restrictive covenants, CG is unlikely to be able to find someone with the combination of expertise, skills, and reputation that Steve has. CG will be immediately and

irreparably harmed if Defendants are allowed to enforce the restrictive covenants in the Agreement.

Steve and CG will be immediately and irreparably harmed if Defendants are allowed to enforce the restrictive covenants in the Agreement because Steve will be denied his fundamental right to be employed by any California employer that is interested in hiring Steve, and CG will be denied its fundamental right to hire anyone who is interested in being hired by CG. The Court should enjoin WSP from enforcing the restrictive covenants in the Agreement anywhere in the United States.

### C. *The Potential Harm to Plaintiffs Outweighs the Potential Harm to Defendants*

Like the defendant in *Robinson*, WSP is a large company. According to its 2022 Annual Report, WSP employed 66,200 individuals in 2022 and earned $11.93 billion in revenues. Because of the size of Defendants, to the extent Defendants lose any clients or employees because the restrictive covenants are not enforced, the harm, if any, Defendants suffer will be nowhere near the harm Steve will suffer as an individual unable to get a job in any area in which he has expertise, or the harm a small company like CG will suffer if it is unable to obtain a valuable employee with high level skills and a good reputation. The balance of harms in this case, like in *Robinson*, weighs in favor of granting a preliminary injunction and temporary restraining order preventing the Defendants from enforcing the restrictive covenants in the Agreement.

### D. *Plaintiffs are Likely to Succeed on the Merits of their Declaratory Relief Claim*

With a few limited exceptions, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void in the State of California. Cal. Bus. & Prof. Code § 16600 (a). Cal. Bus. & Prof. Code § 16600 *et al.* shall be read broadly to void the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly

13

tailored, that does not satisfy an exception. Cal. Bus. & Prof. Code § 16600 (b). Any contract that is void under Cal. Bus. & Prof. Code § 16600 et. al. is unenforceable regardless of where and when the contract was signed. Cal. Bus. & Prof. Code § 16600.5 (a). An employer or former employer shall not attempt to enforce a contract that is void regardless of whether the contract was signed and the employment was maintained outside of California. Cal. Bus. & Prof. Code § 16600.5 (b). There are exceptions to Cal. Bus. & Prof. Code § 16600 (a) for:

- An owner of a business who is selling its interest, Cal. Bus. & Prof. Code § 16601;
- A partner whose partnership is being dissolved or is being dissociated, Cal. Bus. & Prof. Code § 16602;
- A member of a limited liability company where the limited liability company is being dissolved or sold, Cal. Bus. & Prof. Code § 16602.5;
- A former employee of a telephone answering service who had access to the customer list, Cal. Bus. & Prof. Code § 16606; and
- A former employee of an employment agency who had access to their customer list, Cal. Bus. & Prof. Code § 16607.

None of those exceptions apply in this case.

The court in *Fillpoint, LLC v. Maas* held that the non-competition and non-solicitation clauses in Maas's employment agreement with Fillpoint were unenforceable, notwithstanding the fact that Maas entered into the employment agreement at the same time he sold his ownership interest to Fillpoint. *Fillpoint, LLC v. Maas* (2012) 208 Cal.App.4th 1170, 1183. The court reasoned that the purchase agreement contained its own non-competition clause, with a term of three years from the closing date, which had already expired. *Id.* at 1182. The court also reasoned that the clause in the purchase agreement was designed to protect the goodwill that Fillpoint acquired, while the clause in the employment agreement targeted Maas's fundamental right to pursue his profession. *Id.* at 1183. The court pointed out that the non-solicitation clauses in the employment agreement were not limited to clients and employees of

the business when it was sold, but also included clients and employees which were acquired by the business after it sold. *Id.* The court reasoned that the non-solicitation clauses could not serve the purpose of protecting the goodwill Fillpoint purchased when the clauses extended to clients and employees who had no connection to the business when it was purchased by Fillpoint. *Id.*

Like Maas, Steve entered into multiple agreements with kW Engineering and WSP when he sold his interest in kW Engineering to WSP. Steve entered into the Retention Agreement and the Agreement. The non-competition clause in the Retention Agreement, like the non-competition clause in the purchase agreement in *Fillpoint*, was specifically designed to protect the goodwill which WSP purchased. The term of the non-competition clause in the Retention Agreement was based on the closing date, and was set to expire no more than three years from the closing date regardless of whether Steve remained employed by kW Engineering.

Meanwhile, the non-competition and non-solicitation clauses in the Agreement target Steve's fundamental right to pursue his profession. The term of the restrictive covenants of the Agreement are specifically tied to Steve's employment, not the closing date. Likewise, the non-solicitation clauses in the Agreement, much like the non-solicitation clauses in the employment agreement in *Fillpoint*, purport to restrict Steve from solicitating clients and employees who did not become clients and employees of Defendants until long after the completion of the sale. Furthermore, in the Agreement itself, Defendants admit that the purpose of the non-competition clause is to protect the "considerable amount of money" Defendants expend obtaining new clients and maintaining existing clients. The restrictive covenants in the Agreement, like the restrictive covenants in the employment agreement in *Fillpoint*, target the employee's fundamental right to pursue his profession, and thus are void under Cal. Bus. & Prof. Code § 16600 et. al. As the noncompetition provision at issue is not tied to the sale of business, it is likely that it is void under California law, and Steve will prevail on the merits of his declaratory relief action.

The Court should enjoin Defendants from enforcing the restrictive covenants in the Agreement anywhere in the United States, because Plaintiffs are likely to succeed on the merits of their claims.

### IV. Conclusion

The Court should grant the temporary restraining order and preliminary injunction enjoining Defendants from enforcing the restrictive covenants in the Agreement anywhere in the United States because otherwise Plaintiffs shall suffer irreparable harm during the course of this litigation, in which they are likely to prevail.

DATED: January 16, 2024                    **DENTON PETERSON DUNN, PLLC**

/s/ Jay Parmelee
Jay Parmelee
*Attorneys for Plaintiffs*