1 | HOLLAND & KNIGHT LLP
Samuel J. Stone (SBN 317013)
2 | 400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
3 | Telephone: (213) 896-2400
Facsimile:  (213) 895.2450
4 | Email:  sam.stone@hklaw.com

5 | HOLLAND & KNIGHT LLP
Nipun J. Patel (*pro hac vice*)
6 | Justin M. Kadoura (*pro hac vice*)
1650 Market Street, Suite 3300
7 | Philadelphia, Pennsylvania 19103
Phone: 215.252.9527
8 | Fax: 215.867.6070
Email: nipun.patel@hklaw.com
9 |          justin.kadoura@hklaw.com

10

11 | **UNITED STATES DISTRICT COURT**

12 | **NORTHERN DISTRICT OF CALIFORNIA**

13

14 | CG ENTERPRISES HOLDINGS, LLC, a
California limited liability company; and
15 | STEPHEN M. COON, an individual;

16 |            Plaintiff,

17 |      vs.

18 | WSP USA, INC., a New York corporation;
WSP USA BUILDINGS, INC., a New York
19 | corporation; kW MISSION CRITICAL
ENGINEERING, D.P.C., a New York design
20 | professional corporation; and DOES 1
through 20, inclusive,
21
            Defendants.
22

23

24

25

26

27

28

Case No.  3:24-cv-00292-CRB

[Removed from Sonoma County Superior Court
Case No.: 24CV00024]

**DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FEDERAL RULES OF
CIVIL PROCEDURE 12(B)(2), (3), AND (6)
OR, IN THE ALTERNATIVE, TO STAY
THIS ACTION PURSUANT TO 9 U.S.C. §
3, OR TRANSFER PURSUANT TO 28
U.S.C. § 1404(a)**

[Fed. R. Civ. P. 12(b); Civ.L.R. 7]

Hearing Date:    March 8, 2024
Hearing Time:   10:00 a.m.
Location:         450 Golden Gate Avenue,
Courtroom 6, 17th Floor, San Francisco,
California 94102

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400  Fax: 213.896.2450

**PLEASE TAKE NOTICE THAT**, on March 8, 2024 at 10:00 a.m. or as soon thereafter as the matter may be heard, Defendants WSP USA, INC., WSP USA BUILDINGS, INC., and kW MISSION CRITICAL ENGINEERING, D.P.C. ("Defendants") hereby move the above-captioned Court, located at 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California 94102, for an order dismiss all claims alleged against them in the Complaint filed by Plaintiffs Stephen Coon and CG Enterprise Holdings, LLC, or in the alternative, staying this Action or transferring it. This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, Declaration of Kenneth Clausen in Support Thereof, any papers filed in Reply, argument of counsel, the Court's file, and any and all other matters the Court deems appropriate and proper.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400 Fax: 213.896.2450

1

## <u>**TABLE OF CONTENTS**</u>

2

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

BACKGROUND ....................................................................................................................3

    I.      WSP Acquires kW Mission Critical Engineering. ...........................................3

    II.     Coon Agreed to Be Bound by Restrictive Covenants Governed By New York Law and Subject to Binding Arbitration..................................................3

    III.    Coon Openly Violates the Restrictive Covenants. ............................................5

    IV.    WSP Acts Promptly to Protect Its Rights and Initiates Arbitration...............................6

ARGUMENT ..........................................................................................................................7

    I.      The Court Should Dismiss or Stay This Action Pursuant to the Arbitration Provisions in the Employment Agreement. ......................................7

    II.     This Court Lacks Personal Jurisdiction over WSP..........................................9

    III.    Venue Is Improper in this District. ..................................................................11

    IV.    Plaintiffs Fail to State a Claim for Relief. ......................................................11

          A.    CGE Lacks Standing to Pursue Its § 16600 Claim...........................12

          B.    The Restrictive Covenants Are Enforceable Under New York Law, Which Governs Plaintiffs' Claim. ............................................12

          C.    Plaintiffs' Claims Impermissibly Apply California Law Extraterritorially.....14

          D.    The Restrictive Covenants Do Not Violate Sections 16600...........................16

          E.    Plaintiffs Fail to State a § 17200 Claim. ..........................................18

    V.     The Court Should Transfer This Action to the Southern District of New York.........18

CONCLUSION......................................................................................................................20

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400 Fax: 213.896.2450

MOTION TO DISMISS, STAY, OR TRANSFER        Case No.: 3:24-cv-00292-CR

Holland & Knight LLP<br/>400 South Hope Street, 8th Floor<br/>Los Angeles, California 90071<br/>Tel.: 213.896.2400 Fax: 213.896.2450

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alliant Ins. Servs., Inc. et al. v. Gaddy*,
  159 Cal. App. 4th 1292 (2008) ...................................................................16

*Apple Inc. v. Allan & Assocs. Ltd.*,
  445 F. Supp. 3d 42 (N.D. Cal. 2020) .......................................................9, 10

*Application Grp., Inc. v. Hunter Grp., Inc.*,
  61 Cal. App. 4th 881 (Cal. Ct. App. 1998) ..............................................13

*Arthur J. Gallagher & Co. v. Lang*,
  2014 WL 2195062 (N.D. Cal. May 23, 2014) ..........................................17

*Arthur J. Gallagher & Co. v. Petree*,
  2022 WL 1241232 (E.D. Cal. Apr. 27, 2022) ...........................................17

*Atl. Marine Const. Co. v. U. S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013).......................................................................................19

*Bernal v. Kohl's Corp.*,
  2023 WL 80088977 (C.D. Cal. Nov. 17, 2023) .........................................19

*Bollengier v. Gulati*,
  233 A.D.2d 721 (N.Y. App. Div. 1996) ...................................................12

*Boorstein v. CBS Interactive, Inc.*,
  222 Cal. App. 4th 456 (Cal. Ct. App. 2013) ............................................12

*Build Grp., Inc. v. N.R. Windows, Inc.*,
  2022 WL 3697355 (C.D. Cal. Feb. 17, 2022) ..........................................8

*Cabrera v. Ford Motor Co.*,
  2023 WL 6307946 (N.D. Cal. Sept. 26, 2023) ..........................................18

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
  371 F. Supp. 3d 610 (N.D. Cal. 2019)........................................................7

*Continental Appliances, Inc. v. Thomas*,
  2012 WL 3646887 (N.D. Cal. Aug. 23, 2012) .........................................11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).....................................................................................10

*Dexcom, Inc. v. Medtronic, Inc.*,
  2021 WL 5908930 (S.D. Cal. Dec. 14, 2021) ...........................................8

*Fillpoint, LLC v. Maas*,
  208 Cal. App. 4th 1170 (Cal. App. Ct. 2012).....................................16, 17

*Genasys Inc. v. Vector Acoustics, LLC*,
    2023 4414222 (S.D. Cal. July 7, 2023) ................................................................7

*Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*,
    2016 WL 4698931 (N.D. Cal. Sept. 8, 2016) ...................................................12

*Herbert v. Los Angeles Raiders, Ltd.*,
    23 Cal. App. 4th 414 (Cal. Ct. App. 1991) ......................................................15

*Howard v. Octagon, Inc.*,
    2013 WL 5122191 (N.D. Cal. Sept. 13, 2013) .................................................18

*Huynh v. Walmart, Inc.*,
    2022 WL 3109562 (N.D. Cal. Aug. 4, 2022) ..............................................11, 12

*Inmar Rx Solutions, Inc. v. Devos, Ltd.*,
    786 F. App'x 445 (5th Cir. 2019) .....................................................................11

*Laver v. Credit Suisse Secs. (USA), LLC*,
    2018 WL 3068109 (N.D. Cal. June 1, 2018) .....................................................7

*LNS Enterprises LLC v. Continental Motors, Inc.*,
    22 F.4th 852 (9th Cir. 2022) .............................................................................10

*Loughlin v. Ventraq, Inc.*,
    2011 WL 1303641 (S.D. Cal. Apr. 5, 2011) ......................................................7

*Marcotte v. Micros Sys., Inc.*,
    2014 WL 4477349 (N.D. Cal. Sept. 11, 2014) ...................................................8

*Medcor, Inc. v. Garcia*,
    2022 WL 124163, at *5 (N.D. Ill. Jan. 13, 2022) ............................................14

*Momot v. Mastro*,
    652 F.3d 982 (9th Cir. 2011) ..............................................................................8

*Motorola Credit Corp. v. Uzan*,
    388 F.3d 39 (2d Cir. 2004) ...............................................................................12

*Norwest Mortg., Inc. v. Super. Ct.*,
    72 Cal. App. 4th 214 (Cal. Ct. App. 1999) ......................................................16

*Oren Enterprises, Inc. v. Stefanie Cove & Co.*,
    2017 WL 8220230 (C.D. Cal. June 2, 2017) .....................................................7

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)..........................................................................................8, 9

*Ridenhour v. UMG Recordings, Inc.*,
    2012 WL 463960 (N.D. Cal. Feb. 13, 2012) ...................................................13

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400 Fax: 213.896.2450

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) ..................................................................14

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ......................................................................9

*VCA Animal Hosps., Inc. v. Hampel*,
  2023 WL 8857757 (Cal. Ct. App. Dec. 22, 2023) ...............................16, 17

*Willis Re Inc. v. Herriott*,
  550 F. Supp. 3d 68 (S.D.N.Y. 2021) .........................................................14

**Statutes**

9 U.S.C. § 2 ...................................................................................................9

9 U.S.C. § 3 ..........................................................................................7, 9, 19

9 U.S.C. § 4 ............................................................................................18, 19

28 U.S.C. § 1391(b) .....................................................................................11

28 U.S.C. § 1391(b)(1) .................................................................................18

28 U.S.C. § 1404(a) .........................................................................2, 18, 20

Cal. Bus. & Prof. Code § 16600 .........................................................*passim*

Cal. Bus. & Prof. Code § 16600.5 ...............................................................12

Cal. Bus. & Prof. Code § 16601 ..................................................................16

Cal. Bus. & Prof. Code § 17200 ...........................................14, 15, 16, 18

Cal. Lab. Code § 925(a)(2) ..........................................................................14

Cal. Lab. Code § 16600.5(b) ........................................................................14

**Other Authorities**

N.Y. Veto No. 113 (2023), http://public.leginfo.state.ny.us/navigate.cgi?NVDTO: ...................13

U.S. Dist. Cts.—Nat'l Jud. Caseload Profile (Sept. 2023),
  https://www.uscourts.gov/file/76945/download...............................................20

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400 Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400 Fax: 213.896.2450

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Stephen Coon ("Coon") has embarked on an aggressive campaign to unlawfully divert clients and employees from his former employer, WSP USA, Inc. ("WSP"), in flagrant violation of the restrictive covenants in his Employment Agreement ("Agreement"). Those violations are the subject of an ongoing arbitration between WSP and Coon in New York pursuant to the valid forum-selection Clause in the Agreement that vests the American Arbitration Association ("AAA") with exclusive jurisdiction to address disputes about the Agreement. In a quintessential example of improper forum shopping, however, Coon filed this action asserting arbitrable claims in an improper state court forum for the sole purpose of attempting to take advantage of California law to rewrite the Agreement, avoid his duty to arbitrate, and escape the consequences of his misconduct. Specifically, Plaintiffs argue that this Court, located in California, should apply California law to invalidate restrictive covenants in a contract that has absolutely nothing to do with California: The Agreement is between Coon, an Arizona resident, and WSP, a New York company with its principal place of business in New York; the Agreement was not negotiated or signed in California; the Agreement was executed in connection with WSP's purchase of kW Mission Critical Engineering ("kW"), Coon's former business, also based in New York; the Agreement specifically requires Coon to arbitrate claims against WSP in New York under New York law; and part of WSP's claims against Coon in the underlying arbitration relates to his tortious poaching of employees that worked in kW's Troy, New York office.

Coon artificially manufactured and contrived the only connection between this action and California. Specifically, within weeks of resigning from WSP, Coon formed his competing business, Plaintiff CG Enterprises Holdings LLC ("CGE"), in California. CGE's connection to California, however, is a fiction. Coon is CGE's sole member and Plaintiffs do not allege that CGE has any operations or employees (including Coon himself) in California. In fact, Coon likely chose to form CGE under California law solely so he could file this action and try to take advantage of California's statute banning certain noncompete agreements. *See* Cal. Bus. & Prof. Code § 16600, *et seq* ("Section 16600"). Indeed, Plaintiffs filed their Complaint shortly after: (1) WSP informed

1

Coon that it would enforce his restrictive covenants, which, pursuant to the Agreement, would have to be done through arbitration in New York under New York law; and (2) New York's Governor vetoed that state's similar legislation seeking effectively to ban non-competition agreements (which she did less than one month after CGE was formed and two weeks before Plaintiffs filed their Complaint).

This Court should stay or dismiss this case.  First, Plaintiffs' claims are subject to the arbitration clause in the Agreement and thus must be dismissed or stayed pending resolution of the New York arbitration, pursuant to the Federal Arbitration Act.  Second, because this case lacks any connection to California, , the Court should dismiss for lack of personal jurisdiction over WSP and/or improper venue.  Plaintiffs do not and could not allege that WSP has sufficient contacts with this State to establish jurisdiction or that any of the venue requirements are met.  .

Third even if Plaintiffs could sue here (and they cannot), Plaintiffs are not entitled relief under Section 16600.  As an initial matter, CGE lacks standing to bring its claim because Section 16600 creates a cause of action only for employees, not employers like CGE.  Moroever, applying Section 16600 would violate the choice-of-law provision in Coon's Agreement, which requires the application of New York law.  With Coon's claim having no connection to California, there is no basis to disregard his agreement that New York law will govern this dispute.  Additionally, the Dormant Commerce Clause prohibits Plaintiffs' attempts to apply Section 16600 extraterritorially.  Finally, Plaintiffs have failed to state a claim for relief because the statute on which they rely, § 16600, does not apply to the restrictive covenants at issue here.

Accordingly, this Court should either dismiss Plaintiffs' claims or stay them pending resolution of the Parties' ongoing arbitration.  Alternatively, this court should transfer this action to the Southern District of New York under 28 USC 1404(a).

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400 Fax: 213.896.2450

## BACKGROUND

### I.  WSP Acquires kW Mission Critical Engineering.

In December 2020, WSP acquired kW, a small (then approximately 175 employee) engineering firm that focused primarily on designing data centers and other mission-critical projects.  (Ex. A, Decl. of Ken Clausen ¶ 5.)  As part of the acquisition, kW's senior leadership team and key employees, including Coon, signed employment agreements and retention agreements containing restrictive covenants that prohibited them from competing with WSP, soliciting its employees, customers, or vendors, or sharing its trade secrets or confidential information.  (Ex. B at 6–8.).  Coon's Agreements were not negotiated in California nor did they have anything to do with California.  (Clausen Decl. ¶ 53.)  Each pertinent agreement designated New York law as controlling.  (Ex. B at 11.)

### II.  Coon Agreed to Be Bound by Restrictive Covenants Governed By New York Law and Subject to Binding Arbitration.

Coon worked for kW for approximately eight years before the acquisition.  (Clausen Decl. ¶ 10.)  On December 30, 2020, Coon entered into the Agreement with WSP providing for him to work as WSP's Managing Principal of the Phoenix Office and as a Professional Electrical Engineer.  (*Id.* ¶ 11)  Coon was responsible for providing technical engineering expertise and developing successful relationships with design team partners—architects, engineers, and contractors.  (*Id.* ¶ 15.)  Coon gained substantial experience and insight into kW's data center business and had key responsibilities for leadership of key client accounts and projects associated with data center program design and build out.  (*Id.* ¶ 16.)  Coon also gained knowledge about all aspects of kW's customers' programs, including highly confidential items like schedule, budget, risk and desired engineering team.  (*Id.* ¶ 17.)

Coon's Agreement provided for a $200,000 a year base salary, benefits, and potential performance bonuses.  (*Id.*, Ex. B at 2.)  In exchange for this compensation, Coon agreed not to compete with WSP "in a manner that would reasonably be expected to divert business from any of the Company's 'Clients' or 'Prospective Clients' with whom [he] had any involvement in

MOTION TO DISMISS, STAY, OR TRANSFER                    Case No.: 3:24-cv-00292-CR

developing, servicing, soliciting, or maintaining during the year prior to [his] termination." (*Id.* at 7.) The Agreement also prohibits Coon from engaging in soliciting or hiring anyone who is or "was within the last 12 months of [his] employment with the Company, an employee, consultant, or independent contractor of the Company or any of its affiliates." (*Id.* at 8.) And the Agreement provides that Coon shall not "solicit or otherwise accept business from . . . and/or interfere with the Company's relationship or business with any of the Company's existing Clients or Prospective Clients" that he learned of, did work for, or gained access to confidential information about through WSP. (*Id.*)

These restrictive covenants are essential to ensuring that WSP receives the benefit of the bargain from the kW acquisition, including kW's good will. The data-center design business is extremely competitive, with each company's ability to compete largely dependent on, *inter alia*, (1) its ability to understand and accommodate a client's needs, and (2) the quality and reputation of its specific engineers. (Clausen Decl. ¶ 39.) Competition from senior-level former kW/WSP employees like Coon would thus be devastating for WSP. (*Id.* ¶ 42.) Accordingly, the Agreement provides that the restrictive covenants will remain in place for twelve months after he leaves or is terminated by WSP. (*See* Ex. B at 6–8.) The only exception is if Coon does not renew the Agreement after the first two-year Term—and thus "convert[s] to an at-will employee" at the end of the Term (*id.* at 2)—and "remains employed with [WSP] one year after converting to an at-will employee," at which point the restrictive covenants would expire. (*Id.* at 10.) In further recognition of the importance of the restrictive covenants, the Agreement also provides, and Coon agreed, that:

> The Company is in a highly competitive business and expends considerable amounts of money in the development of business from new clients and customers and continued business from existing clients and customers. The business and clientele of the Company are national and worldwide in scope, and therefore the territorial and time limitations set forth in th[e] Non-Compete clause are reasonable and necessary for the protection of the Company's interests.

(*Id.* at 7.)

The Agreement further provides that it is governed by New York law; that all disputes arising from the Agreement, any statute, regulation or ordinance, or Coon's employment relationship with WSP must be decided exclusively in binding arbitration by the AAA in New York; and that any arbitration award can be enforced only in a court in New York County. (*Id.* at 11–12.)

4

Additionally, Coon also signed a retention bonus agreement ("RBA") with WSP reaffirming his restrictive covenants in exchange for substantial cash bonuses "to incentivize [him] to remain with [kW] . . . in order to assist [kW] with integration into WSP." (Ex. C at 1.) On December 29, 2020, Coon executed the RBA, the day before signing his Agreement. WSP paid Coon $475,000 over the course of two years pursuant to his RBA in addition to his compensation under the Agreement. (*Id.* at 1–2.) Like the Agreement, the RBA also designates New York law as governing its terms and has no connection to California. (*Id.* at 11.)

**III.     Coon Openly Violates the Restrictive Covenants.**

On November 2, 2022, Coon gave notice that he would not renew the Employment Agreement, making him an at-will employee as of December 30, 2022. (Ex. D.) Coon did not, however, remain with WSP for a year after that date, as required by the Employment Agreement to excuse him from the 12-month tail in the restrictive covenants. (Clausen Decl. ¶¶ 19–21.) Instead, he tendered his resignation on October 18, 2023. (Ex. E.) His actual last day was November 3, 2023. (Clausen Decl. ¶ 23.) Accordingly, the non-compete and non-solicitation provisions of his Agreement are still in effect until November 3, 2024.

Nonetheless, Coon began forming a competing business operating in Arizona (where he lives) intending to take advantage of the exploding demand for data centers because of the growth of AI software and applications. Since his resignation (and likely earlier), Coon has solicited several former kW/WSP employees to join him, including at least four from kW's New York office— Principal Mechanical Engineer Jason Leone and Managing Principal of the Troy Office Gary Russinko, who are each subject to their own restrictive covenants with WSP, (*see id.* Exs. F & G), as well as Andrew Stercho and Darren Keyser. Russinko, Leone, Stercho, and Sterling resigned between October 30, 2023, and January 2, 2024, and each refuses to disclose their new employers. (Clausen Decl. ¶¶ 28–38.) Prior to his resignation, Coon openly admitted to a co-worker, Mr. Ken Clausen ("Clausen"), that he was starting a competing business in Phoenix and upstate New York, near kW's Troy, New York office (where Clausen works), and had a lease ready to be executed in January of 2024. (*Id.* ¶ 24.) Coon also told Clausen he was "going to be taking anyone in Troy who had not signed a retention agreement," and acknowledged that he needed kW's MEP engineers

5

to deliver on competitive services to the very clients Coon was responsible for servicing at kW. (*Id.* ¶ 25.)  By recruiting those experienced mechanical engineers, Coon openly touted he could start a business that could compete directly with WSP. (*Id.* ¶ 26.)  He also bragged that a member of the C-suite of another company, Bowman Engineering, already planned to pay him to buy the new business once it was scaled up to $25 million in annual revenue. (*Id.* ¶ 27.)  Based on Coon's comments to Clausen, WSP has reason to believe Coon has targeted at least four other key kW MCE employees in early 2024, if he has not already done so.  WSP's partners have also informed Clausen that Coon is soliciting competitive work from kW's existing customers. (*Id.* ¶ 43.)

Together, Coon and the employees he has recruited to compete against kW/WSP have the potential to inflict substantial harm to WSP's business. (*Id.* ¶ 42.)  The key accounts that Coon was responsible for servicing have the potential to generate the tens of millions of dollars for FY 2024 and beyond. (*Id.* ¶ 40.)  Further, Coon has in-depth knowledge of WSP's trade secrets including customer preferences, pricing, desired teams, project specifications, engineering specifications, and kW MCE's existing and past work for those key customers. (*Id.* ¶ 41.)

## IV.    WSP Acts Promptly to Protect Its Rights and Initiates Arbitration

On October 25, 2023, WSP's counsel sent Coon a letter reminding him of his obligations under the restrictive covenants. (Ex. H.)  On December 29, 2023, WSP's counsel sent similar letters to Messrs. Leone and Russinko. (Exs. I & J.)  Nonetheless, Coon seems undeterred.

On January 2, 2024, WSP filed a Demand for Arbitration with the American Arbitration Association ("AAA") against Coon pursuant to § 17(a) of the Agreement, asserting claims for breach of fiduciary duty, breach of contract, and tortious interference with contract. (Ex. K.)  That arbitration is proceeding, with the Parties' choices of arbitrators due on February 6, 2024.  Also on January 2, 2024, Coon and CGE improperly filed this action in state court, seeking an order declaring that the restrictive covenants are unenforceable under a new California statute and enjoining WSP from enforcing the rights it paid for under the Agreement.  Notably, Coon does not deny that he is, or immediately plans on, competing against WSP, (*see* Compl. ¶ 4), and chose to file in California solely to take advantage of California's favorable statutes.  Indeed, the only connection this action has to California is the ***alleged*** principal place of business of CGE. (*Id.* ¶ 6.)

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ARGUMENT

**I.     The Court Should Dismiss or Stay This Action Pursuant to the Arbitration Provisions in the Employment Agreement.**

Plaintiffs' claims are subject to mandatory arbitration.  Under the Federal Arbitration Act, "[a]rbitration agreements are 'valid, irrevocable, and enforceable.'"  *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 618 (N.D. Cal. 2019) (quoting 9 U.S.C. § 2).  "When considering a party's request [to enforce an arbitration agreement], the court is limited to determining (1) whether a valid arbitration agreement exists, and if so (2) whether the arbitration agreement encompasses the dispute at issue."  *Chun Ping Turng*, 371 F. Supp. 3d at 618.  If "a valid agreement exists to arbitrate the claims at issue . . . [t]he party opposing arbitration then bears the burden of proving by a preponderance of the evidence any defense to enforcing the agreement."  *Genasys Inc. v. Vector Acoustics, LLC*, 2023 4414222, at *6 (S.D. Cal. July 7, 2023) (quotation marks omitted).  If that party fails to meet its burden, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall" enforce the agreement, *Oren Enterprises, Inc. v. Stefanie Cove & Co.*, 2017 WL 8220230, at *4 (C.D. Cal. June 2, 2017), by either "stay[ing] or dismiss[ing] the claims subject to arbitration."  *Loughlin v. Ventraq, Inc.*, 2011 WL 1303641, at *2 (S.D. Cal. Apr. 5, 2011); *accord Laver v. Credit Suisse Secs. (USA), LLC*, 2018 WL 3068109, at *4 (N.D. Cal. June 1, 2018) (dismissing action because of valid arbitration clause); 9 U.S.C. § 3 (requiring courts to stay arbitrable issues pending arbitration).

In Coon's Agreement, he agreed that "[a]ny dispute arising between any of the Company and Senior Leader under this Agreement, or under any statute, regulation, or ordinance, or in connection with the Senior Leader's Employment with the Company, shall be submitted to binding arbitration."  (Ex. B at 11.)  He further agreed that "[t]he arbitrator, and not any federal, state, or local court or adjudicatory authority, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, and/or formation of this Agreement, including but not limited to any dispute as to whether a particular claim is subject to arbitration thereunder."  (*Id.* at 11–12 (the "Delegation Clause").)

7

Plaintiffs readily concede that the arbitration agreement is enforceable.  Instead, they argue that the non-compete and non-solicitation provisions of the Employment Agreement violate California's public policy embodied in Section 16600.  Courts have repeatedly upheld arbitration clauses that select forums outside California, even though those forums might choose not to apply Section 16600.  *See Build Grp., Inc. v. N.R. Windows, Inc.*, 2022 WL 3697355, at *4 (C.D. Cal. Feb. 17, 2022) (rejecting argument that Section 16600 voided forum-selection clause "because the only relevant consideration is whether the forum [ ] selection clause itself violates California public policy, not the agreement in which it appears" (quotation mark omitted) (alteration in original)); *Dexcom, Inc. v. Medtronic, Inc.*, 2021 WL 5908930, at *3 (S.D. Cal. Dec. 14, 2021) ("Nothing in section 16600 prevents setting non-Californian tribunals as designated for a . . . for disputes involving employment agreements containing non-compete clauses." (quotation marks omitted)); *Marcotte v. Micros Sys., Inc.*, 2014 WL 4477349, at *8 (N.D. Cal. Sept. 11, 2014) (same).

Nor do Plaintiffs argue that their claims are not arbitrable.    To the contrary, Plaintiffs concede that "[t]he Agreement requires the parties to resolve their disputes by binding arbitration with the American Arbitration Association ('AAA') in New York."  (Pls.' Mot. for TRO at 8.) Indeed, their claims are a "dispute arising between any of the Company and Senior Leader under this Agreement, or under any statute, regulation, or ordinance, or in connection with the Senior Leader's Employment with the Company," and/or relating to the "interpretation" and "enforceability" of the Employment Agreement.  What's more, Plaintiffs' claims are ***defenses to the specific claims brought by WSP in the pending arbitration in New York***.

Moreover, the issue of arbitrability is itself subject to arbitration.  The Delegation Clause specifically provides that the AAA shall have the ***exclusive*** authority to decide "any dispute as to whether a particular claim is subject to arbitration thereunder."  "Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator."  *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).  Indeed, the United States Supreme Court has upheld a delegation provision that is identical to the Delegation Provision in Coon's Employment Agreement.  In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the parties, like Coon here, agreed that "[t]he Arbitrator, and not any federal, state, or local court or agency,

8

shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Rent A Center*, 561 U.S. at 66.  The Supreme Court held that because the employee did not "challenge[] the delegation provision specifically, [the Court] must treat it as valid under § 2 [of the FAA], and must [either stay the judicial proceedings or compel arbitration,] leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72.  Accordingly, even if Plaintiffs do dispute the arbitrability of their claims, they must do so in the arbitration proceeding, not here.

Rather than argue that the arbitration provisions are invalid or not applicable, Plaintiffs argue only that a different provision of the Agreement allows them to "apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce or prevent any violations of the provisions" of the Agreement."  (Pls.' Mot. for TRO at 8.)  Plaintiffs are incorrect.  That provision applies *only* "in the event of a breach or a threatened breach of any of the provisions of this Agreement" and *only* "to enforce or prevent any violations of the provisions thereof."  (Ex. B at 11.)  Yet, Plaintiffs do not allege any "breach" or "threatened breach" of the Agreement and Plaintiffs are not trying to "enforce" that Agreement.  To the contrary, Plaintiffs argue that the Agreement is void.  Accordingly, this narrow exception to the arbitration provisions do not apply.

Because the arbitration provisions are enforceable and apply to Plaintiffs' claims, the Court should dismiss this case.  At a minimum, however, the Court must stay this action during the pendency of the arbitration.  *See* 9 U.S.C. § 3.

## II.     This Court Lacks Personal Jurisdiction over WSP.

Plaintiffs' improper attempt to avoid litigating in the contractually-mandated forum are compounded by the fact that they filed this action in a Court that does not have jurisdiction.  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "The Court may consider evidence presented in affidavits and declarations in determining personal jurisdiction."  *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F.

Supp. 3d 42, 50 (N.D. Cal. 2020). Although "uncontroverted allegations in the complaint must be taken as true . . . [t]he Court may not assume the truth of allegations [in the Complaint] that are contradicted by affidavit." *Id.* "If both sides submit affidavits, [however,] then [c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (alteration in original) (quotation mark omitted).

Plaintiffs allege that personal jurisdiction is proper in California because WSP supposedly has "significant business contacts throughout California." (Compl. ¶ 14.) Even setting aside that Plaintiffs offer no factual support for this assertion, "[a] corporation's continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Bristrol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 264 (2017). Rather, to subject WSP to jurisdiction in California, Plaintiffs must meet the demanding standards for either general or specific jurisdiction.

To establish either type of jurisdiction, "the defendant [must have] certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). General jurisdiction exists only if WSP's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 128. "[O]nly a limited set of affiliations with a forum"—generally, the defendant's state of incorporation and the state containing its principal place of business—"will render a defendant amenable to general jurisdiction in that State. *Bristol-Myers Squibb Co.*, 582 U.S. at 262. By contrast, "[f]or a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* (all but first alteration in original).

WSP is not "essentially at home" in California. WSP USA, Inc. and WSP USA Buildings Inc. are New York corporations with their principal places of business in New York City, and kW does not exist as a separate entity anymore. (Clausen Decl. ¶ 8.) Accordingly, Defendants are not subject to general jurisdiction in California.

MOTION TO DISMISS, STAY OR TRANSFER                    Case No.: 3:24-cv-00292-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13

Nor is WSP subject to specific jurisdiction in California.  Plaintiffs do not describe any of the "business" WSP allegedly does in California, let alone explain how Plaintiffs' claims arise out of that in-state conduct.  (Clausen Decl. ¶¶ 44–54.)  Indeed, the only connection between this case and California is that CGE was organized under California law *after* Coon's employment with WSP ended.  Yet, "the plaintiff's residence [in the forum] alone is not enough to establish" personal jurisdiction.  *Continental Appliances, Inc. v. Thomas*, 2012 WL 3646887, at *5 (N.D. Cal. Aug. 23, 2012).  Coon resided in Arizona during and after his employment with WSP.  His Agreement was not negotiated or signed in  California.  WSP sent cease-and-desist letters to Coon in Arizona, not to CGE in California.  And the arbitration and injunction proceedings are both in New York.  Accordingly, Plaintiffs' claims do not arise out of WSP's forum contacts.  *See Inmar Rx Solutions, Inc. v. Devos, Ltd.*, 786 F. App'x 445 (5th Cir. 2019) (dismissing employee's challenge to noncompete for lack of personal jurisdiction in Texas even though employee's new business was incorporated there and the defendants sent cease-and-desist letters to the new employer there).

14
15

Because this Court lacks both general and specific jurisdiction over WSP, it must dismiss this Action.

16

**III.   Venue Is Improper in this District.**

17
18
19
20
21
22

For essentially the same reasons that the Court lacks personal jurisdiction, none of the requirements for venue in this District are met.  WSP does not reside in this District, "a substantial part of the events or omissions giving rise to the claim" did not occur in this District, and this District is not a district "in which any defendant is subject to the court's personal jurisdiction with respect to [this] action."  28 U.S.C. § 1391(b).  Accordingly, this action must be dismissed or, in the alternative, transferred to a proper venue.  *See* Part VI, *infra*.

23

**IV.   Plaintiffs Fail to State a Claim for Relief.**

24
25
26
27
28

On a Rule 12(b)(6) motion, a court must dismiss the complaint unless the plaintiff pleads "enough facts to state a claim to relief that is plausible on its face."  *Huynh v. Walmart, Inc.*, 2022 WL 3109562, at *7 (N.D. Cal. Aug. 4, 2022).  To do so, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[T]he Court need not accept as true allegations contradicted by judicially noticeable

11

facts" or "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Id.*

Even if this Court could hear Plaintiffs' claim (it cannot), Plaintiffs fail to state a claim for relief because (1) Plaintiffs lack standing to bring several of their claims; (2) Plaintiffs' claim would require the Court impermissibly to apply California law extraterritorially; (3) their claim ignores the choice-of-law provision in the Employment Agreement; and (4) the restrictive covenants do not violate California law.

### A.   CGE Lacks Standing to Pursue Its § 16600 Claim.

CGE lacks standing to bring a claim under § 16600. "The prerequisites for standing to assert statutorily-based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute." *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 466 (Cal. Ct. App. 2013). Here, the statute provides that "[a]n employee, former employee, or prospective employee may bring a private action to enforce this chapter." CAL. BUS. & PROF. CODE § 16600.5. CGE is a prospective ***employer***, not an employee, former employee, or prospective employee, and thus lacks standing. *See Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*, 2016 WL 4698931, at *3 (N.D. Cal. Sept. 8, 2016) (holding that former employee's new employer lacked standing under § 16600). Accordingly, CGE's claim must be dismissed.

### B.   The Restrictive Covenants Are Enforceable Under New York Law, Which Governs Plaintiffs' Claim.

Plaintiffs acknowledge that the Agreement provides that it "shall be governed by and construed in accordance with the law of the State of New York, without regard to principles of conflicts of law." (Ex. B at 11.) "[A] choice-of-law clause in a contract will apply to disputes about the existence or validity of that contract." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004). Under New York law, the restrictive covenants in Coon's Agreement are enforceable absent certain circumstances that Plaintiffs do not (and could not) allege in their Complaint. *See Bollengier v. Gulati*, 233 A.D.2d 721, 722 (N.Y. App. Div. 1996).

Nonetheless, Plaintiffs assert that California law, specifically Section 16600, applies to their claims and invalidates the noncompete and non-solicitation provisions of Coon's Employment Agreement. They are incorrect. Courts will enforce a non-California choice-of-law provision that has some connection to the contract at issue unless (1) doing so will impair California's fundamental public policy and (2) California has a materially greater interest in the dispute. *Ridenhour v. UMG Recordings, Inc.*, 2012 WL 463960, at *2 (N.D. Cal. Feb. 13, 2012). Here, New York's connection with the contract and this dispute is much stronger than California's. Coon worked for kW, which is based in New York. (Clausen Decl. ¶¶ 8–9.) Coon frequently worked with staff located in New York. (*Id.* ¶ 49.) Coon sent his resignation letter to Mr. Clausen in New York. (N.Y. Comp. Ex. D.) Additionally, the arbitration and injunction action to enforce the Agreement are pending in New York, and the Parties agreed in Agreement that any arbitration award can be enforced only in a New York court.

Moreover, if every former employee of a New York company can evade their contractual obligations by simply filing the forms to establish an LLC in California, New York's interests in protecting New York businesses generally, and in enforcing their contracts specifically, will be severely impaired. Indeed, New York's Governor Kathy Hochul recently vetoed a bill that, similar to Section 16600, "would broadly prohibit all non-compete agreements in New York," explaining that New York businesses "have legitimate interests [in non-competition agreements] that cannot be met with the Legislation's one-size-fits-all approach."[1]

By contrast, California has almost no connection to this case, and its "interest in protecting the freedom of movement of persons whom California-based employers . . . wish to employ to provide services in California," *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 901 (Cal. Ct. App. 1998), will not be materially impaired by applying New York law. CGE is not a "California-based employer" except for only in loosest possible sense. Plaintiffs have not shown that CGE has any operations or employees in California. Nor have they shown that Coon himself will "provide services" here. In short, the ***only*** event underlying this action that occurred in

---

[1]     N.Y. Veto No. 113 (2023), http://public.leginfo.state.ny.us/navigate.cgi?NVDTO:.

MOTION TO DISMISS, STAY OR TRANSFER          Case No.: 3:24-cv-00292-CRB

California appears to be that Coon filed CGE's Articles of Organization in California. Moreover, at least part of Coon's conduct which WSP alleges violates his restrictive covenants happened before CGE even existed.[2] Accordingly, New York law applies to Plaintiffs' claim. *See Medcor, Inc. v. Garcia*, 2022 WL 124163, at *5 (N.D. Ill. Jan. 13, 2022) (upholding Illinois choice-of-law provision and refusing to apply Section 16600 to a noncompete agreement under the same conflict-of-laws test used in California); *see also Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 98 (S.D.N.Y. 2021) (holding that Section 16600 had no application in New York's conflict-of-laws analysis).

Because New York law applies and permits enforcement of the restrictive covenants, Plaintiffs are not entitled to the relief they seek and their claim must be dismissed.

### C.    Plaintiffs' Claims Impermissibly Apply California Law Extraterritorially.

The extraterritorial application of Sections 16600 and 17200 of the Business & Professions Code violates the Dormant Commerce Clause. The Dormant Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015). Where a "state statute facially regulates a commercial transaction that takes place wholly outside of the State's borders . . . it violates the dormant Commerce Clause." *Id.* (quotation marks and citation omitted).

Section 16600, as amended effective January 1, 2024, facially violates the Dormant Commerce Clause because it regulates extraterritorial commercial transactions, specifically providing that it applies "regardless of whether the contract was signed and the employment was maintained outside of California." Cal. Lab. Code 16600.5(b). And in this case, Plaintiffs are impermissibly attempting to apply Section 16600 to an employment relationship outside California.

---

[2] Additionally, California law specifically provides the circumstances under which California policy requires an out-of-state choice-of-law provision in an employment agreement to be invalidated. Specifically, California's Labor Code provides that "[a]n employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . [d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." CAL. LABOR CODE § 925(a)(2). Coon is not entitled to this protection because he is not a California resident and does not work here, and the controversy did not arise here.

MOTION TO DISMISS, STAY OR TRANSFER                    Case No.: 3:24-cv-00292-CRB

1    Again, the Employment Agreement was not negotiated or signed in California, and neither Coon,

2    WSP, nor kW reside here.  (Clausen Decl. ¶¶ 8–9, 11, 46, 53.)  Accordingly, Section 16600, facially

3    and as applied to this case, violates the Dormant Commerce Clause and cannot be enforced.

4    Plaintiffs' Section 17200 claim is based on the alleged Section 16600 issue and attempts to regulate

5    the same conduct, and is thus subject to the same fate.

6            Moreover, the California Court of Appeals has held that an earlier, ***less restrictive*** version

7    of Section 16600 violated the Dormant Commerce Clause.  *Herbert v. Los Angeles Raiders, Ltd.*,

8    23 Cal. App. 4th 414, 423 (Cal. Ct. App. 1991).  In *Herbert*, a football player argued that a provision

9    of the NFL's contract with the NFL Players Association, restricting the terms on which "free agents"

10   (players whose contract with their current team has expired) could switch to a new team, violated

11   Section 16600 and the California Constitution.  The court explained that "[w]here the nature of an

12   enterprise is such that differing state regulation, although not conflicting, requires the enterprise to

13   comply with the strictest standard of several states in order to continue an interstate business

14   extending over many states, the extra-territorial effect which the application of a particular state law

15   would exact constitutes, absent a strong state interest, an impermissible burden on interstate

16   commerce."  *Id.* at 422 (quoting *Flood v. Kuhn*, 443 F.2d 264 (2d Cir. 1971)).  The court held that

17   the player's alleged "right to work as a professional football player . . . may not be enforced because

18   of its impermissible burden on interstate commerce."  *Herbert*, 23 Cal. App. 4th at 424.

19           As in *Herbert*, protecting Coon's alleged "right to work"—*i.e.*, his purported right to start a

20   California shell company for the sole purposing of hiring himself and stealing WSP's clients and

21   employees using inside information—would effectively require WSP "to comply with the strictest

22   standard of several states."  Specifically, it would require WSP to account for California's near-

23   complete ban on noncompete and non-solicitation agreements—in all its employment relationships,

24   regardless of where the employee, clients, or co-employees at issue are located.  It would also

25   substantially burden states like New York that want to protect employers' legitimate interests.

26           Because Plaintiffs' Section 16600 and 17200 claims would require an extraterritorial

27   application of those sections that would violate the Dormant Commerce Clause, they  must be

28   dismissed.  Additionally, courts routinely hold that Section 17200 does not apply extraterritorially

15

to claims by non-residents based on out-of-state conduct.  *See Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 223 (Cal. Ct. App. 1999).  Accordingly, at a minimum, Coon's Section 17200 claim must be dismissed.

### D.      The Restrictive Covenants Do Not Violate Sections 16600.

The restrictive covenants in Coon's Employment Agreement do not violate Section 16600. The statute has an explicit carve out allowing enforcement of restrictive covenants agreed to in connection with the sale of a business.  CAL. BUS. & PROFS. CODE § 16601.  Coon's restrictive covenants were signed in connection with the sale of his interest in kW and are essential to protecting the goodwill associated with WSP's purchase.  (Clausen Decl. ¶ 11.)  The data-center-design business is employee and team focused, such that part of the goodwill associated with kW was tied to its teams.  *See VCA Animal Hosps., Inc. v. Hampel*, 2023 WL 8857757, at *9 (Cal. Ct. App. Dec. 22, 2023) ("Where, as here, the goodwill of a business is built largely on relationships and reputation, it follows that the goodwill built by such an individual does not terminate upon the sale of the business when she continues to work there."); *Alliant Ins. Servs., Inc. et al. v. Gaddy,* 159 Cal. App. 4th 1292,  (2008) (upholding non-compete agreement).  Accordingly, the covenants are enforceable.

Plaintiffs' reliance on *Fillpoint, LLC v. Maas*, 208 Cal. App. 4th 1170 (Cal. App. Ct. 2012), is misplaced.  In that case, the plaintiff entered into an employment contract and a purchase agreement in connection with the sale of plaintiff's stock in a business acquired by the defendant, with each agreement containing a separate noncompete clause.  The court held that various differences between the two noncompete provisions indicated that the noncompete in the purchase agreement was meant to protect the goodwill that the defendant purchased in the transaction, but the noncompete in the employment agreement was not.  "[T]he two covenants not to compete were intended 'to deal with the different damage Maas might do wearing the separate hats of major shareholder and key employee.'"  *Fillpoint, LLC*, 208 Cal. App. 4th at 1183.

Plaintiffs assert that the purchase agreement is akin to Coon's RBA, and the differences between the covenants in the RBA and Employment Agreement demonstrate that Coon's Agreement was not intended to protect kW's goodwill.  Not so.  First, Coon did not wear "separate

16

hats" after WSP acquired kW:  He was a senior executive employee and team member, from which part of the purchased goodwill derived.  Thus, differences between the covenants in each agreement do not indicate anything.  Second, unlike the two agreements in *Fillpoint*, the covenants in Coon's Employment Agreement are not "much broader" than those in the RBA.  *Id.* at 1182.  To the contrary, many of the covenants are virtually identical.  *See Arthur J. Gallagher & Co. v. Petree*, 2022 WL 1241232, at *3 (E.D. Cal. Apr. 27, 2022) (holding that *Fillpoint* did not apply where, *inter alia*, "the noncompete provisions in [two agreements] are identical").  Third, unlike the purchase agreement in *Fillpoint*, which lasted for "thirty-six months after the Closing Date," the duration of the covenants in the RBA are not tied solely to the closing date:  They expired on the earlier of three years after closing *or* twelve months after Coon is terminated.  The California Court of Appeals has held that agreements with two alternative end dates can be included in covenants made in connection with the sale of a business.  *See VCA Animal Hosps., Inc.*, 2023 WL 8857757, at *9.  In short, the existence of the RBA does not suggest that the covenants in the Employment Agreement were not also intended to protect the goodwill WSP acquired when it purchased kW MCE.

Finally, Section 16600 does not apply to every type of restrictive covenant.  Specifically, Section 16600 does not apply to the provisions in Coon's Agreement prohibiting him from using or disclosing WSP's confidential information and trade secrets.  Cal. Bus. & Profs. Code § 16600.  Nor does Section 16600 apply to the provision prohibiting Coon from solicitating WSP's employees.  *See Arthur J. Gallagher & Co. v. Lang*, 2014 WL 2195062, at *4 (N.D. Cal. May 23, 2014).  Accordingly, even if Section 16600 applies to parts of Coon's Agreement (it does not), WSP would still be entitled to enforce several of the restrictive covenants in the New York arbitration.  Significantly, WSP has in fact alleged that Coon solicited kW employees, four of whom have already resigned from the Troy, New York office.  (Clausen Decl. ¶¶ 28–38.)  WSP also has reason to believe that Coon is using its confidential information and trade secrets to solicit WSP's clients and build his business, and WSP is entitled to seek discovery on that issue in the arbitration.

Because Section 16600 does not apply to the restrictive covenants in the Agreement, Plaintiffs have failed to state a claim.

17

1

### E.     Plaintiffs Fail to State a § 17200 Claim.

2

Plaintiffs also fail to state a claim for unfair competition under Section 17200.  "A private

3

action for violation of California Business & Professions Code § 17200 may only be brought 'by a

4

person who has suffered injury in fact and has lost money or property as a result of the unfair

5

competition.'"  *Howard v. Octagon, Inc.*, 2013 WL 5122191, at *7 (N.D. Cal. Sept. 13, 2013).

6

Neither Coon nor CGE has alleged that they have lost any property as a result of the WSP's alleged

7

conduct.  Instead, they allege only that WSP has or will sue Coon to stop him from violating his

8

restrictive covenants.  (Compl. ¶ 44.)  Because they have not alleged any lost of "money or

9

property," they lack statutory standing and their claims must be dismissed.

10

### V.     The Court Should Transfer This Action to the Southern District of New York.

11

Alternatively, the Court should transfer this case to the Southern District of New York,

12

which has the power to order Coon to arbitrate his claims directly.  *See* 9 U.S.C. § 4.  "For the

13

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

14

action to any other district or division where it might have been brought or to any district or division

15

to which all parties have consented."  28 U.S.C. § 1404(a).

16

This action could have been brought in the Southern District of New York.  WSP is

17

undoubtedly subject to personal jurisdiction in New York because it is incorporated and has its

18

principal place of business there.  For the same reason, venue is proper in the Southern District of

19

New York.  *See* 28 U.S.C 1391(b)(1).

20

Transfer is also convenient for the parties and witnesses and in the interest of justice.

21

"Courts in this District have regularly considered the following factors when deciding whether to

22

transfer a case under § 1404(a): '(1) plaintiff's choice of forum, (2) convenience of the parties, (3)

23

convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with

24

the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the

25

controversy, and (8) the relative court congestion and time of trial in each forum.'"  *Cabrera v.*

26

*Ford Motor Co.*, 2023 WL 6307946, at *2 (N.D. Cal. Sept. 26, 2023) (quoting  *Doe v. Epic Games,*

27

*Inc.*, 435 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020)).  Because the Parties have a forum-selection

28

clause that requires arbitration in New York, however, the analysis changes:  (1) Plaintiffs' "choice

1   of forum merits no weight" and Plaintiffs "bear[] the burden of establishing that transfer . . . is

2   unwarranted"; and (2) the Court "should not consider arguments about the parties' private

3   interests." *Bernal v. Kohl's Corp.*, 2023 WL 80088977, at *2 (C.D. Cal. Nov. 17, 2023). Thus, the

4   Court "should transfer the case unless extraordinary circumstances unrelated to the convenience of

5   the parties clearly disfavor a transfer." *Atl. Marine Const. Co. v. U. S. Dist. Ct. for W. Dist. of*

6   *Texas*, 571 U.S. 49, 52 (2013).

7        Each of the factors favors transfer to New York.  First, most of the witnesses and evidence

8   is in New York.  WSP and many of its representatives who will have to testify, such as Mr. Ken

9   Clausen, reside in New York.  All four employees who have resigned since Coon's departure reside

10  in New York.  (Clausen Decl. ¶ 54.)  And, to the extent necessary, all the evidence regarding the

11  Employment Agreement and purchase of kW will likely be in New York.  By contrast, none of

12  Plaintiffs' claims arose in California.  No physical person involved in this case is located in

13  California.  And although CGE resides here, it likely has little to no evidence in connection with

14  this case that it actually stores in California, and Coon, an Arizona resident, is likely the only CGE

15  representative who will be involved in this case.

16       Second, there is already a pending arbitration in New York.  If this litigation proceeds in

17  California while the New York arbitration continues, witnesses will have to appear in both states.

18  Additionally, because the arbitration is pending in New York, New York courts are capable of

19  directly compelling Plaintiffs to arbitrate their claims, rather than merely staying the action until

20  they decide to do so, as this Court must do.  *See* 9 U.S.C. §§ 3 & 4.

21       Third, New York courts are more familiar with New York law which, as explained above,

22  governs Plaintiffs' claims pursuant to the choice-of-law clause in the Employment Agreement.

23       Fourth, as also explained above, California has virtually no interest in this litigation, while

24  New York has a strong interest in protecting New York businesses and enforcing their contracts.

25       Finally, the Southern District of New York is less congested than this Court.  This Court

26  had 568 weighted filings and 1,001 pending cases per judge in the last reported twelve-month

27

28

MOTION TO DISMISS, STAY OR TRANSFER               Case No.: 3:24-cv-00292-CRB

1  period, September 2022 to September 2023.[3]  By contrast the Southern District of New York had

2  534 weighted filings and 631 pending cases per judge in that period.

3  Because the Parties' have a valid forum selection clause and each of the § 1404 factors

4  favors transfer, if this Court does not dismiss or stay this action, the Court should transfer it to the

5  Southern District of New York.

6  **<u>CONCLUSION</u>**

7  For the forgoing reasons, this Court should dismiss this case.  Alternatively, the Court should

8  stay the case pending resolution of the ongoing arbitration in New York.

9

10  Dated: February 2, 2024                          HOLLAND & KNIGHT LLP

11

12                                             By:  /s/ *Samuel J. Stone*

13                                             Attorney for Defendants

14                                             WSP USA, INC., WSP USA BUILDINGS INC., and
                                               kW MISSION CRITICAL ENGINEERING, D.P.C.

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    [3] U.S. Dist. Cts.—Nat'l Jud. Caseload Profile (Sept. 2023),

28  https://www.uscourts.gov/file/76945/download

MOTION TO DISMISS, STAY OR TRANSFER              Case No.: 3:24-cv-00292-CRB

1

**<u>CERTIFICATE OF SERVICE</u>**

2          I, Sam Stone, hereby certify that on February 2, 2024, I caused the foregoing Motion to

3   Dismiss to be served on all Parties in this action by filing it on this Court's CM/ECF system.

4

5                                    */s/ Sam Stone*
                                     Sam Stone

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400  Fax: 213.896.2450

MOTION TO DISMISS, STAY, OR TRANSFER                    Case No.: 3:24-cv-00292-CR