HOLLAND & KNIGHT LLP
Samuel J. Stone (SBN 317013)
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: (213) 896-2400
Facsimile:  (213) 895.2450
Email:  sam.stone@hklaw.com

HOLLAND & KNIGHT LLP
Nipun J. Patel (*pro hac vice*)
Justin M. Kadoura (*pro hac vice*)
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone: 215.252.9527
Fax: 215.867.6070
Email: nipun.patel@hklaw.com
       justin.kadoura@hklaw.com

Attorneys for Defendants
WSP USA, INC., WSP USA BUILDINGS, INC. and
kW MISSION CRITICAL ENGINEERING, D.P.C.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CG ENTERPRISES HOLDINGS, LLC, a California limited liability company; and STEPHEN M. COON, an individual;<br><br>         Plaintiff,<br><br>  vs.<br><br>WSP USA, INC., a New York corporation; WSP USA BUILDINGS, INC., a New York corporation; kW MISSION CRITICAL ENGINEERING, D.P.C., a New York design professional corporation; and DOES 1 through 20, inclusive,<br><br>         Defendants. | Case No.  3:24-cv-00292-VC<br><br>[Removed from Sonoma County Superior Court Case No.: 24CV00024]<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br><br><br>Action Filed:  January 2, 2024 |

OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................................1

BACKGROUND ..................................................................................................................................2

LEGAL STANDARD ...........................................................................................................................5

ARGUMENT ........................................................................................................................................6

    I.    Coon Has No Likelihood Of Success On The Merits For All The Reasons Set Forth In The Motion To Dismiss (Incorporated By Reference) ..............................................6

    II.   Plaintiffs Cannot Establish Irreparable Harm ........................................................................7

        A.    Plaintiffs' Alleged Harm Is Not Serious and Is Not Irreparable ............................7

        B.    Plaintiffs' Alleged Harm Is Merely Speculative And Cannot Be Considered Irreparable ............................................................................................8

        C.    Plaintiffs' Alleged Harm Can Be Remedied Through Monetary Relief ..............10

        D.    Plaintiffs' Alleged Harm Would Not Qualify For Injunctive Relief, As "Self-Inflicted Wounds Are Not Irreparable Injury." ...................................11

    III.   Plaintiffs Cannot Use a TRO to Seek a Declaratory Judgment as to the Agreement ..............................................................................................................11

    IV.   The Balance of the Equities and Consideration of the Overall Public Interest Requires Denying Coon's TRO ................................................................12

        A.    The Equities—and the Balance Thereof—Do Not Favor Coon ..........................12

        B.    Consideration of the Overall Public Interest Disfavors Unlimited Forum Shopping ............................................................................................13

    V.    CONCLUSION ................................................................................................................14

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400 Fax: 213.896.2450

i

OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ......................................................................................................11

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ..................................................................................................6, 8

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ..................................................................................................1, 6

*AT & T Mobility LLC v. Concepcion*,
  563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011).............................................................14

*California v. Trump*,
  379 F. Supp. 3d 928 (N.D. Cal. 2019), *aff'd*, 963 F.3d 926 (9th Cir. 2020) ...............................8

*Capriole v. Uber Techs., Inc.*,
  7 F.4th 854 (9th Cir. 2021) ..........................................................................................................14

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) ........................................................................................................8

*Epic Games, Inc. v. Apple Inc.*,
  493 F. Supp. 3d 817 (2020) .................................................................................................11, 13

*Epic Sys. Corp. v. Lewis*,
  ___ U.S. ____, 138 S. Ct. 1612, 200 L.Ed.2d 889 (2018).........................................................14

*In re Excel Innovations, Inc.*,
  502 F.3d 1086 (9th Cir. 2007) ......................................................................................................8

*Facebook, Inc. v. BrandTotal Ltd.*,
  499 F. Supp. 3d 720 (N.D. Cal. 2020) .........................................................................................6

*Gold v. Maurer*,
  251 F. Supp. 3d 127 (D.D.C. 2017).....................................................................................10, 11

*Goldie's Bookstore, Inc. v. Superior Court*,
  739 F.2d 466 (9th Cir. 1984) ..................................................................................................8, 10

*Granny Goose Foods, Inc. v. Teamsters*,
  415 U.S. 423 (1974).........................................................................................................1, 6, 11

*In re Grice*,
  974 F.3d 950 (9th Cir. 2020) ......................................................................................................14

*Henry Schein, Inc. v. Cook*
  (N.D. Cal. 2016) 191 F. Supp. 3d 1072 ................................................................................5

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  273 F. Supp. 3d 1099 (N.D. Cal. 2017) ..............................................................................7

*Idaho v. Coeur d'Alene Tribe*,
  794 F.3d 1039 (9th Cir. 2015) ...........................................................................................10

*Los Angeles Memorial Coliseum Commission v. National Football League*,
  634 F.2d 1197 (9th Cir. 1980) .......................................................................................8, 10

*National Urban League v. Ross*,
  484 F. Supp. 3d 802 (N.D. Cal. 2020) ..............................................................................12

*Reno Air Racing Ass'n., Inc. v. McCord*,
  452 F.3d 1126 (9th Cir. 2006) ....................................................................................1, 6, 11

*Rum v. HCA Heathcare, Inc.*,
  Case No. CV 23-5142-JFW(BFMx), 2023 WL 7107268 (C.D. Cal. Oct. 11,
  2023) ....................................................................................................................................9

*Salt Lake Tribune Publ'g Co., LLC v. AT & T Corp.*,
  320 F.3d 1081 (10th Cir. 2003) .........................................................................................11

*Sampson v. Murray*,
  415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ...........................................................10

*Second City Music, Inc. v. City of Chicago*,
  333 F.3d 846 (7th Cir. 2003) .............................................................................................11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) ...............................................................................................5

*Teutscher v. Woodson*,
  835 F.3d 936 (9th Cir. 2016) .............................................................................................10

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) ...........................................................................................................13

*Winter v. Nat. Resources Defense Council*,
  555 U.S. 7 (2008) ..................................................................................................1, 6, 8, 12

**Statutes**

Cal. Bus. & Prof. Code § 16600 ................................................................................................7

**Other Authorities**

*in Support of Motion to Dismiss, at ¶¶ 5-6* ............................................................................2

# INTRODUCTION

Neither Plaintiff Stephen Coon ("Coon") nor the LLC he created to subvert his restrictive covenants is entitled to any relief in this Court, let alone the extraordinary relief of a temporary restraining order (TRO) or preliminary injunction. Plaintiffs[1] cannot establish a single element of the test for obtaining such extraordinary relief: they do not have a likelihood of success on the merits; they cannot show irreparable injury; and the balance of equities and public interest weigh against them. Plaintiffs' inability to establish these elements is underscored by the Supreme Court and Ninth Circuit's strong reluctance to grant Temporary Restraining Orders. *See, e.g., Winter v. Nat. Resources Defense Council*, 555 U.S. 7 (2008); *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 438-39 (1974); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009); *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006).

First, as explained in Defendants'[2] Motion to Dismiss, (ECF No. 24), there is no likelihood of success on the merits because Coon's open campaign to divert clients and employees from his former employer violate the enforceable restrictive covenants and forum selection clauses in his Employment Agreement ("Agreement"), as well as well-established limits on this Court's jurisdiction. The Agreement between Coon, a citizen of Arizona, and Defendants WSP USA, Inc., *et al.* ("WSP" or "Defendants"), citizens of New York, include valid arbitration, choice of law, and forum selection clauses that Coon agreed to in exchange for handsome consideration paid as part of a sale of business goodwill. Coon's violations of those covenants occurred outside of this forum and are subject to a pending arbitration in New York pursuant to the Parties' valid forum-selection clause. Plaintiffs' Ex Parte Application ("Application") for a TRO is nothing more than a direct attempt to sidestep those valid restrictive covenants and arbitration provision by dragging California courts and California law into a dispute that has nothing to do with California. The Agreement's forum-selection clause and the limits of this Court's personal jurisdiction over Defendants preclude that attempt.

---

[1] CG Enterprises Holdings, LLC ("CG") and Stephen Coon ("Coon" and collectively, "Plaintiffs").
[2] Defendants refers to WSP USA, INC., a New York corporation; WSP USA BUILDINGS, INC., a New York corporation; and kW MISSION CRITICAL ENGINEERING, D.P.C., a New York design professional corporation.

1
OPPOSITION EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

Second, Plaintiffs' speculative claims of irreparable harm lack both factual and legal support. Ultimately, what Plaintiffs seek is an improper and premature declaratory judgment, and any supposed harm from lack of an early ruling could readily be compensated by monetary relief.

Third, both public and private interests weigh in favor of denying Plaintiffs relief. The Court should not reward Plaintiffs' attempts to forum shop and undo their prior contractual commitments.

For all of these independent reasons, Plaintiffs' Application should be denied.

## BACKGROUND

In December 2020, WSP acquired kW MCE, a small (then approximately 175 employee) engineering firm that focused primarily on designing data centers and other mission-critical projects. *See Declaration of Kenneth Clausen ("Clausen Decl.") in Support of Motion to Dismiss, at* ¶¶ 5-6 (ECF 24-1). Coon worked for kW MCE for approximately seven years before WSP acquired kW MCE, and Coon entered an Agreement with WSP on December 30, 2020, as a Professional Electrical Engineer and Managing Principal of the Phoenix, Arizona Office. *Clausen Decl.* ¶¶ 10-13, *Ex. B*. Coon gained substantial experience and insight into kW MCE's data center business and had key responsibilities for leadership of key client accounts and projects associated with data center program design and build out. *Clausen Decl.* ¶ 16. Coon also gained knowledge about all aspects of kW MCE's customers' programs, including schedule, budget, risk and desired engineering team. *Clausen Decl.* ¶ 17.

Coon's Agreement provided for a $200,000 a year base salary, benefits, and potential performance bonuses. *Clausen Decl. Ex. B*. In exchange for this compensation, Coon agreed not to compete with WSP, not to divert business from the Company's clients or prospective clients or soliciting or hiring anyone within his last 12 months of employment with WSP who was employed, consulting for, or contracting with WSP. *Clausen Decl. Ex. B*. Such covenants are necessary for WSP, in an industry that is not only extremely competitive, but also dependent on a company's (1) ability to understand and accommodate a client's needs, and (2) quality and reputation of its engineers. *Clausen Decl.* ¶ 39. Consequently, competition from former high-level employees like Coon, with knowledge of kW's trade secrets, and with direct responsibility for managing some of WSP's largest customer accounts, would be devastating for WSP.

1    These covenants were for 12 months post-separation from WSP, unless Coon were to fail
2    to renew his contract and thus convert to an at-will employee for one year. *Clausen Decl., Ex. B.*
3    Coon made no such at-will election at that time. Indeed, quite the opposite: on December 29, 2020,
4    Coon signed a Retention Bonus Agreement ("RBA"), the day before signing his Agreement, and
5    WSP paid Coon a bonus of $475,000 over the course of two years in addition to his compensation
6    under the Agreement. *Clausen Decl.* ¶¶ 12, 14, *Ex. C*. The RBA also contained similar restrictive
7    covenants as in the Agreement. *Id.* These covenants are all governed by New York law and the
8    Agreement covenants contains the following arbitration provision:

> **17. Resolution of Disputes**
>
> (a) Any dispute arising between any of the Company and Senior Leader under this Agreement, or under any statute, regulation, or ordinance, or in connection with the Senior Leader's Employment with the Company, shall be submitted to binding arbitration before the American Arbitration Association ("AAA") for resolution (the "Arbitration"), unless otherwise prohibited by law.
>
> (b) The Arbitration shall be conducted in the State of New York, and the arbitrator will apply New York State law, including federal law as applied in New York courts. The arbitration shall be conducted in accordance with AAA's Employment Arbitration Rules and Procedures, as modified herein. The Arbitration shall be conducted by a single arbitrator who shall have experience in Senior Leader management disputes. The arbitrator, and not any federal, state, or local court or adjudicatory authority, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, and/or formation of this Agreement, including but not limited to any dispute as to whether a particular claim is subject to arbitration thereunder. The arbitral award shall be in writing, state the reasons for the award, and be final and binding on the parties.

*Clausen Decl., Ex. B.*, at Section 17 (a) and (b).

On November 2, 2022, Coon gave notice that he would not renew the Agreement, making him an at-will employee as of December 30, 2022. *See Clausen Decl.* ¶¶ *19-20, Ex. D.* Coon did not, however, remain with WSP for a year after that date, as required by the Agreement to excuse him from the 12-month tail in the restrictive covenants. Instead, he tendered his resignation on October 18, 2023. *Id.* ¶ 21, *Ex. E.* His actual last day was November 3, 2023. *Clausen Decl.* ¶ 23. Accordingly, the non-compete and non-solicitation provisions of his Agreement are still in effect until November 3, 2024. Nonetheless, Coon began forming a competing business operating in Arizona (where he lives) intending to take advantage of the exploding demand for data centers because of the growth of AI software and applications. *Clausen Decl.* ¶ 24. Since his resignation

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Tel.: 213.896.2400 Fax: 213.896.2450

(and likely earlier), Coon has solicited several former kW MCE/WSP employees to join him. *Clausen Decl.* ¶¶ 25, 28.

Prior to his resignation, Coon openly admitted to his colleague, Mr. Clausen, that he was starting a competing business in Phoenix and upstate New York, near kW MCE's Troy, New York office (where Clausen works), and had a lease ready to be executed in January of 2024. *Clausen Decl.* ¶ 24. Coon also told Clausen he was "going to be taking anyone in Troy who had not signed a retention agreement," and acknowledged that he needed kW MCE's MEP engineers to deliver on competitive services to the very clients that Coon was responsible for servicing at kW MCE. *Id.* Coon openly touted that if he recruited WSP's talent, he could start a business that could compete directly with WSP. *Clausen Decl.* ¶ 26. He also bragged that a member of the C-suite of a WSP competitor, Bowman Engineering, was already planning to pay him to buy the new business once it was scaled up to $25 million in annual revenue. *Clausen Decl.* ¶ 27. Based on Coon's prior comments to Clausen, he is likely to target at least four other key kW MCE employees in early 2024, if he has not already done so, in addition to at least three other employees Coon started poaching by December 2023 (if not earlier). *Clausen Decl.* ¶¶ 28, 42.

Together, Coon and the employees he has recruited to compete against kW MCE have the potential to inflict substantial harm to WSP's business. *Clausen Decl.* ¶ 39. The key accounts that Coon was responsible for servicing have the potential to generate tens of millions of dollars for FY 2024 and beyond. *Clausen Decl.* ¶ 40. Further, Coon has in-depth knowledge of WSP's trade secrets including customer preferences, pricing, desired teams, project specifications, engineering specifications, and kW MCE's existing and past work for those key customers. *Clausen Decl.* ¶ 41. He has wantonly disregarded any and all confidentiality and non-disclosure agreements relating to this confidential information, specifically targeting poaching certain WSP employees *because of* their expertise and knowledge of WSP's operations and clients. *Clausen Decl.* ¶ 42.

On October 25, 2023, WSP's counsel sent Coon a letter, reminding him of his obligations under the restrictive covenants. *See* ECF 24-1, Ex. H. Shortly after voluntarily resigning from WSP, Coon formed Plaintiff CGE, a single manager operated entity. On December 29, 2023,

WSP's counsel sent similar letters to other employees whom Coon had recruited. *See* ECF 24-1, Exs. I-L.

On January 2, 2024, WSP filed a Demand for Arbitration with AAA against Coon pursuant to § 17(a) of the Agreement, asserting claims for breach of fiduciary duty, breach of contract, and tortious interference with contract. WSP simultaneously moved for emergency interim relief in the AAA, including a temporary order enjoining Coon from violating the restrictive covenants during the pendency of the arbitration. That same day, Coon and CGE improperly filed this Action, seeking an order declaring that the restrictive covenants are unenforceable under California law and enjoining WSP from enforcing the rights it paid for under the Agreement. *See* ECF 6, Plaintiffs' Application for a Temporary Restraining Order. Significantly, Coon admits that he is bound to this arbitration provision and that he must arbitrate whether or not he has breached his restrictive covenants, as WSP alleges. *Id.*, at 8 ("The Agreement requires the parties to resolve their disputes by binding arbitration with the American Arbitration Association ("AAA") in New York pursuant to AAA's Employment Arbitration Rules and Procedures."). Notably, Coon does not deny that he is, or immediately plans on, competing against WSP, or poaching WSP's employees. *Id.*

## **LEGAL STANDARD**

The threshold to obtain a Temporary Restraining Order is extraordinarily high. Though ordinarily "[t]he same legal standard applies to a motion for a Temporary Restraining Order and a motion for a preliminary injunction" (*Henry Schein, Inc. v. Cook* (N.D. Cal. 2016) 191 F. Supp. 3d 1072, 1076 (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001))), an even higher burden is imposed on TROs requested *ex parte*. As per the Ninth Circuit and Supreme Court:

> The stringent restrictions imposed . . . by Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 438-39 (1974)) (internal citation removed; ellipsis in original). Consequently, "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.*, at 1131.

Under any circumstance, injunctive relief (including TROs) are "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Resources Defense Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a TRO or preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). These four factors are all taken into consideration and weighed in a court's analysis. Moreover, irreparable harm must be *likely*—"it is no longer sufficient to grant a preliminary injunction upon a mere showing of a '*possibility*' of irreparable harm," even if the other factors weigh heavily in favor of the plaintiff. *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720 (N.D. Cal. 2020) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (emphasis added)).

## ARGUMENT

### I. Coon Has No Likelihood Of Success On The Merits For All The Reasons Set Forth In The Motion To Dismiss (Incorporated By Reference).

Plaintiffs are unlikely to succeed on the merits in this case for the reasons set forth in Defendants' pending Motion to Dismiss (ECF 24). Briefly summarized, Coon filed this action asserting what he admits are arbitrable claims in an improper state court forum for the sole purpose of attempting to take advantage of California law to rewrite the Agreement, avoid his duty to arbitrate, and escape the consequences of his misconduct. The covenants in question are between Coon, an Arizona resident, and WSP, a New York company with its principal place of business in New York; the Agreement was not negotiated or signed in California; the Agreement was executed in connection with WSP's purchase of kW Mission Critical Engineering ("kW"), Coon's former business, also based in New York; the Agreement specifically requires Coon to arbitrate claims

against WSP in New York under New York law; and part of WSP's claims against Coon in the underlying arbitration relates to his tortious poaching of employees that worked in kW's Troy, New York office. Coon artificially manufactured and contrived the only connection between this action and California. Accordingly, the Court should dismiss the case, stay it, or transfer it.

Second, even if Plaintiffs could sue in California (and they cannot), Plaintiffs are not entitled relief under Section 16600 (or derivative relief under Section 17200). CGE lacks standing to bring its claim because Section 16600 creates a cause of action only for employees; applying Section 16600 would violate the New York choice-of-law provision in Coon's Agreement; and the Dormant Commerce Clause prohibits Plaintiffs' attempts to apply Section 16600 to wholly extraterritorial conduct.

Accordingly, this Court should either dismiss Plaintiffs' claims or stay them pending resolution of the Parties' ongoing arbitration. Under any scenario, Plaintiffs are unlikely to succeed on the merits and should be denied any preliminary relief or a TRO.

## II. Plaintiffs Cannot Establish Irreparable Harm.

Irreparable harm—arguably the most important factor in a TRO or injunction determination—simply cannot be established on Plaintiffs' proffered record. Plaintiffs cannot show there is or will be any "irreparable harm" because the harm alleged, if it exists, is not great, imminent, or non-compensable through monetary relief, and it is entirely self-inflicted. Indeed, the facts point in exactly the opposite direction: If Coon's requested injunctive relief is granted, WSP will be the one to suffer irreparable injury.

### A. Plaintiffs' Alleged Harm Is Not Serious and Is Not Irreparable.

Though this Court has recognized that a massive harm to business could be considered irreparable, it must truly be massive—such as where the plaintiff had "credibl[y]" proven that non-issuance of an injunction would lead plaintiff to "shutter its operations." *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1105 (N.D. Cal. 2017). That is not what Plaintiffs assert, nor can they. Plaintiffs have not identified any WSP customers which they intend to solicit but cannot because of the restrictive covenants. *See* Plaintiffs' Ex Parte Application for TRO (ECF 6). Nor have Plaintiffs shown that WSP customers and employees are the ***only*** population they have

7
OPPOSITION EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

available to solicit from, or that Coon has tried to obtain other work anywhere in the country, let alone in California, but was precluded from doing so. *Id.* Indeed, Coon's restrictive covenants are narrow because they apply only to specific categories of WSP clients. *See Clausen Decl.*, *Ex. B.* Coon is not to engage with a client/prospect with whom he worked or about whom he learned in the last twelve months of his employment. *Id.* This is a reasonable, narrowly tailored provision, especially in light of the concerns WSP has regarding competition in this industry, and in light of the amount Coon was paid in exchange for his agreement. Indeed, there is no chance that these short-term and narrow noncompetition and nonsolicitation provisions could cause irreparable injuries, especially those likened to "shutter[ing] its operations." Plaintiffs are not entitled to a TRO.

### B. Plaintiffs' Alleged Harm Is Merely Speculative And Cannot Be Considered Irreparable.

Plaintiffs' alleged "irreparable harm" is speculative, at best, and thus insufficient to warrant injunctive relief. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984), and *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)); *accord In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007). Plaintiffs cannot "ignore that the burden is theirs to demonstrate that irreparable injury is ***likely*** in the absence of an injunction." *California v. Trump*, 379 F. Supp. 3d 928, 959 (N.D. Cal. 2019), *aff'd*, 963 F.3d 926 (9th Cir. 2020) (citing *Winter*, 555 U.S. at 22). But "'[s]peculative' or 'possible' injury is not enough." *Id.* (quoting *All. for the Wild Rockies*, 632 F.3d at 1131–36).

Here, Plaintiffs can allege only speculative injuries. Plaintiffs cannot report any loss of income, business, revenue, or clients, nor do they try to. Instead, Plaintiffs allege only that WSP will try to enforce the Agreement to stop Coon from violating his restrictive covenants. *See* ECF 6, at 10. Plaintiffs argue that Coon will be prevented from obtaining a job in an area of his expertise,

and that Coon's alter ego, CGE, will be prevented from "employ[ing]" him, until November 2024 or, inexplicably, later. *Id.*, at 11-13. Yet, these arguments are akin to stating the "irreparable harm" is a "fear" of these allegations arising, as there is nothing supporting the claim that they will imminently arise. *See Rum v. HCA Healthcare, Inc.*, Case No. CV 23-5142-JFW(BFMx), 2023 WL 7107268, at *2 (C.D. Cal. Oct. 11, 2023) ("[Plaintiff's] feelings of concern regarding the threat of litigation, her credit, and finances are purely speculative and not sufficient to establish a likelihood of irreparable harm."). This is not irreparable harm.

Although WSP has initiated an arbitration proceeding against Coon in New York pursuant to the Agreement's valid forum-selection clause, the Parties have no idea how that arbitration will turn out. If this TRO is denied, all that happens is that this case proceeds on its normal track (whatever that may be) while an arbitrator decides: (1) whether or not Coon's restrictive covenants are valid, and (2) whether Coon breached them. Unless and until the arbitrator rules against Coon, however, the supposed alleged harm to his business will not occur. A cloud of uncertainty about potential liability and outcomes in a pending arbitration is purely speculative "harm," not the type of concrete irreparable injury warranting a TRO.

Moreover, the true irony here is that Coon *had* the opportunity in the arbitration to litigate, on an expedited basis, the issue of emergency relief pending arbitration of WSP's claims—but Coon objected to doing so because he believed the AAA lacked jurisdiction. But Coon now consents to arbitration (and is engaged in the same). He should not now be allowed litigate *more* claims that are undoubtedly subject to the AAA's jurisdiction under the Agreement in a court that clearly lacks jurisdiction, all the while claiming that he will be subject to irreparable harm if a court does not grant him immediate relief.

In any event, a temporary pause on Coon's ability to divert WSP's customers and employees using its trade secrets is not an ***irreparable*** harm. Even if the covenants would hinder Coon's ability to work (they will not), Coon will not be harmed irreparably if he has to wait the time he ***agreed to*** in his contract—and for which he was paid over half a million dollars in exchange[3]—before he can openly bilk his old employer and steal its customers and employees. To that end, any theoretical

---

[3] This figure includes Coon's $475,000 Retention Bonus plus $200,000 salary.

9
OPPOSITION EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1  damages Coon would incur from not being able to compete are entirely that: theoretical.  Coon has provided no evidence to support his claim that he would miss out on future job opportunities, he is simply making up a possible outcome.  Therefore, Coon has failed to meet his burden, as he cannot succeed in this claim without showing irreparable harm if the TRO is not granted.

### C. Plaintiffs' Alleged Harm Can Be Remedied Through Monetary Relief.

Moreover, Plaintiffs alleged "injuries," if any exist (they do not), *can* be compensated with monetary damages.  Because irreparable harm does not include "financial injuries[,]" Plaintiffs would not be entitled to injunctive relief.  *Goldie's Bookstore v. Superior Court,* 739 F.2d 466, 471 (9th Cir. 1984); *see also Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974); *Los Angeles Memorial Coliseum Commission*, 634 F.2d at 1202.  Specifically, "[p]urely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation."  *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015).  Therefore, even if Coon were "wrongly" "prevented from obtaining a job in an area of his expertise until November 2024" (as alleged in the Application), Coon would potentially be entitled to lost wages he would have earned with a competitor if he prevails in the arbitration.  *Teutscher v. Woodson*, 835 F.3d 936, 945-46 (9th Cir. 2016) ("One key component of economic loss is the income that the employee would have earned" but for the unlawful action).  Here, inability to work can be directly assessed in terms of a monetary value, namely, the salary Coon would have been paid: $200,000.

Monetary damages are adequate to redress this alleged harm and thus no injunctive relief is warranted.  Under similar circumstances in a District of D.C. case, where arbitration was pending and a party sought an injunction, the Court found the relief sought was exactly that which an arbitrator could resolve.  *See Gold v. Maurer*, 251 F. Supp. 3d 127 (D.D.C. 2017).  Indeed, the Court held:

> [A]lthough Plaintiffs have specified, to some degree, the injuries that they will suffer absent injunctive relief, they have failed to explain in any detail how those injuries are irreparable. Plaintiffs are pursuing arbitration wherein they seek damages for Defendant's allegedly defamatory statements, and have not indicated, let alone explained why, they could not be adequately made whole for the alleged injuries to their reputations and Steward's business through damages and other forms of relief that can be granted by the arbitrator.  In fact, the injuries that the temporary restraining order is most likely to preclude—harm to Steward's relationship with the Business Partner—are also of the type that are mostly likely to be

10

OPPOSITION EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

provable and compensable in the underlying arbitration by, for example, a showing of lost business revenue as a result of the impaired relationship.

*Id.*, at 135-36.

Similarly, here, Plaintiffs should redress their alleged monetary losses in arbitration, not through this Court and not through injunctive relief. They are simply not entitled to equitable relief when monetary damages could rectify their alleged injury.

### D. Plaintiffs' Alleged Harm Would Not Qualify For Injunctive Relief, As "Self-Inflicted Wounds Are Not Irreparable Injury."

Finally, the harm Coon alleges he and CG would suffer are entirely a result of his own breach of his contract. A party will not be rewarded for its own misdeeds with a finding of "irreparable injury" sufficient to warrant equitable relief. Indeed, "self-inflicted wounds are not irreparable injury." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (*quoting Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003)). This principle "guide[s]" the equitable relief evaluations this Court makes. *Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817 (2020). Courts also decline to find irreparable harm if such alleged harm "results from the express terms of [the] contract." *See Salt Lake Tribune Publ'g Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) (finding no irreparable harm where the alleged harm "results from the express terms of [the] contract"). Here, the only harms Plaintiffs allege are those which result directly from Coon's deliberate breaches of his restrictive covenants. It is inequitable to reward Coon for his wrongdoings with an injunction and permission to continue his wrongdoing. Coon's alleged harm cannot be considered irreparable because it is not of the magnitude or nature of truly *irreparable* harm, it is speculative, it is inherently financial, and it is entirely self-inflicted. The injunctive relief should be denied.

### III. Plaintiffs Cannot Use a TRO to Seek a Declaratory Judgment as to the Agreement.

Finally, the irreparable harm alleged is not that which will result from the denial of this motion. TROs, including those filed *ex parte*, are "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Reno Air Racing Ass'n, Inc.*, 452 F.3d at 1131 (quoting *Granny Goose*

*Foods, Inc.*, 415 U.S. at 438-39); *accord National Urban League v. Ross*, 484 F. Supp. 3d 802, 805 (N.D. Cal. 2020). Here, the "status quo" simply means allowing the pending arbitration to proceed.

Coon attempts to divert this Court's attention by explaining the alleged consequences of enforcing his non-solicitation and noncompete clauses against him, personally. Denying the TRO, however, does not mean that Coon's restrictive covenants will be enforced. That is for the ***arbitrator*** to decide, as Coon has consented to. In fact, Coon only points to the harm he supposedly might suffer if he were actually required to abide by the contractual covenants he made, the violations of which he has made no effort to deny.

## IV. The Balance of the Equities and Consideration of the Overall Public Interest Requires Denying Coon's TRO.

Coon also fails to show that he will prevail in the final factors weighed by the court when deciding whether to issue injunctive relief: the balance of hardships test and public interest inquiry. *Winter*, 555 U.S. at 26. This is a bifurcated test where the Court first looks to the relative hardship placed on each party if an injunction is or is not granted. *Id*. Subsequently, the court will turn to whether public policy dictates whether an injunction should be granted. *Id*.

### A. The Equities—and the Balance Thereof—Do Not Favor Coon.

Coon does not—and cannot—show that he will be more burdened *without* a TRO than WSP would be with it. As explained, without an injunction, Coon will proceed in arbitration (a proceeding agreed via contract) in New York (a jurisdiction agreed via contract), on the question of (1) whether Coon's restrictive covenants are valid and (2) whether he has breached them. In the alternative, if an injunction were granted against WSP, it would eviscerate the contracts between Coon and WSP and judicially sanction Coon's subversion of WSP's business by pillaging its clients and employees openly. Thus, even if Coon could establish potential harm—which he has not done—such harm is minor compared to the harm resulting to WSP if its business and employees are stolen. The potential harm of granting an injunction falls entirely on WSP and vastly outweighs any theoretical harm to Coon if the injunction is not granted.

And, this is an equitable balancing test. It is unfathomable that Coon seeks the relief prayed for from this Court when he comes before the Court with unclean hands. ***Coon openly told his***

*colleagues, well before he resigned, that he was opening a competitive business in Phoenix and was "going to be taking anyone in Troy [New York] who had not signed a retention agreement*." The equities in this matter do not permit Coon flippantly telling his (then) current employer he was going to steal their business and employees in violation of his agreements, and then seeking to undo those agreements *after* WSP attempted to enforce them.

### B. Consideration of the Overall Public Interest Disfavors Unlimited Forum Shopping.

Similarly, an injunction would be against the public interest. The Supreme Court held in *Weinberger v. Romero-Barcelo* that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." 456 U.S. 305, 312 (1982). The public has an interest in preventing forum shopping. As further described by the Motion to Dismiss, incorporated by reference here, it is clear that Coon filed this action in California—a state with nearly no nexus to this case—for the purpose of trying to take advantage of California law on non-competition and non-solicit provisions and attempting to avoid the valid arbitration and choice-of-law clauses in his Agreement. The interest of the public requires putting a stop to this forum shopping antithetical to the Federal Rules of Civil Procedure. Indeed, not only does New York have an interest in protecting its businesses who lawfully contract to arbitrate in that state, California has an interest in preventing litigants from improperly clogging its dockets and wasting the time of its juries with actions that have nothing to do with this State.

Similarly, it would go against the public interest to overrule an allegedly illegal contract that has not been shown to be unenforceable at all. *See, e.g., Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817, 852 n. 36 (2020) (Finding in its Preliminary Injunction determination, as to the public interest: "Epic Games cites authority that it is not in the public interest to enforce illegal contracts. Of course, these cases presuppose a showing on the illegality of the contract, which Epic Games has not yet done, and are therefore inapposite."). So too does the public have an interest in contracts being enforced, including arbitration provisions. Indeed, protecting arbitration provisions was the explicit purpose Congress named in enacting the FAA, and has required courts to honor such agreements:

> "Congress enacted the FAA in 1925 "in response to a perception that courts were unduly hostile to arbitration." *Epic Sys. Corp. v. Lewis*, ___ U.S. ____, 138 S. Ct. 1612, 1621, 200 L.Ed.2d 889 (2018). Designed to replace this "widespread judicial hostility" with a "liberal policy favoring arbitration," *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (citation omitted), the FAA "requires courts rigorously to enforce arbitration agreements according to their terms," *Epic Sys.*, 138 S. Ct. at 1621 (citation and internal quotation marks omitted).

*In re Grice*, 974 F.3d 950, 955 (9th Cir. 2020) *see also Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 861 (9th Cir. 2021) ("their disputes regarding Uber's Arbitration Provision are governed by the FAA, which 'places arbitration agreements on an equal footing with other contracts, requiring courts to enforce them according to their terms.'") (quoting *In re Grice*, 974 F.3d at 953). Granting an injunction here undermines that interest in two ways: First, by allowing Plaintiffs to ignore the forum-selection clause in Coon's Agreement, and second by sending the message that those who wish to violate contracts can do so freely and openly—all they have to do is subsequently bring a claim against the wronged party in a state with more favorable contract interpretation laws.

Here, Coon cannot show that he will suffer more hardship without an injunction than WSP will suffer with one. Additionally, the public interest against an injunction in this situation is great. The Court, therefore, must deny Coon's Application for this reason as well as all the reasons illustrated above.

## V. CONCLUSION

Based on the foregoing, the Court should dismiss Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction, and instead grant Defendants' Motion to Dismiss.

Dated: February 14, 2024

**HOLLAND & KNIGHT LLP**

*/s/ Nipun J. Patel*
Nipun J. Patel (*pro hac vice*)
Justin M. Kadoura (*pro hac vice*)
Samuel J. Stone

Attorneys for Defendants
WSP USA, INC., WSP USA BUILDINGS, INC. and kW MISSION CRITICAL ENGINEERING, D.P.C.