Scott F. Gibson, Arizona State Bar No. #010884
(Pro Hac Vice)
SGibson@DentonPeterson.com
Jay Parmelee, SBN 274676
Jay@DentonPeterson.com

**DPD** DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, ARIZONA 85213
TELEPHONE: (480) 325-9900
FACSIMILE: (480) 325-9901
HTTPS://ARIZONABUSINESSLAWYERAZ.COM
*Attorneys for Plaintiffs*

Heywood G. Friedman, SBN 125151
heywood@friedmanlawoffices.com
Friedman + Bartoumian
30401 Agoura Road, Suite 200
Agoura Hills, California 91301
Telephone: (818) 707-1488
Facsimile: (810) 707-0490
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CG ENTERPRISES HOLDINGS, LLC, a California limited liability company; and STEPHEN M. COON, an individual; <br><br> Plaintiffs, <br><br> vs. <br><br> WSP USA, INC., a New York corporation; WSP USA BUILDINGS, INC., a New York corporation; kW MISSION CRITICAL ENGINEERING, D.P.C., a New York design professional corporation; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.: 3:24-cv-00292-VC <br><br> [Removed from Sonoma County Superior Court Case No.: 24CV00024] <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), (3), AND (6) OR, IN THE ALTERNATIVE, TO STAY THIS ACTION PURSUANT TO 9 U.S.C. § 3, OR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)** <br><br> *Hearing Date:* March 8, 2024 <br> *Hearing Time:* 10:00 a.m. <br> *Location:* 450 Golden Gate Ave. <br> Courtroom 7, 17th Floor <br> San Francisco, CA 94102 |

*Sidebar (vertical text):* DPD DENTON PETERSON DUNN · 1930 N. ARBOLEDA ROAD, SUITE 200 · MESA, AZ 85213

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................................. 2

TABLE OF AUTHORITIES ......................................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 6

I.    INTRODUCTION................................................................................................................ 6

II.   FACTUAL BACKGROUND ............................................................................................. 6

III.   ARGUMENT ................................................................................................................. 10

   A.   Standard for Motion to Dismiss pursuant to F.R.C.P. 12(b)(2),(3), and (6) ....................... 10

   B.   Because the Restrictive Covenants are unenforceable under California law, the Court may enjoin Defendants from seeking to enforce those restrictions throughout the United States. ..... 11

      i.   California has a fundamental public policy making void "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business" within or from the state of California. ............................................................................................................... 11

      ii.   Defendants are actively seeking to prevent Plaintiffs from engaging in a lawful profession, trade, or business in and from the state of California. ............................................ 12

      iii.   California law governs whether restrictive covenants which purport to prevent Plaintiffs from engaging in a lawful profession, trade, or business within and from the state of California are enforceable. ......................................................................................................... 14

      iv.   The Northern District Court of California has specific jurisdiction over Defendants, who conduct substantial business within the Northern District of California and are seeking to prevent Plaintiffs from doing business within or from the Northern Distric of California, and venue in this court is proper. ................................................................................................... 15

      v.   Plaintiff CG Enterprises Holdings, LLC has standing to prevent a competitor from unlawfully restricting it from hiring an employee to do business in or from California. ........ 19

      vi.   California may void any restrictive covenants that purport to prevent anyone from engaging in a lawful profession, trade, or business within and from California. ................... 20

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW

DPD

vii.   The Restrictive Covenants are tied to Steve's employment and not to the sale of his ownership in kW. ................................................................................................ 22

C.   Steve and CG did not agree to arbitrate their claims in this lawsuit or to submit to the jurisdiction of any court in New York over their claims. ............................................. 23

i.   The parties agreed in the Employment Agreement that any claims seeking injunctive relief were not subject to arbitration. ...................................................................... 23

ii.   No New York court is a court of competent jurisdiction over the Plaintiffs' claims....... 25

D.   CONCLUSION .................................................................................................... 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DPD DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alamo Recycling, LLC v. Anheuser Busch InBev Worldwide, Inc.*, 239 Cal. App. 4th 983, 191 Cal.

4

Rptr. 3d 592 (2015) ........................................................................................................................ 20

5

*Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F.Supp.2d 749 (N.D.Cal.2004) .......... 10

6

*Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 72 Cal. Rptr. 2d 73

7

(1998) ........................................................................................................................ 12, 19, 20, 21

8

*AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir.1996) .............................................. 10

9

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir.1995) ...................................................................... 10, 16

10

*Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 165 Cal. Rptr. 3d 669 (2013) ................. 19

11

*Burger King Corp. v. Ruzdewicz*, 471 U.S. 462 (1985) ...................................................................... 16

12

*California Med. Assn. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075, 532 P.3d 250 (2023) .... 13

13

*Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir.1977) .................................. 10

14

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 189 P.3d 285 (2008) .................................... 11, 12

15

*Fillpoint, LLC v. Maas* (2012) 208 Cal.App.4th 1170 ................................................................ 22, 23

16

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................................... 11

17

*Herbert v. Los Angeles Raiders, Ltd.*, 23 Cal. App. 4th 414 (Cal. Ct. App. 1991) .............................. 21

18

*Hirsch v. Blue Cross, Blue Shield of Kansas* City, 800 F.2d 1474 (9th Cir. 1986) .............................. 16

19

*Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127 (S.D. Cal. 2016) ................................... 16

20

*Partee v. San Diego Chargers Football Co.,* 668 P.2d 674 (Cal. 1983) ............................................. 21

21

*Philadelphia v. New Jersey*, 437 U.S. 617 (1978) ............................................................................. 20

22

*Reed, Roberts Assoc. v Strauman*, 40 NY2d 3093, 307 (1976) ........................................................ 12

23

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir.2004) ................................... 10, 16

24

*Sinatro v. Barilla America, Inc.*, 635 F.Supp.3d 858 (N.D. Cal. 2022) ....................................... 10, 11

25

*Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606 (E.D. Cal. 2017) .............. 12, 14, 17

26

27

28

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

DPD

**Statutes**

9 U.S.C. § 3 ............................................................................................................. 6, 25

28 U.S.C. § 1404 (a) .................................................................................................... 6

CAL. BUS. & PROF. CODE § 16600 ..................................................................... passim

CAL. BUS. & PROF. CODE § 16600.1(c) ..................................................................... 11

CAL. BUS. & PROF. CODE § 16600.5 (a) ................................................................... 12

CAL. BUS. & PROF. CODE § 16600.5 ................................................................. 11, 19

CAL. BUS. & PROF. CODE § 16600.5 (b) ................................................................... 12

CAL. BUS. & PROF. CODE § 17200 ..................................................... 11, 13, 20, 22

CAL. BUS. & PROF. CODE § 17203 ............................................................................ 11

**Other Authorities**

2023 California Assembly Bill No. 1076, California 2023-2024 Regular Session ................ 11, 19, 21

Legislative history of SB699 ................................................................................ 14

**Rules**

Federal Rules of Civil Procedure 15(a) ...................................................................... 11

Federal Rules of Civil Procedure 12(B)(2) ............................................................. 6, 10

Federal Rules of Civil Procedure 12(B)(3) ............................................................. 6, 10

Federal Rules of Civil Procedure 12(B)(6) ........................................................ 6, 10, 11

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS – 3:24-cv-00292-VC**

Plaintiffs CG Enterprises Holdings, LLC ("CG") and Stephen M. Coon ("Steve") hereby respond to Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(B)(2),(3), and (6) or, in the Alternative, to Stay this Action Pursuant to 9 U.S.C. § 3, or Transfer Pursuant to 28 U.S.C. § 1404 (a). Plaintiffs request that the Court deny the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

This case addresses California's authority to regulate the validity of employment agreements that purport to restrain persons from engaging in a lawful profession, trade, or business within and from California. Defendants raise multiple challenges to the state's authority to regulate commerce impacting California employers, but their arguments cannot divest the state of its right to preserve this fundamental public policy.

The Court should deny the Motion because the Restrictive Covenants are void under California law and should further enjoin Defendants from attempting to enforce those void restrictions anywhere in the United States. The Court should also deny Defendants' request for this dispute to be submitted to arbitration or to the Southern District Court of New York.

### II.   Factual Background

Steve is a Professional Electrical Engineer with more than fifteen years of experience in the strategic design of electrical topologies. See Declaration of Stephen M. Coon ("Coon Decl.") at ¶ 4. Steve also has in-depth knowledge of cross discipline engineering in mission critical infrastructure design. Coon Decl. at ¶ 5. Steve has experience managing over fifty employees and growing a company from the ground up. Coon Decl. at ¶ 6. Steve is highly reputable in his particular field of professional electrical engineering. Coon Decl. at ¶ 7. CG is a California limited liability company that Steve founded in late 2023. Coon Decl. at ¶ 8. Steve wishes to continue his work in mission critical engineering through CG within and from northern California. Coon Decl. at ¶ 9. If the court grants Steve's application for a temporary restraining order and preliminary injunction, he intends to do business within and from northern California through CG. Coon Decl. at ¶ 10. He has sold his residence in Arizona and is looking for an appropriate home in California. Coon Decl. at ¶ 11.

DENTON PETERSON DUNN
ATTORNEYS  &  COUNSELORS  AT  LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DPD

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DPD

Defendants WSP USA, Inc. and WSP USA Buildings Inc. (collectively and interchangeably, "WSP"), and kW Mission Critical Engineering, d.p.c. ("kW Engineering") seek to prevent Steve from working through CG on any mission critical engineering projects anywhere in the United States, including within or from California, until November 2024, pursuant to non-competition and non-solicitation clauses in his employment agreement with Defendants. Those restrictions are void under well-established California public policy. WSP, which owns kW, is a large publicly traded New York corporation which, in 2022, employed 66,200 individuals and earned $11.93 billion in revenues. Coon Decl. at ¶ 12 and Exhibit A thereto. WSP has acquired nearly 194 companies around the world, including 17 in the United States. Coon Decl. at ¶ 13. WSP USA, Inc. has been authorized to do business in California since 1978; WSP USA Buildings, Inc has been so authorized since 2012. Coon Decl. at ¶¶ 14-15 and Exhibit B and C thereto. WSP has 19 offices in California, employs around 816 employees in California, and lists 62 California projects on its website.  Coon Decl. at ¶¶ 16-18 and Exhibit D, E, and F thereto. Nine of the 19 California offices are in northern California. Coon Decl. at ¶ 19. WSP has performed work in California for at least seven companies, all of which give work to other contractors in addition to WSP. Coon Decl. at ¶ 20. Neither Steve nor CG have resided in or done business in New York since 2017, when Steve moved to Arizona and began performing services for kW Engineering from Arizona, largely so he could be closer to kW Engineering's business interests on the West Coast and have easier flights to them. Coon Decl. at ¶¶ 21-22.

Steve was a part owner of kW Engineering. Coon Decl. at ¶ 23. When he sold his interest in kW Engineering to WSP in December 2020, he entered into a Retention Bonus Agreement (the "Retention Agreement") that restricted his ability to compete until December 28, 2023. Coon Decl. at ¶ 24. Steve no longer has any obligations to Defendants under the Retention Agreement, notwithstanding Defendants' suggestions to the contrary. Coon Decl. at ¶ 25.

Steve also entered into a Senior Leadership Employment Agreement (the "Employment Agreement") with kW Engineering. The Employment Agreement contains a "Non-Competition and Non-Solicitation." Coon Decl. at ¶ 26 and Exhibit B to Motion to Dismiss. The Employment Agreement also includes two "Non-Solicitation" clauses which purport to limit Steve's ability to communicate with or interact with current, historical, or prospective clients of kW Engineering and

1    any person or entity who was an employee, consultant, or contractor of kW Engineering or any of

2    WSP's affiliates.  Coon Decl. at ¶ 26 and Exhibit B to Motion to Dismiss.

3          The three restrictive covenants (the "Restrictive Covenants") purport to prohibit Steve from

4    "engaging in a lawful profession, trade, or business," making them void under CALIFORNIA BUSINESS

5    AND PROFESSIONS CODE § 16600. The Restrictive Covenants do not contain a specific geographic

6    restriction, but are instead geographically restricted based on the location of WSP's or any of its

7    affiliates' potential clients, current clients, former clients, employees, or contractors. Coon Decl. at ¶

8    27 and Exhibit B to Motion to Dismiss.  Because WSP and its affiliates have a significant number of

9    potential clients, current clients, former clients, employees, and contractors in California, by seeking

10   to enforce the Restrictive Covenants, WSP necessarily seeks to prevent Steve from engaging in his

11   legal profession within or from California.  Coon Decl. at ¶ 28.

12         The Employment Agreement had a two-year term. Coon Decl. at ¶ 29 and Exhibit B to Motion

13   to Dismiss. Under Paragraph 2, the term of the Employment Agreement would automatically be

14   extended from year to year unless either party gave advance written notice of their intent not to renew

15   at least 30 days before the end of the current term. Coon Decl. at ¶ 30 and Exhibit B to Motion to

16   Dismiss. On or about November 2, 2022, Steve gave notice of his intent not to renew more than 30

17   days before the end of the term. Coon Decl. at ¶ 31. Effective January 1, 2023, the Employment

18   Agreement between Steve and kW Engineering terminated, and Steve's employment with kW

19   Engineering converted to an at will employment. Coon Decl. at ¶ 32. On or about October 18, 2023,

20   Steve gave written notice terminating his at-will employment with kW Engineering effective

21   November 3, 2023. Coon Decl. at ¶ 33.

22         Ironically, if Steve had remained employed with kW Engineering until December 31, 2023,

23   Defendants would have no grounds for restricting his employment under the Employment Agreement.

24   Coon Decl. at ¶ 34. In other words, Defendants not only seek to restrict Steve contrary to fundamental

25   California public policy, but also seek the one-year restriction because he terminated his employment

26   58 days "early."  Coon Decl. at ¶ 35.

27

28

DPD

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW

1930 N. ARROYO ROAD, SUITE 200
MESA, AZ 85213

The Employment Agreement requires the parties to resolve their disputes by binding arbitration with the American Arbitration Association ("AAA") in New York pursuant to AAA's Employment Arbitration Rules and Procedures. But the Employment Agreement also provides that

> in the event of a breach or a threatened breach of any of the provisions of this Agreement either party may, in addition and supplementary to other rights and remedies existing in its favor, apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce or prevent any violations of the provisions thereof (without posting a bond or other security).

Exhibit B to Motion to Dismiss.

On January 2, 2024, the same day this action was filed, WSP commenced arbitration proceedings with the AAA, filing a Motion for Emergency Interim Relief and requesting that the arbitrator enjoin Steve during the pendency of the arbitration. Coon Decl. at ¶ 36 and Exhibit G thereto. But the parties had not authorized the arbitrator to grant emergency interim relief. Coon Decl. at ¶ 37. On January 12, 2024, the arbitrator ruled that because the parties had not adopted the Optional Rules for Emergency Measures of Protection, WSP could not seek emergency interim relief in any arbitration proceedings. Coon Decl. at ¶ 38 and Exhibit H thereto. Consequently, any issues related to injunctive relief must be resolved by a "court of competent jurisdiction." This Court meets that contractual requirement. No award has been entered by the arbitrator in the AAA arbitration that would trigger the Employment Agreement's jurisdictional agreements.  Coon Decl. at ¶ 39.

On January 17, 2024, WSP filed a complaint with the United States District Court of the Northern District of New York, along with an emergency motion seeking a temporary restraining order and preliminary injunction that would prevent Steve from allegedly violating the Restrictive Covenants. Coon Decl. at ¶ 40 and Exhibit I and J thereto. On January 25, 2024, the Northern District Court of New York dismissed WSP's suit *sua sponte*. Coon Decl. at ¶ 41 and Exhibit K thereto. Judge David N. Hurn held that this lawsuit in the Northern District of California takes priority over WSP's New York lawsuit because it was filed first. *Id*. Judge Hurn also held that the Northern District Court of New York is not the proper venue for this dispute, and does not have jurisdiction over Steve. *Id*. Judge Hurn noted that Steve's "contacts with New York appear attenuated at best." *Id*. On February 8, 2024, WSP filed a Motion for Reconsideration. Coon Decl. at ¶ 42 and Exhibit L thereto. On February

14, 2024, Judge Hurn denied WSP's Motion for Reconsideration *sua sponte*. Coon Decl. at ¶ 43 and Exhibit M thereto. Judge Hurn noted that, "Mr. Coon has incorporated his competing business entity in California and maintains its principal place of business there." *Id*. Judge Hurn asserted that, "the decision to litigate [in California] appears not only logical but efficient given the nature of the dispute." *Id*. The court reiterated that, "plaintiff has alleged merely speculative ties between defendant and this district," and affirmed its holding that the Northern District Court of New York did not have jurisdiction over Steve. *Id*.

On February 2, 2024, WSP filed its Motion to Dismiss.

### III.   Argument

####    A.   *Standard for Motion to Dismiss pursuant to F.R.C.P. 12(b)(2),(3), and (6)*

F.R.C.P. 12(b)(2) provides that a party may file a motion to dismiss based on lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that the Court has jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995). Uncontroverted allegations in the complaint must be taken as true. *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996). However, the court may not assume the truth of such allegations if they are contradicted by affidavit. *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir.1977). If the plaintiff also submits admissible evidence, conflicts in the evidence must be resolved in the plaintiff's favor. *AT & T,* 94 F.3d at 588.

F.R.C.P. 12(b)(3) provides that a party may file a motion to dismiss based on improper venue. In motions challenging venue, the "court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F.Supp.2d 749, 755 (N.D.Cal.2004).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Sinatro v. Barilla America, Inc.*, 635 F.Supp.3d 858, 869 (N.D. Cal. 2022) (internal citations omitted). When reviewing a motion to dismiss for failure to state a claim, the court must accept as true all of the factual allegations contained in the complaint and may dismiss a claim only where there is no cognizable legal theory or there is an absence of sufficient factual matter to state a facially plausible

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DPD

claim to relief. *Id*. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In other words, the facts alleged must demonstrate more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id*. As a general rule, a court may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion, but may take judicial notice of matters of public record and may also consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Id*. The Court should freely give leave to amend a complaint if justice so requires. Fed. R. Civ. P 15(a), see also *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B.    Because the Restrictive Covenants are unenforceable under California law, the Court may enjoin Defendants from seeking to enforce those restrictions throughout the United States.**

For more than 150 years, California's fundamental public policy has prohibited any restrictive covenants that restrain anyone from engaging in a lawful profession. CAL. BUS. & PROF. CODE § 16600. The Legislature has clarified that a violation of § 16600 "constitutes an act of unfair competition" within the meaning of CAL. BUS. & PROF. CODE § 17200. CAL. BUS. & PROF. CODE § 16600.1(c). Plaintiffs are entitled to injunctive relief under both CAL. BUS. & PROF. CODE §§ 16600.5 and 17203. And yet Defendants argue that this Court lacks the authority to enjoin them from doing precisely what California public policy precludes them from doing. The Court should deny Defendants' Motion.

i.    California has a fundamental public policy making void "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business" within or from the state of California.

CAL. BUS. & PROF. CODE § 16600 and § 17200 are not "a new California statute" as Defendants assert, (Doc. 24, p. 6, line 24), but rather are renewed declarations of California's longstanding law and policy regarding restrictive covenants. Since 1872, contracts by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind are to that extent void in the state of California, with a few exceptions that do not apply to this case. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945, 189 P.3d 285, 290 (2008); *see also* CAL. BUS. & PROF. CODE § 16600. In 2023, the California legislature amended CAL. BUS. & PROF. CODE § 16600 in order to codify existing case law. 2023 California Assembly Bill No. 1076, California 2023-2024 Regular Session. The amended

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DPD

language explicitly adopted the analysis of the Supreme Court in *Edwards v. Arthur Andersen LLP*, which rejected the Ninth Circuit's "narrow-restraint exception" for "reasonable" restrictive covenants. 44 Cal. 4th 937, 949, 189 P.3d 285, 293 (2008). The "rule of reasonableness" exception rejected in *Edwards* is the same standard that New York uses to determine whether restrictive covenants are sufficiently narrowly tailored. *See, e.g. Reed, Roberts Assoc. v Strauman*, 40 NY2d 3093, 307 (1976) (a restrictive covenant is enforceable to the extent that "it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee").

Section 16600 represents a fundamental public policy interest in California that an individual should not be restrained from pursing employment or businesses of his choosing. *Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606, 621 (E.D. Cal. 2017). The statute not only protects employees, but also represents "a statement of California public policy which ensures that California employers will be able to compete effectively for the most talented, skilled employees in their industries, wherever they may reside." *Id.*, quoting *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 901, 72 Cal. Rptr. 2d 73, 85 (1998). The statute makes any applicable restrictive covenants unenforceable in California, regardless of where and when the parties signed the contract with the restrictive covenants and regardless of whether the employment was maintained outside of California. CAL. BUS. & PROF. CODE § 16600.5 (a) and (b).

Steve formed CG, a California entity, with the intent of doing business within and from California. Contrary to the Defendants' contention, Steve has not secured, and has no plans of securing, a building in or doing business from any state other than California. However, Steve has been unable to do business in California because WSP is actively seeking to enforce the Restrictive Covenants, which purport to restrict Steve's ability to engage in his legal profession, trade, or business.

        ii.    Defendants are actively seeking to prevent Plaintiffs from engaging in a lawful profession, trade, or business in and from the state of California.

The only geographic restrictions in the Restrictive Covenants, is that the Restrictive Covenants prevent Steve from interacting with former clients, current clients, potential clients, employees, or contractors of kW "or any of its affiliates, including for greater certainty, any affiliate U.S. company

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DPD

of WSP USA." (Doc. 24, p. 8) WSP has 22 offices in California, employs at least 816 employees in California (per LinkedIn), and lists 61 California projects on its website. Based on WSP's significant presence in California, enforcing the Restrictive Covenants would necessarily prevent Steve from engaging in legal profession within or from California.

As noted above, WSP initially filed arbitration proceedings to enjoin Steve from engaging in his profession, but the arbitrator lacked authority to consider that application. Consequently, on January 17, 2024 (some 15 days after Steve filed this case), WSP filed a complaint with the United State District Court for the Northern District of New York seeking, among other things, a temporary restraining order to enjoin Steve. On January 17, 2024, WSP filed a complaint with the United States District Court of the Northern District of New York, along with an emergency motion seeking a temporary restraining order and preliminary injunction that would prevent Steve from allegedly violating the Restrictive Covenants. The court, *sua sponte*, dismissed the Complaint under the first-to-file doctrine. Undaunted, WSP filed a motion to have the court reconsider its ruling; the court again denied the motion *sua sponte*.

Despite asserting that Plaintiffs have not alleged an injury-in-fact, Defendants freely admit in their Motion to Dismiss that they have taken steps before and during this lawsuit to enforce the Restrictive Covenants, which would prevent Plaintiffs from doing business within or from California. (Doc. 24, p. 6). A showing of economic injury requires only that the plaintiff allege or prove a personal, individualized loss of money or property in any nontrivial amount. *California Med. Assn. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075, 1088, 532 P.3d 250, 258 (2023). Moreover, because the issue is one of standing rather than the amount of restitution due, a specific measure of the amount of this loss is not required. *Id.* It suffices that a plaintiff can allege an identifiable trifle of economic injury. *Id.* Diversion of personnel and other resources to respond to an attempt to enforce a non-compete constitute an economic injury under § 17200. *Id.* When staff are diverted to a new project undertaken in response to an unfair business practice, the organization loses the value of their time, which otherwise would have been used to benefit the organization in other ways. *Id.* at 1089, 259. Because Defendants have pursued enforcement of the Restrictive Covenants, Plaintiffs have had to divert resources to respond to Defendants. Defendants have been prevented from starting and building their business in California out of fear that another state will enforce the Restrictive Covenants and issue an

1  injunction ordering them not to do business within or from California. Steve and CG have suffered an
2  economic injury as a result of WSP's attempts to prevent them from engaging in their profession.

3        iii.    California law governs whether restrictive covenants which purport to prevent
4                Plaintiffs from engaging in a lawful profession, trade, or business within and
                 from the state of California are enforceable.

5        California law governs the interpretation of the Restrictive Covenants. As noted in the
6  Legislative history of SB699, "California courts have been clear that California's public policy against
7  restraint of trade law *trumps other state laws* when an employee seeks employment in California, even
8  if the employee had signed the contractual restraint while living outside of California and working for
9  a non-California employer." *See*, *e.g.*, *Stryker Sales Corporation v. Zimmer Biomet, Inc.*, 231
10 F.Supp.3d 606 (E.D. Cal. 2017). California's fundamental public policy gives California a greater
11 interest in this matter than New York has.

12       In cases involving contracts with choice-of-law provisions, California courts will apply the
13 substantive law designated by the contract unless (a) the designated state has no substantive relationship
14 to the parties or the transaction, or (b) application of the law of the designated state would be contrary
15 to a fundamental policy of the forum state. *Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp.
16 3d 606, 619–20 (E.D. Cal. 2017) consistent with section 187(2) of the Restatement (Second) of
17 Conflicts of Laws. If the court finds a true conflict between the laws of two states, it carefully evaluates
18 and compares the nature and strength of the interest of each jurisdiction in the application of its own
19 law to determine which state's interest would be more impaired if its policy were subordinated to the
20 policy of the other state, and then ultimately applies the law of the state whose interest would be the
21 more impaired if its law were not applied. *Id.* at 619.

22       While the Employment Agreement contains a choice-of-law provision selecting New York
23 State law, California law governs the Restrictive Covenants. The courts have repeatedly found that §
24 16600 "represents a fundamental public policy interest in California and that it should override
25 contractual choice-of-law provisions at least with respect to such restrictive covenants." *Id.* 231
26 F.Supp.3d at 621. Likewise, California has a greater interest than New York in determining whether
27 the Restrictive Covenants are enforceable. New York has little, if any interest, in whether the
28 Restrictive Covenants are enforceable. The Northern District of New York has ruled **twice** *sua sponte*

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS – 3:24-cv-00292-VC**

that California should hear this dispute because of the first-to-file rule, because venue was not proper in New York, and because Steve's contacts with New York "appear attenuated at best." Steve is not, and has not, done business within or from New York. New York does not have personal jurisdiction over Steve and CG and, thus, cannot hear this dispute.

In contrast, whether the Restrictive Covenants are enforced is of substantial interest to California because that decision will affect whether or not Steve does business within and from California. Steve is not currently doing business within or from any state, but has been open with WSP of his intent to do business within and from California. Steve formed CG in California for that express purpose. If Steve is required to abide by the Restrictive Covenants, that decision will impact California's economy, because it will not have the benefit of Steve's and CG's business within and from California. If Steve is not required to abide by the Restrictive Covenants, that decision will have little to no impact on New York, because Steve and CG do not, and have not, done business in New York.

Because New York's enforcement of the Restrictive Covenants[1] would be contrary to a fundamental policy of California, and California has a greater interest in the enforceability or lack thereof of the Restrictive Covenants, California law governs the Restrictive Covenants.

> iv.   The Northern District Court of California has specific jurisdiction over Defendants, who conduct substantial business within the Northern District of California and are seeking to prevent Plaintiffs from doing business within or from the Northern District of California, and venue in this court is proper.

California has established a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

---

[1]   Plaintiffs do not concede that the Restrictive Covenants are enforceable under New York law, but note that Defendants make a good faith argument that they are.

DPD  DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)

The plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. *Id*. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. *Id*.

The "purposeful availment" requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "It is not required that a defendant be physically present within, or have physical contacts with, the forum, provided that its efforts 'are purposefully directed' toward forum residents." *Hirsch v. Blue Cross, Blue Shield of Kansas* City, 800 F.2d 1474, 1478 (9th Cir. 1986) quoting *Burger King Corp. v. Ruzdewicz*, 471 U.S. 462, 475 (1985). Next, the court applies a "but for" test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction. *Hirsch,* 800 F.2d at 1500. The third requirement is that an exercise of jurisdiction must be reasonable. *Id.* The court presumes that an otherwise valid exercise of specific jurisdiction is reasonable. *Id.* The burden of convincing the court otherwise is on the defendants. *Id.* To avoid jurisdiction, defendants must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.*

In determining whether jurisdiction is reasonable, the Court considers seven factors: (1) the extent of a defendant's purposeful interjection into the forum; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1143 (S.D. Cal. 2016). No one factor is dispositive; a court must balance all seven. *Id.*

Venue for federal claims is proper in (1) the district in which any defendant resides, if all of the defendants reside in the same state; (2) the district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a district in which any defendant may be found, if there is no district in which the action

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARROBLA ROAD, SUITE 200
MESA, AZ 85213

may otherwise be brought. 28 U.S.C. § 1391(b). *Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606, 615 (E.D. Cal. 2017).

Venue is proper in the Northern District. Defendants have purposely availed themselves to California by doing business in California, entering into Restrictive Covenants that purport to prevent Steve from doing business within or from California, and seeking to enforce those Restrictive Covenants. Defendants conduct substantial business in the state of California. WSP has 22 offices in more than 800 employees located in California. While Steve resided in Arizona throughout the entirety of his employment with WSP, WSP required Steve as a condition of his employment to enter into Restrictive Covenants which would not only prevent him from engaging in his chosen profession within or from Arizona, but within or from California as well. WSP has sought injunctive relief to prevent Steve from "violating" the Restrictive Covenants, which, if obtained, WSP will necessarily have to seek California's recognition of in order to prevent Steve from doing business through CG within and from California, thus availing themselves of the benefit of California's judicial system. WSP has purposefully availed itself of California by conducting business in California, and seeking to prevent Steve and CG from doing the same.[2]

Plaintiffs' claims arise out of WSP's forum-related activities. The geographic scope of the Restrictive Covenants is based on the location of WSP's and its affiliates' former clients, current clients, potential clients, employees, contractors, etc. WSP has many former clients, current clients, potential clients, employees, and contractors in California. Consequently, if the Restrictive Covenants

---

[2]      As discussed previously, the district court *sua sponte* dismissed WSP's Complaint in the Northern District of New York under the first-to-file rule. The court held that "WSP appears to have mislaid venue." Coon Decl. at ¶ 42 and Exhibit K thereto. "Applying the federal venue statute correctly," the court held that venue appears to be proper in the District of Arizona, *in the Northern District of California*, and "perhaps in the Southern District of New York, the forum explicitly contemplated in the [Employment] Agreement itself." *Id.*

When the court denied WSP's motion for reconsideration *sua sponte*, it again rejected WSP's claim that venue was proper in the Northern District of New York. In part, the court held that "Defendant [Steve] has incorporated a competing business entity in the state of California with a mailing address in Santa Rosa, California. Therefore, *the acts or omissions giving rise to this claim occurred in the Northern District of California* – where defendant has already initiated a lawsuit." Coon Decl. at ¶ 44 and Exhibit M thereto.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS – 3:24-cv-00292-VC**

DPD   DENTON PETERSON DUNN   ATTORNEYS & COUNSELORS AT LAW   1930 N. ARBOLEDA ROAD, SUITE 200   MESA, AZ 85213

are enforced, Steve and CG will be prevented from doing business within and from California. But for WSP's offices, employees, and projects in California, Steve would not be purportedly prevented by the Restrictive Covenants from doing business within and from California.

California's jurisdiction over WSP with respect to the Restrictive Covenants is reasonable. WSP has chosen to conduct substantial business in California. It also chose to require Steve to enter into Restrictive Covenants which purportedly prevented him from doing business within or from California, and to seek to enforce those Restrictive Covenants. There is little or no burden on WSP to defend itself in California; it has nearly as many employees and projects in California as in New York. While WSP chose the Northern District of New York as its forum of choice, that court has declined, twice, *sua sponte*, to exercise jurisdiction over these claims in favor of them being heard by this court. The court found that litigating this dispute in the Northern District of California was "not only logical but efficient given the nature of the dispute."

California has a significant interest in adjudicating this dispute, which will have an impact on California's economy and concerns a fundamental policy of California. Because Steve and CG intend to do business within and from California, California is the most efficient, convenient, and effective forum for this dispute; even if WSP obtained an injunction elsewhere, WSP would still have to come to California to prevent Steve from violating the Restrictive Covenants within or from California. While WSP has suggested that the Southern District of New York should hear this dispute instead, WSP has acknowledged that the Southern District is not an ideal venue by filing its own lawsuit in the Northern District instead, and filing a Motion for Reconsideration with that district when the court dismissed the suit. Additionally, the Southern District of New York does not have personal jurisdiction over Steve or CG, and thus cannot hear this dispute.

Venue in the Northern District of California is proper because Steve and CG intend to do business primarily within and from the Northern District of California, and WSP intends to prevent them from doing so. Likewise, WSP has offices throughout the Northern District of California. Because this lawsuit concerns an entity that does substantial business within and from the Northern District of California attempting to prevent another company from doing any business within or from the Northern District of California, venue is proper in this court.

WSP does business within and from the Northern District of California, required Steve to enter into the Restrictive Covenants which purportedly prevent him from doing business within and from the Northern District of California, and is actively seeking to prevent Steve and CG from doing business within or from the Northern District of California. This court has specific jurisdiction over WSP, and venue is proper in this court.

> v.   Plaintiff CG Enterprises Holdings, LLC has standing to prevent a competitor from unlawfully restricting it from hiring an employee to do business in or from California.

Defendants argue that CG lacks standing to bring a claim under § 16600 because § 16600.5 provides that, "[a]n employee, former employee, or prospective employee may bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both." (Doc. 24, p. 18). The prerequisites for standing to assert statutorily-based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute. *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 466, 165 Cal. Rptr. 3d 669, 675 (2013).

Defendants erroneously assume that if an employee "may bring a private action" pursuant to § 16600, then no one else may do so. The statute states no such thing. On the contrary, § 16600 et. al. was amended with the intent of codifying California case law. 2023 California Assembly Bill No. 1076, California 2023-2024 Regular Session. Indeed, the Legislature specifically acknowledged that void restrictive covenants impact employers, finding that "as the market for talent has become national and remote work has grown, California employers increasingly face the challenge of employers outside of California attempting to prevent the hiring of former employees." *Id.* Pursuant to California case law, an employer has a private right of action under § 16600.

In *Application Grp., Inc. v. Hunter Grp., Inc.*, the court found that, to the extent § 16600 is invoked by a California employer to protect itself from unfair competition, § 16600 is "all the more important as a statement of California public policy which ensures that California employers will be able to compete effectively for the most talented, skilled employees in their industries, wherever they may reside." 61 Cal. App. 4th 881, 901, 72 Cal. Rptr. 2d 73, 85 (1998). The court noted that many employees work from their homes or "telecommute" to work. *Id.* When that is the case, the court expressed that California employers, "have a strong and legitimate interest in having broad freedom to

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DPD

choose from a much larger, indeed a 'national,' applicant pool in order to maximize the quality of the product or services they provide, as well as the reach of their "market." *Id.* The court held that "California has a correlative interest in protecting its employers and their employees from anti-competitive conduct by out-of-state employers...who would interfere with or restrict these freedoms." *Id.*

As recognized by the court in *Application Grp., Inc.*, CG has a strong and legitimate interest in employing Steve to engage in his lawful profession within and from California. The purpose of § 16600 was to not only protect employees, but also to protect CG's interest in hiring individuals bound by void restrictive covenants. Based on the language of the statute, the legislative intent in adopting the statute, and the purpose of the statute, CG has a right to a private action pursuant to § 16600 to protect its interest.

> vi.    California may void any restrictive covenants that purport to prevent anyone from engaging in a lawful profession, trade, or business within and from California.

Sections 16600 and 17200 do not violate the dormant commerce clause because they are laws directed to legitimate local concerns, with effects upon interstate commerce that are only incidental.

The high court's dormant commerce clause jurisprudence significantly limits the ability of States and localities to regulate or otherwise burden the flow of interstate commerce. *Alamo Recycling, LLC v. Anheuser Busch InBev Worldwide, Inc.*, 239 Cal. App. 4th 983, 996, 191 Cal. Rptr. 3d 592, 601 (2015). The dormant commerce clause doctrine "is driven by a concern about economic protectionism – that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Id.* "The crucial inquiry, in determining whether a state law violates the dormant commerce clause, is whether the statute, is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *Id. quoting Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).

Sections 16600 and 17200 prevent employers from restricting a person's ability to do business in or from California, as well as a California employer's ability to hire any employee that is interested in its position. The statutes are specifically drafted to protect California's legitimate concern that businesses inside and outside of California will prevent fair competition within and originating from

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

California. The statutes are not protectionist. They "burden" out-of-state and in-state competitors equally. Their purpose is not to give California businesses an unfair advantage, but rather to protect California employers and employees from "anti-competitive conduct by out-of-state employers," *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 901, 72 Cal. Rptr. 2d 73, 85 (1998), and to protect women and people of color, who are disproportionally harmed by noncompete agreements. 2023 California Assembly Bill No. 1076, California 2023-2024 Regular Session

Defendants argue that § 16600 violates the dormant commerce clause because it applies, "regardless of whether the contract was signed and employment was maintained outside of California." (Doc. 24, p. 14). Defendants fail to recognize that § 16600 will only apply to restrictive covenants if California law is applied to the employment agreement at issue. Consequently, § 16600 voids restrictive covenants "regardless of whether the contract was signed and employment was maintained outside of California" as long as California has greater interest in the enforcement, or lack thereof, of the restrictive covenants than other states with interest in the matter. Section 16600 applies to this matter because Defendants seek to prevent Steve and CG from doing business within and from California. Whether a person or an entity may do business within or from California is a legitimate local concern of California.

Defendants attempt to argue otherwise by citing *Herbert v. Los Angeles Raiders, Ltd.*, 23 Cal. App. 4th 414 (Cal. Ct. App. 1991). That case concerned a professional football player who desired to be hired by a California team contrary to the collective bargaining agreement between the National Football League and the NFL Players Association. *Id.* at 420. The case did not involve a restrictive covenant between an employee and his former employer. Not surprisingly, the court held that California's antitrust law does not apply to professional football, and dismissed Herbert's claim. *Id.* at 423. The court specifically relied on another case, *Partee v. San Diego Chargers Football Co.,* 668 P.2d 674 (Cal. 1983), which also concerned professional football. *Id.* The reasoning of the court was specific to professional sports, which involve collective bargaining agreements between the players and the league, rather than restrictive covenants between an employee and employer. *Id.*

Defendants argue that if § 16600 applies to Restrictive Covenants, then WSP would be required to "account for California's near-complete ban on noncompete and non-solicitation agreements—in all

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DPD

its employment relationships, regardless of where the employee, clients, or co-employees at issue are located." (Doc. 24, p. 21). That statement is not true. Section 16600 applies to Restrictive Covenants because WSP required Steve to enter into restrictive covenants that purported to prevent him from doing business *within and from California*, and are trying to enforce them. If WSP had drafted the Restrictive Covenants so that they did not purport to restrict Steve's rights to do business in California, § 16600 would not apply.

Through § 16600 and § 17200, California protects its legitimate local concerns regarding individuals and companies being unable to do business within or from California because of a desire by businesses within or outside of California to stifle competition.

> vii.   The Restrictive Covenants are tied to Steve's employment and not to the sale of his ownership in kW.

The court in *Fillpoint, LLC v. Maas* held that the non-competition and non-solicitation clauses in Maas's employment agreement with Fillpoint were unenforceable, even though Maas entered into the employment agreement at the same time he sold his ownership interest to Fillpoint. *Fillpoint, LLC v. Maas* (2012) 208 Cal.App.4th 1170, 1183. The court reasoned that the purchase agreement contained its own non-competition clause, with a term of three years from the closing date, which had already expired. *Id.* at 1182. The court also held that the clause in the purchase agreement was designed to protect the goodwill that Fillpoint acquired, while the clause in the employment agreement targeted Maas's fundamental right to pursue his profession. *Id.* at 1183. The non-solicitation clauses in the employment agreement were not limited to clients and employees of the business when it was sold, but also included clients and employees which were acquired by the business after it sold. *Id.* The court reasoned that the non-solicitation clauses could not serve the purpose of protecting the goodwill Fillpoint purchased when the clauses extended to clients and employees who had no connection to the business when it was purchased by Fillpoint. *Id.*

Like Maas, Steve entered into multiple agreements with kW Engineering and WSP when he sold his interest in kW Engineering to WSP. Steve entered into the Retention Agreement and the Employment Agreement. The non-competition clause in the Retention Agreement, like the non-competition clause in the purchase agreement in *Fillpoint*, was specifically designed to protect the

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DPD

goodwill which WSP purchased. The term of the non-competition clause in the Retention Agreement was based on the closing date, and was set to expire no more than three years from the closing date, regardless of whether Steve remained employed by kW Engineering.

Meanwhile, the non-competition and non-solicitation clauses in the Employment Agreement target Steve's fundamental right to pursue his profession. The term of the restrictive covenants of the Employment Agreement are specifically tied to Steve's employment, not the closing date. Likewise, the non-solicitation clauses in the Employment Agreement purport to restrict Steve from soliciting clients and employees who did not become clients and employees of Defendants until after the completion of the sale. Furthermore, in the Employment Agreement itself, Defendants acknowledge that the non-competition clause is designed to protect the "considerable amount of money" Defendants expended obtaining new clients and maintaining existing clients. The restrictive covenants in the Employment Agreement, like those in the *Fillpoint* employment agreement, target Steve's fundamental right to pursue his profession; they are void under CAL. BUS. & PROF. CODE § 16600 *et. seq*. Because the Restrictive Covenants are not tied to the sale of business, they are void under California law, and Steve will prevail on the merits of his declaratory relief action.

### C.      Steve and CG did not agree to arbitrate their claims in this lawsuit or to submit to the jurisdiction of any court in New York over their claims.

> i.      The parties agreed in the Employment Agreement that any claims seeking injunctive relief were not subject to arbitration.

In the Employment Agreement, Steve and kW agreed that, "in the event of a breach or a threatened breach of any of the provisions of this Employment Agreement either party may, in addition and supplementary to other rights and remedies existing in its favor, apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce or prevent any violations of the provisions thereof (without posting a bond or other security)."

Steve is seeking injunctive relief in this lawsuit as a result of his alleged breach of the Employment Agreement. Defendants allege that Steve breached the Employment Agreement and have sought to enjoin him from doing so further. Steve disagrees, asserts that the Restrictive Covenants are void, and seeks to enjoin Defendants from stopping him from doing business within or from California.

1    Because Steve is requesting injunctive relief from this Court in connection with his alleged breach of

2    the Employment Agreement, pursuant to the plain language of the Employment Agreement, "any court

3    of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief"

4    may decide whether to enjoin Steve from doing business within or from California, or enjoin

5    Defendants from seeking to prevent him from doing so. As discussed earlier in this Response, this

6    Court is a court of competent jurisdiction with specific jurisdiction over Defendants.

7        In their Motion to Dismiss, Defendants argue that the Plaintiffs must submit their claims to

8    arbitration notwithstanding the above-quoted language. Defendants do not explain why CG, a non-

9    party to the Employment Agreement, is bound by the terms of the Employment Agreement. Instead,

10   Defendants argue that the above-quoted language is inapplicable here because "Plaintiffs do not allege

11   any 'breach' or 'threatened breach' of the Agreement and Plaintiffs are not trying to 'enforce' that

12   Agreement." (Doc. 24, p. 15). Defendants interpret the clause as only allowing Steve to pursue

13   injunctive relief in a court of competent jurisdiction if Steve is seeking to stop WSP from violating the

14   Employment Agreement or to require WSP to perform pursuant to the Employment Agreement.

15   However, the Employment Agreement says no such thing. The Employment Agreement explicitly

16   states that "either party" may seek injunctive relief in a court of competent jurisdiction in light of an

17   alleged breach of the Employment Agreement. Here, WSP alleges that Steve has breached the

18   Employment Agreement. Therefore, Steve, as one of the parties to the Employment Agreement, may

19   seek injunctive relief preventing WSP from enforcing the Employment Agreement to prevent him from

20   breaching the Employment Agreement.

21       WSP's interpretation of the clause is not only inconsistent with the clause itself, but the rest of

22   the Employment Agreement. The arbitration provision of the Employment Agreement states that

23   arbitration will be conducted in accordance with AAA's Employment Arbitration Rules and

24   Procedures. The parties did not, however, adopt the Optional Rules for Emergency Measures of

25   Protection in the Employment Agreement. Without doing so, the parties are unable to seek emergency

26   injunctive relief through arbitration. The parties' decision not to adopt the Optional Rules for

27   Emergency Measures of Protection makes sense if the parties agreed to a clause that allows the parties

28   to seek injunctive relief in any court of competent jurisdiction. Otherwise, by entering into the

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

DPD

1   Employment Agreement, Steve waived his right to seek emergency injunctive relief to prevent WSP

2   from enforcing a void provision of the Employment Agreement.

3        Finally, WSP's interpretation of the clause is inequitable. According to WSP's understanding

4   of the clause, WSP may seek injunctive relief in any court of competent jurisdiction, including

5   California, to prevent Steve from doing business from or within California, but Steve cannot seek

6   injunctive relief anywhere except in an arbitration to restrict WSP's ability to do so. If WSP's

7   interpretation is accepted, WSP has the exclusive right to choose the forum that will determine whether

8   injunctive relief is appropriate to prevent Steve from doing business within and from California, as

9   long as WSP chooses a court of competent jurisdiction. That would allow WSP to pick the forum which

10  is most advantageous to WSP, which, in fact, is exactly what WSP has sought to do.

11       Neither Steve or CG agreed to waive their right to pursue their claims for injunctive relief in a

12  court of competent jurisdiction. Instead, Steve agreed that he could seek injunctive relief concerned an

13  alleged breach of the Agreement in any court of competent jurisdiction, such as the Northern District

14  Court of California.

15       Additionally, the Court should not stay the proceedings. A stay of proceedings is appropriate

16  under 9 U.S.C. § 3 if the issue therein is referable to arbitration. The arbitrator in the New York

17  arbitration does not have the authority to grant the relief Steve is seeking because the parties did not

18  adopt the Optional Rules for Emergency Measures of Protection in the Employment Agreement, so a

19  stay of these proceedings pursuant to 9 U.S.C. § 3 is not appropriate.

20           ii.     No New York court is a court of competent jurisdiction over the Plaintiffs'
            claims.

21       In the Motion to Dismiss, WSP asks the Court, in the alternative, to transfer this case to the

22  Southern District Court of New York, but the Southern District Court of New York does not have

23  personal jurisdiction over either plaintiff. The only argument WSP asserts in its Motion to Dismiss for

24  why the Southern District Court of New York has personal jurisdiction over Steve and CG is that the

25  Employment Agreement between Steve and WSP provides that "in the event of any court proceeding

26  to challenge or enforce an arbitrator's award, the parties hereby consent to the exclusive jurisdiction of

27  the state and federal courts in New York, New York." (Doc. 24, p. 18). Steve is not seeking to challenge

28

1  or enforce an arbitrator's award. It would be impossible for him to do so, since there has not been any

2  arbitrator's award entered. Consequently, Steve has not consented to the jurisdiction of the state and

3  federal courts in New York, New York with respect to his claims in the lawsuit. Without Steve's

4  consent, New York has no jurisdiction over Steve who does not reside there, does not do business there,

5  and whose connections to New York are "attenuated at best." New York certainly does not have

6  jurisdiction over CG, a California entity who was not a party to the Employment Agreement and has

7  not done any business in New York.

8      Additionally, WSP itself has acknowledged that the Southern District Court of New York is not

9  the best forum for this dispute, as WSP chose to file its lawsuit seeking injunctive relief in the Northern

10  District Court of New York. Even after the Northern District Court of New York dismissed its lawsuit,

11  WSP filed a Motion for Reconsideration rather than file a suit in the Southern District Court of New

12  York.

13      **D.    *Conclusion***

14      The Court should deny Defendants' Motion to Dismiss. This Court has the authority to declare

15  that the Restrictive Covenants are unenforceable under California law and to enjoin Defendants from

16  seeking to enforce the covenants anywhere in the United States. The Court should also deny Defendants

17  request for this dispute to be submitted to arbitration or to the Southern District Court of New York,

18  because neither Steve or CG have agreed to do so in the Employment Agreement or otherwise, and the

19  Southern District Court of New York does not have jurisdiction over either of them.

20

21  DATED: January 16, 2024                    **DENTON PETERSON DUNN, PLLC**

22

23                                             /s/ Scott Gibson
                                               Scott Gibson
24                                             Jay Parmelee
                                               *Attorneys for Plaintiffs*

25

26

27

28

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS – 3:24-cv-00292-VC**

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system which will send notification of said filing to the following CM/ECF registrants.

Samuel J. Stone
Holland & Knight, LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Sam.stone@hklaw.com
Counsel for Plaintiff

Nipun J. Patel
Justin Kadoura
Holland & Knight, LLP
1650 Market Street, Suite 3300
Philadelphia, PA 19104
Nipun.Patel@hklaw.com
Justin.Kadoura@hklaw.com
Counsel for Plaintiff

/s/ Lindsey Rice