1   Scott F. Gibson (Pro Hac Vice)
    SGibson@DentonPeterson.com

2   Jay Parmelee (Pro Hac Vice)
    Jay@DentonPeterson.com

3

4   **DPD** DENTON PETERSON DUNN
    ATTORNEYS & COUNSELORS AT LAW

5   1930 N. ARBOLEDA ROAD, SUITE 200
    MESA, ARIZONA 85213

6   TELEPHONE: (480) 325-9900
    FACSIMILE: (480) 325-9901
    HTTPS://ARIZONABUSINESSLAWYERAZ.COM

7   *Attorneys for Plaintiffs*

8   Heywood G. Friedman
    heywood@friedmanlawoffices.com

9   **Friedman + Bartoumian**

10  30401 Agoura Road, Suite 200
    Agoura Hills, California 91301

11  Telephone: (818) 707-1488
    Facsimile: (810) 707-0490

12  *Attorneys for Plaintiffs*

13          **UNITED STATES DISTRICT COURT**

14          **NORTHERN DISTRICT OF CALIFORNIA**

15

16  CG ENTERPRISES HOLDINGS, LLC, a California          Case No. 3:24-cv-00292-VC
    limited liability company; and STEPHEN M. COON,

17  an individual,

                                                        **REPLY IN SUPPORT OF PLAINTIFFS'**
18          Plaintiffs,                                 **EX PARTE APPLICATION FOR**
                                                        **TEMPORARY RESTRAINING ORDER**
    vs.                                                 **AND ORDER TO SHOW CAUSE RE**
19                                                      **PRELIMINARY INJUNCTION**
    WSP USA, INC., a New York corporation, WSP          **ENJOINING DEFENDANTS FROM**
20  USA BUILDINGS, INC., a New York corporation;        **PROCEEDING WITH ENFORCEMENT OF**
    kW MISSION CRITICAL ENGINEERING, D.P.C., a New      **RESTRICTIVE COVENANTS AND**
21  York design professional corporation; and DOES 1    **OTHER RELIEF; MEMORANDUM OF**
    through 20, inclusive,                              **POINTS AND AUTHORITIES**
22

23          Defendants.                                 Hearing: February 21, 2022, 10:00 a.m.

24

25

26

27

28

**PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CASSE RE: PRELIMINARY INJUNCTION – 3:24-cv-00292-VC**

Plaintiffs CG Enterprises Holdings, LLC and Stephen M. Coon (collectively "Steve") renew their request that the Court issue a temporary restraining order enjoining Defendants from seeking to enforce the restrictive covenants in his Employment Agreement with Defendants. Plaintiffs further request that the Court issue an Order requiring Defendants to show cause why that temporary restraining order should not be converted into a preliminary injunction.

This case concerns a uniquely California dispute. It involves the intersection between restrictive covenants (the "Restrictive Covenants") in an employment agreement that *facially* violate fundamental California public policy, as expressed in CAL. BUS. & PROF. CODE § 16600 *et seq.* Defendants make no attempt to argue that the covenants are enforceable under California law, perhaps recognizing that no distortion of the facts or the law can support that conclusion. Instead, Defendants raise a flurry of arguments to try to convince the Court that Plaintiffs are not entitled to injunctive relief despite the Legislature's clear pronouncement that Plaintiffs have a private action "for injunctive relief or the recovery of actual damages, or both" for any actions that violate the clearly established public policy. *Id.*, § 16600.5. As noted in more detail below, Defendants' arguments are without merit.

## I.    The passage of time has converted Steve's request for *ex parte* relief into a claim for *inter partes* relief.

As a preliminary matter, we note that this case no longer involves an *ex parte* request for temporary restraining order, but rather involves a *inter partes* request for injunctive relief that each party has fully briefed and considered.

Steve filed his Complaint in Sonoma County Superior Court on January 2, 2024. As soon as was practicable under the local rules of that Court, Steve filed an *ex parte* application for temporary restraining order on January 16, 2024 and provided notice as required by local rule. The night before the state court was scheduled to consider the *ex parte* application, WSP exercised its right to remove the case to federal court.

After Steve filed suit on January 2, the parties have had considerable dealings with each other in multiple locations. WSP commenced arbitration proceedings in New York and asked the arbitrator

DPD

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

1    to grant emergency interim relief ordering Steve "not to compete with WSP or solicit its employees
2    or vendors." WSP USA, Inc.'s Motion for Emergency Interim Relief, 15. **Exhibit A** is a copy of that
3    Motion. As a key part of its argument, WSP asserted that even though the Restrictive Covenants
4    lacked a "specific geographic scope," they were nonetheless "reasonable" because "WSP works with
5    clients and vendors around the world." *Id.*, 10.

6    But arbitration is based on the agreements between the parties. Even though WSP sought
7    emergency relief under the Optional Rules for Emergency Measures of Protection of the AAA's
8    Employment Arbitration Rules and Mediation Procedures, the parties had not agreed to be bound by
9    the Optional Rules. So the arbitrator ruled that she did not have authority to grant WSP's requested
10   relief.

11   WSP then filed suit in the Northern District of New York again seeking a temporary
12   restraining order to enjoin Steve from engaging in a lawful profession throughout the United States,
13   including within and from California. And when the district court dismissed the Complaint *sua*
14   *sponte* based on the first-to-file rule, WSP asked the court to reconsider the validity of its Complaint
15   (and request for temporary restraining order), which required the district court to again deny WSP's
16   request *sua sponte.*[1] **Exhibits B and C** are copies of the Orders dismissing the case in the Northern
17   District of New York.

18   Steve filed this case on January 2, 2024. The Complaint requests a "restraining order
19   preventing Defendants and their agents, employees, officers, attorneys, and representatives from
20   attempting to enforce the non-competition and non-solicitation clauses of the [Employment]
21   Agreement." He formally requested a temporary restraining order on January 16. If WSP had not
22   removed the case to federal court, the state court would have considered the application on January
23   18. But more than 30 days have elapsed since Steve made that request. WSP has fully briefed its

24   _____

25       [1]    **Exhibit D** is a copy of the Memorandum of Law in Support of the Motion for
         Reconsideration. Much as it has in this case, WSP argued that the first-to-file rule did not apply
26       because Steve was "motivated solely by forum shopping" and that this case was "an improper
         anticipatory action." WSP further argued that venue was proper in the Northern District of New York
27       and that the court had personal jurisdiction over Steve. The Northern District of New York rejected
         each of WSP's arguments *sua sponte.*
28

3

**PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CASSE RE: PRELIMINARY INJUNCTION – 3:24-cv-00292-VC**

DPD

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

1   opposition to the requested relief; it will have plenary opportunity to participate in the hearing on the

2   requested injunctive relief.

3       WSP cannot claim that Steve has a higher burden in seeking relief because his original motion

4   has the words "*ex parte*" in the description of the relief sought. The passage of time has turned what

5   was a request for *ex parte* relief into one that the parties have fully briefed and which the court will

6   decide *inter partes.*

7

8       **II.**    **This case involves fundamental issues of California law that are exclusively within the province of a California-based court and are not subject to interpretation by a court in a state that interprets California rights in a manner contrary to California public policy.**

9

10      We previously have addressed in detail the reasons why the Court should deny WSP's Motion

11  to Dismiss and won't reiterate them at length here. *See* Plaintiffs' Response to Defendants' Motion to

12  Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6) or, in the Alternative to

13  Stay this Action Pursuant to 9 U.S.C.§ 3, or Transfer Pursuant to 28 U.S.C.§ 1404(a), filed February

14  16, 2024. Without reiterating those arguments in detail, we note two key reasons why the Court

15  should grant injunctive relief despite WSP's arguments for dismissal.

16      First, this case involves the application of California statutes and California public policy to a

17  California company and a prospective employee of that California company who wishes to conduct a

18  lawful business within and from California. Under California law, "every contract by which anyone

19  is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent

20  void." CAL. BUS. & PROF. CODE § 16600 *et seq.* As discussed in greater detail below, void means

21  void, and the restrictive covenants have no legal force and effect. WSP offers no explanation of how

22  it can make these void agreements enforceable in the face of their absolute invalidity under California

23  law, particularly as applied to the facts of this case.

24      But notwithstanding this clear and unambiguous statement of fundamental public policy,

25  Defendants argue that they can enforce restrictive covenants that unquestionably are void under §

26  16600. They argue that another forum – perhaps the arbitrator, perhaps a court in New York – can

27  resolve the question of this fundamentally California dispute. They cite to a forum selection clause

28

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW

DPD

---

4

DPD

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

that grants that authority to either the arbitrator or a court in New York. That forum selection clause raises the second key point in determining how to resolve this dispute.

Typically, the party opposing enforcement of a forum selection clause (in this case, Steve) has a substantial burden in showing why the clause should not be enforced. "That burden, however, is *reversed* when the claims at issue are based on *unwaivable rights* created by California statutes. In that situation, the party seeking to enforce the forum selection clause bears the burden to show litigating the claims in the contractually designated forum 'will not *diminish in any way* the substantive right afforded . . . under California law.'" *Verdugo v. Alliantgroup, L.P.*, 237 Cal.App. 4th 141, 147-48 quoting *Wimsatt v. Beverly Hills Weight etc. Internat., Inc.,* (1995) 32 Cal.App.4th 1511, 1520-24.

"California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy." *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 12. California courts will not enforce a forum selection clause if doing so "would bring about a result contrary to the public policy of this state." *Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 200.

WSP seeks to extricate this case from California so that it can trample the fundamental rights that Steve has under § 16600. But California law does not allow such a result, and instead requires the courts to enforce its public policy. WSP's Motion to Dismiss provides Defendants no relief from injunctive relief.

### III.   Section 16600 *et seq.* specifically authorizes the Court to enjoin Defendants to prevent enforcement of contracts in restraint of trade.

Defendants cavalierly proclaim that Steve and CG are not entitled to any relief, "let alone the extraordinary relief of a temporary restraining order (TRO) or preliminary injunction." Defendants' Opposition to Plaintiffs' Ex Parte Application for Temporary Restraining Order ("Opposition"), 1. Apparently, they have failed to read the statute, which specifically allows Steve to "bring a private action to enforce this chapter for *injunctive relief*, the recovery of *actual damages*, or *both*." CAL. BUS. & PROF. CODE § 16600.5 (e)(1) (emphasis added).

5

**PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CASSE RE: PRELIMINARY INJUNCTION – 3:24-cv-00292-VC**

WSP belittles the harm that Steve will suffer if the Court fails to provide injunctive relief, claiming that "the harm alleged, if it exists, is not great, imminent, or non-compensable through monetary relief, and it is entirely self-inflicted." Opposition, 7. Each of these arguments is legally invalid.

> ### A. Plaintiffs will suffer irreparable harm if the Court does not enjoin Defendants because the Restrictive Covenants have "no legal force or binding effect" and "cannot be enforced.

The Employment Agreement between Steve and WSP contains restrictive covenants that purport to prohibit both non-competition and non-solicitation of customers, employees, and vendors (the "Restrictive Covenants"). Steve seeks injunctive relief to prevent WSP from continuing to seek to enforce the Restrictive Covenants in any forum because those restrictions illegally seek to prevent him from engaging in his chosen profession within and from California.

California law asserts that a contract is "void" if it purports to restrain a person from "engaging in a lawful profession, trade, or business of any kind." CAL. BUS. & PROF. CODE § 16600(a). Void means void, *i.e.,* "[n]ull; ineffectual; nugatory; having no legal force or binding effect; unable, in law, to support the purpose for which it was intended." *VOID Definition & Legal Meaning,* The Law Dictionary, https://thelawdictionary.org/void/ (last accessed February 17, 2024).

> A void contract is without legal effect. "It binds no one and is a mere nullity." "Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it. . . ." As we said of a fraudulent real property transfer . . ., "A void thing is as no thing."

*Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919, 929 (2016) (citations omitted). "A void contract is no contract at all; it binds no one and is a mere nullity. Consequently, such a contract cannot be enforced." *Guthman v. Moss*, 150 Cal.App. 3d 501, 507 (Ct. App. 1984) (citations omitted); *see also Little v. CFS Service Corp.*, 188 Cal. App. 3d 1354, 1358 (Ct. App. 1987) (a void agreement is one "which has no force and effect, is without legal efficacy, is incapable of being enforced by law, or has no legal or binding force").

"A contract may be void because it is technically defective, contrary to public policy, or illegal." *Void Contract,* Black's Law Dictionary (11th ed. 2019). As the California court has

6

PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CASSE RE: PRELIMINARY INJUNCTION – 3:24-cv-00292-VC

1  repeatedly held, restrictive covenants are both "largely illegal" and contrary to public policy. *See,*

2  *e.g., Armendariz v. Foundation Health Psychcare Services, Inc.,* (2000) 24 Cal.4th 83, 123 fn.12.

3  California courts "have consistently affirmed that section 16600 evinces a settled legislative policy in

4  favor of open competition and employee mobility." *Edwards v. Arthur Andersen, LLP* (2008) 44

5  Cal.4th 937, 946. "The law protects Californians and ensures that 'every citizen shall retain the right

6  to pursue any lawful employment and enterprise of their choice.'" *Id.*, quoting *Metro Traffic Control,*

7  *Inc. v. Shadow Traffic Network*, 22 Cal.App.4th 853, 859, 27 Cal. Rptr.2d 573 (1994). California

8  public policy "protects 'the important legal right of persons to engage in businesses and occupations

9  of their choosing.'" *Edwards*, 44 Cal.4th at 946, quoting *Morlife, Inc. v. Perry,* 56 Cal.App.4th, 1514,

10  1520, 66 Cal.Rptr.2d 731 (1997).

11      Because the Legislature has declared that restrictive covenants are void, "neither action nor

12  inaction" by either Steve or WPS can make the restrictive covenants valid and enforceable. *See*

13  *Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App. 4th 564 (attempts to construe restrictive

14  covenants "in such a way to make them lawful would not be reforming the contract to correct a

15  mistake of the parties but rather to save a statutorily proscribed and void provision"). And yet

16  Defendants have repeatedly sought to enforce these void agreements against Steve *and will continue*

17  *to do so* if this Court does not enjoin them.

18      But void means void. The Restrictive Covenants are facially invalid as a matter of law, and no

19  amount of gyrations and hand-waving by WSP can make them valid or enforceable. As a result of

20  that facial invalidity, Steve will be irreparably harmed if the court allows WSP to continue searching

21  for a sympathetic forum that will enforce the invalid restrictions.

### B. The facial invalidity of the Restrictive Covenants is not "speculative."

23      WSP argues that it is "merely speculative" for Steve to argue that he will suffer harm in the

24  absence of injunctive relief. But the facial invalidity of the covenants is not "speculative," nor does

25  WSP explain how those covenants can be enforceable under well-established California law. Stated

26  simply, the Restrictive Covenants are illegal and unenforceable as a matter of law. And there's

27  nothing "speculative" about that.

28

**PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CASSE RE: PRELIMINARY INJUNCTION – 3:24-cv-00292-VC**

DPD

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

WSP argues that Steve must identify the "loss of income, business, revenue, or clients" that he will suffer if the injunction is not granted. That argument makes no sense. The "income, business, revenue, and clients" that Steve will suffer in the absence of an injunction is that same "loss" that WSP has claimed it will suffer in seeking injunction relief in both the arbitration and in the Northern District of New York.

Likewise, WSP cannot claim that Steve will suffer "speculative" harm because the case will be decided in arbitration and "the Parties have no idea how that arbitration will turn out." Opposition, 9. WSP asserts that Steve will not suffer harm to his business "[u]nless and until the arbitrator rules against" him. But WSP's conclusory musings on the subject do not make the harm to Steve "speculative." *See, Verdugo v. Alliantgroup, L.P.*, (2015) 237 Cal.App. 4th 141, 158 (employer could not meet its burden of proving that enforcing a forum selection clause "*will not diminish in any way*" the employee's statutory rights by claiming that the Texas court was "likely" to honor California's wage and hour laws despite a choice of law clause designating Texas law).

Nor does WSP gain any support by asserting that Steve should have agreed to let the arbitrator issue emergency relief (in WSP's favor, of course), even though the arbitrator unquestionably lacked authority to consider the issue. Moreover, the Northern District of New York has held (twice), that Steve has the right to have this Court consider the validity of the positions that each of the parties asserts.

Finally, WSP makes vague accusations that Steve won't be harmed if some other (unidentified) forum prohibits him from "using" its (unidentified) trade secrets for a period. We note that a party claiming misappropriation of trade secrets (i.e., WSP) "bears the burden of defining the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection . . . and to determine the fact of an appropriation." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 *comment b*. Furthermore, California law specifically requires WSP to identify its alleged trade secrets with "reasonable particularity" before discovery commences. CAL. CODE CIV. PRO. § 2019.210.

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213
DPD

DPD
DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARROLEDA ROAD, SUITE 200
MESA, AZ 85213

1      There's nothing speculative about the harm Steve will suffer if no injunction issues. Void

2  means void.

3          **C.      Monetary damages cannot compensate Steve for the lost opportunities he
               will suffer if the injunction does not issue.**

4

5      WSP does not explain how monetary damages can compensate Steve for the lost opportunities

6  that he will suffer in the absence of injunctive relief. Those lost opportunities include the opportunity

7  to build and grow his business. That harm is not "purely economic," as WSP asserts. Indeed, if lost

8  business opportunities could be appropriately remedied through monetary damages, WSP would not

9  have sought emergency relief with the arbitrator or injunctive relief in the Northern District of New

10 York. WSP sought injunctive relief because, if the Restrictive Covenants were enforceable, monetary

11 damages would be insufficient to compensate it for its losses arising from breach of the covenants.

12 Likewise, Steve will not be adequately compensated through economic damages if the Court does not

13 enjoin WSP from seeking to enforce its void Restrictive Covenants against Steve.

14         **D.      In the absence of an injunction, Steve will suffer harm from the facial
               invalidity of the Restrictive Covenants and not from any "self-inflicted
               wounds."**

15

16     We reiterate: void means void. In the absence of an injunction, Steve will suffer injuries that

17 arise because of the facial invalidity of the Restrictive Covenants seeking to prevent him from

18 engaging in his lawful profession within and from California. Those injuries are not "self-inflicted"

19 simply because Steve seeks not to be bound by the illegal restrictions. Rather, those injuries arise

20 solely because of WSP's illegal and unenforceable restrictions.[2] There is nothing inequitable in

21 _____

22     [2]      Overly broad restrictions are a problem across the country. Even in those states that
   enforce "reasonable" restrictive covenants (like New York), courts caution that overbroad covenants

23 will improperly hinder employee mobility. In his landmark article written more than 60 years ago,
   Professor Harlan M. Blake warned of the harm caused by the *in terrorem* effect of overbroad

24 restrictive covenants:

25         For every covenant that finds its way to court, there are thousands which exercise an
           *in terrorem* effect on employees who respect their contractual obligations and on the

26         competitors who fear legal complications if they employ a covenantor, or who are
           anxious to maintain gentlemanly relations with their competitors. Thus, the mobility of

27         untold number of employees is restricted by the intimidation of restrictions whose
           severity no court would sanction.

28

1    Steve's request that the Court allow him to exercise his rights under California law unfettered from

2    any illegal interference from WSP.

3        **IV.    The public policy expressed in § 16600 substantially outweighs WSP's interest in
             enforcing void and illegal restrictions.**

4

5        WSP argues that no injunction should issue because the equities favor its right to arbitrate its

6    alleged claims against Steve over California's fundamental public policy making the Restrictive

7    Covenants void. WSP argues that Steve has unclean hands. He does not: Steve has simply sought to

8    exercise the rights granted to him under fundamental California policy. WSP claims Steve engaged in

9    forum shopping by filing suit in California to seek enforcement of his rights established by California

10   law, an accusation that WSP raised twice in the Northern District of New York and the court rejected

11   *sua sponte* both times. Indeed, as Judge Hurd wrote when he denied WSP's Motion for

12   Reconsideration,

13           WSP has not demonstrated that the Court committed clear error when it concluded that
             Mr. Coon's pending lawsuit in the Northern District of California was not improper
14           forum shopping nor improper anticipatory litigation. This dispute concerns
             defendants' alleged breach of the Agreement. Compl. ¶ 1. Mr. Coon has incorporated
15           his competing business entity in California and maintains its principal place of
             business there. *See* Ex. 1 to Def.'s Mem. Dkt. No. 11-1 at 2. Therefore, *the decision to
16           litigate there appears not only logical but efficient given the nature of the dispute*.

17   **Exhibit C**, 6-7 (emphasis added).

18       Similarly, WSP cannot claim that the Restrictive Covenants are part of "an allegedly illegal

19   contract that has not been shown to be unenforceable at all." Opposition, 13. Void means void. As a

20   matter of law, the Restrictive Covenants are facially invalid and cannot be used to prevent Steve from

21   fairly competing within and from California. And WSP's desire to enforce its void Restrictive

22   Covenants does not outweigh the fundamental public policy of the State of California.

23

24   _____

25   Harlan M. Blake, *Employee Agreements Not to Compete*, 73 HARV. L.REV. 625, 682-83 (1960). The
     *in terrorem* effect is not just a theoretical construct. "Many employees are deterred from testing the
26   legality of unreasonably onerous restrictions because of the expense and vicissitudes of litigation.
     Thus they are condemned to have legitimate options   forever foreclosed because of the fear of a
27   violation of an unreasonable and excessive restriction." *Sidco Paper Co. v. Aaron*, 351 A.2d 250, 261
     n. 1 (Pa. 1976) (Nix, J., dissenting).
28

**PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CASSE RE: PRELIMINARY INJUNCTION – 3:24-cv-00292-VC**

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

DPD

1

**Conclusion**

2       The Court should grant the requested temporary restraining order prohibiting WSP from

3   attempting to enforce the Restrictive Covenants against Steve. Plaintiffs further request that the Court

4   issue an Order to Show Cause requiring WSP to appear and show cause as to why a preliminary

5   injunction should not issue.

6

7           Dated February 20, 2024.

8                                                   **DENTON PETERSON DUNN, PLLC**

9                                                   /s/ Scott Gibson
                                                    Scott F. Gibson
10                                                  Jay Parmelee
                                                    1930 N. Arboleda Road, Suite 200
11                                                  Mesa, AZ  85213
                                                    *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system which will send notification of said filing to the following CM/ECF registrants.

Samuel J. Stone
Holland & Knight, LLP
400 S. Hope Street, 8th Floor
Los Angeles, CA 90071
Sam.stone@hklaw.com
Counsel for Plaintiff

Nipun J. Patel
Justin Kadoura
Holland & Knight, LLP
1650 Market Street, Suite 3300
Philadelphia, PA 19104
Nipun.Patel@hklaw.com
Justin.Kadoura@hklaw.com
Counsel for Plaintiff

/s/ Lindsey Rice

**PLAINTIFFS' REPLY IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CASSE RE: PRELIMINARY INJUNCTION – 3:24-cv-00292-VC**

DENTON PETERSON DUNN
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

# Exhibit A

**BEFORE**
**THE AMERICAN ARBITRATION ASSOCIATION**

| | | |
|---|---|---|
| WSP USA, Inc., | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| STEPHEN COON, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

---

### WSP USA, INC'S MOTION FOR EMERGENCY INTERIM RELIEF

---

Claimant WSP USA, Inc. ("WSP"), by and through undersigned counsel, hereby moves for interim relief in the form of the appointment of an emergency arbitrator, a temporary injunction, and expedited initial discovery, pursuant to the Optional Rules for Emergency Measures of Protection of the AAA's Employment Arbitration Rules and Mediation Procedures.

### <u>INTRODUCTION</u>

This action arises out of Stephen Coon's breach of the duty of loyalty and violations of restrictive covenants in his employment agreements with WSP. In 2020, WSP acquired kW Mission Critical Engineering ("kW MCE"), a data-center design and mission-critical engineering firm. As part of that acquisition, kW MCE's senior leadership, including Coon, signed employment agreements that prohibited them from competing with WSP or soliciting its employees or vendors until at least one year after their departure from kW MCE for any reason. Nonetheless, Coon resigned from WSP in October 2023 for the specific purpose of starting a competing business—a fact he openly admitted to colleagues. On his way out and since the time

of his resignation, it appears Coon followed through, soliciting several current WSP employees to work for him in recent weeks, two of which resigned in December (likely in violation of their own restrictive covenants) in close succession without revealing their new employer.  Having siphoned off this key team of former WSP employees, Coon will imminently begin competing with WSP for the very same customers that Coon was entrusted with servicing using kW MCE's proprietary, confidential, and trade secret business information and strategies.  Coon bragged that he already has a potential buyer for his new business after it is scaled up to $25MM in annual recurring revenue.  Furthermore, WSP recently received information from design partners suggesting that Coon is soliciting competitive work from kW MCE's existing customers, and is likely to solicit/target four  other key employees to execute his business plans.

AAA should appoint an emergency arbitrator to enjoin Coon from further improperly competing with WSP in clear violation of his employment agreement, and to prevent irreparable harm to WSP's business, impairment of its customer goodwill, and misappropriation of WSP's confidential and trade secret business information.  WSP paid Coon substantial amounts of consideration in exchange for the post-employment covenants he voluntarily agreed-to, and will be irreparably harmed, both through the loss of its competitive advantage and through the lost good will that it specifically acquired as part of its purchase of kW MCE.  The emergency arbitrator should also order limited expedited discovery to allow WSP to further support its requested relief.

## **BACKGROUND**

### I.        **WSP Acquires kW Mission Critical Engineering.**

In December 2020, WSP acquired kW MCE, a small (then approximately 175 employee) engineering firm that focused primarily on designing data centers and other mission-critical projects.  (Decl. of Kenneth Clausen ¶ 4, attached hereto as Ex. A.)  The acquisition closed on

December 30, 2020.  (*Id.* ¶ 5.)  As part of the acquisition, kW MCE's senior leadership team and key employees, including Coon, signed employment agreements and retention agreements containing restrictive covenants that prohibited them from competing with WSP, soliciting its employees, customers, or vendors, or sharing its trade secrets or confidential information.  (Ex. B at 6–8.)

## II.      Coon Agreed to Be Bound by Restrictive Covenants.

Coon worked for kW MCE for approximately eight years before the acquisition and entered an Employment Agreement with WSP on December 30, 2020, as a Professional Electrical Engineer and Managing Principal of the Phoenix Office.  (Ex. A ¶¶ 6–7 .)  Coon was responsible for providing technical engineering expertise and developing successful relationships with design team partners—architects, engineers, and contractors.  (*Id.* ¶ 11.)  Coon gained substantial experience and insight into kW MCE's data center business, and had key responsibilities for leadership of key client accounts and projects associated with data center program design and build out.  (*Id.* ¶ 12.)  Coon also gained knowledge about all aspects of kW MCE's customers' programs, including schedule, budget, risk and desired engineering team.  (*Id.* ¶ 13.)

Mr. Coon's Employment Agreement provided for a $200,000 a year base salary, benefits, and potential performance bonuses.  (Ex. B at 2.)  In exchange for this compensation, Coon agreed "not directly or indirectly [to] own, manage, operate, control, be employed by, consult with or participate in the ownership, management operation or control of any business in a manner that would reasonably be expected to divert business from any of the Company's 'Clients' or 'Prospective Clients' with whom [he] had any involvement in developing, servicing, soliciting, or maintaining during the year prior to [his] termination."  (*Id.* at 7.)  The Employment Agreement also prohibits Coon from engaging in "the solicitation, hiring, or engagement of any person or

entity who is, at the time, or was within the last 12 months of [his] employment with the Company, an employee, consultant, or independent contractor of the Company or any of its affiliates." (*Id.* at 8.) And the Employment Agreement provides that Coon "shall not . . . contact, call upon, solicit or otherwise accept business from, render services to, market services or products to, divert business from, and/or interfere with the Company's relationship or business with any of the Company's existing Clients or Prospective Clients" that he learned of, did work for, or learned confidential information about through WSP. (*Id.*)

These restrictive covenants are essential to ensuring that WSP receives the benefit of the bargain from the kW MCE acquisition, including kW MCE's good will. The data-center design business is extremely competitive, with each company's ability to compete largely dependent on, *inter alia*, (1) its ability to understand and accommodate a client's needs, and (2) the quality and reputation of its specific engineers. (Ex. A ¶ 31.) Competition from former kW MCE/WSP employees—and especially high-level employees like Coon, who is equipped with recent knowledge of kW MCE and WSP customers' preferences for, *inter alia*, engineering team organization and operation patterns—would thus be devastating for WSP. (*Id.* ¶¶ 33–34.) Accordingly, the Employment Agreement provides that the restrictive covenants will remain in place not only during Coon's employment by WSP, but also for another twelve months after he leaves or is terminated by WSP. (*See* Ex. B at 6–8.) The only exception is if Coon does not renew the Employment Agreement after the first two-year Term—and thus "convert[s] to an at-will employee" at the end of the Term, (*id.* at 2)—and "remains employed with [WSP] one year after converting to an at-will employee," at which point the restrictive covenants would expire at the end of that one year period. (*Id.* at 10.) In further recognition of the importance of the restrictive covenants, the Employment Agreement also provides, and Coon agreed, that "[t]he Company is in

4

a highly competitive business and expends considerable amounts of money in the development of business from new clients and customers and continued business from existing clients and customers.  The business and clientele of the Company are national and worldwide in scope, and therefore the territorial and time limitations set forth in th[e] Non-Compete clause are reasonable and necessary for the protection of the Company's interests."  (*Id.* at 7.)

Additionally, many employees, including Coon, also signed retention bonus agreements ("RBA") that reaffirmed their restrictive covenants in exchange for substantial cash bonuses "to incentivize [them] to remain with [kW MCE] . . . in order to assist [kW MCE] with integration into WSP."  (Ex. C at 1.)  Specifically, Coon executed the RBA on December 29, 2020, the day before signing his Employment Agreement.  WSP paid Coon $475,000 over the course of two years pursuant to his RBA, in addition to his compensation under the Employment Agreement.  (*Id.* at 1–2.)

### III.        Coon Violates the Restrictive Covenants.

On November 2, 2022, Coon gave notice that he would not renew the Employment Agreement, making him an at-will employee as of December 30, 2022.  (Ex. D.)  Coon did not, however, remain with WSP for a year after that date, as required by the Employment Agreement to excuse him from the 12-month tail in the restrictive covenants.  (Ex. A ¶¶ 15, 17.)  Instead, he tendered his resignation on October 18, 2023, effective "sometime between two and four weeks from today."  (Ex. E.)  His actual last day was November 3, 2023.  (Ex. A ¶ 19.)  Accordingly, the non-compete and non-solicitation provisions of his Employment Agreement are still in effect until November 3, 2024.

Nonetheless, Coon has already begun forming a competing business in Arizona (where he lives) and upstate New York (where much of kW MCE was located), likely intending to take

advantage of the exploding demand for data centers because of the growth of AI software and applications.  Since his resignation (and likely earlier), Coon has solicited several former kW MCE/WSP employees—including at least Principal Mechanical Engineer Jason Leone and Managing Principal of the Troy Office Gary Russinko, who are each subject to their own restrictive covenants with WSP, (Exs. F & G)—to join him.  (Ex. A ¶¶ 24–30.)   Russinko resigned from WSP on October 30, 2023, with his last day being December 1.  (*Id.*)   Leone followed close behind, resigning on December 5, 2023, with his last day being December 22..  (*Id.*)  Prior to his resignation, Coon openly admitted to a co-worker, Mr. Ken Clausen, that he was starting a competing business in Phoenix and upstate New York, near kW MCE's Troy, New York office, and had a lease ready to be executed in January of 2024.  (*Id.* ¶ 20.)  Coon also told Clausen he was "going to be taking anyone in Troy who had not signed a retention agreement," and acknowledged that he needed kW MCE's MEP engineers to deliver on competitive services to the very clients Coon was responsible for servicing at kW MCE.  (*Id.* ¶ 21.)  By recruiting those experienced mechanical engineers, Coon openly touted he could start a business that could compete directly with WSP.  (*Id.* ¶ 22.)  He also bragged that a member of the C-suite of another company, Bowman Engineering, already planned to pay him to buy the new business once it was scaled up to $25MM in annual revenue.  (*Id.* ¶ 23.)  Based on Coon's prior comments to Clausen, he is likely to target at least four other key kW MCE employees in early 2024, if he has not already done so.  (*Id.* ¶ 34.)  Design partners have also suggested in recent weeks to Clausen that Coon is soliciting competitive work from kW MCE's existing customers.  (*Id.* ¶ 35.)

Together, Coon and the employees he has recruited to compete against kW MCE have the potential to inflict substantial harm to WSP's business.  The key accounts that Coon was responsible for servicing have the potential to generate the tens of millions of dollars for FY 2024

and beyond.  (*Id.* ¶ 32.)  Further, Coon has in-depth knowledge of customer preferences, pricing, desired team, project specifications, engineering specifications and kW MCE's existing and past work for those key customers.  (*Id.* ¶ 33.)

On October 25, 2023, WSP's counsel sent Coon a letter, reminding him of his obligations under the restrictive covenants and addressing questions Coon asked in his resignation letter regarding which items/information he could keep and what had to be returned to WSP.  (Ex. H.) On December 29, 2023, WSP's counsel sent similar letters to Messrs. Leone and Russinko.  (Exs. I & J.)  Nonetheless, Coon seems undeterred, and neither Coon, Leone, or Russinko have divulged or disclosed where they intend to work after leaving WSP/kW MCE.  Accordingly, on January 2, 2024, WSP filed its Demand for Arbitration against Coon pursuant to § 17(a) of the Employment Agreement, asserting claims for breach of fiduciary duty, breach of contract, and tortious interference with contract.  WSP now moves for interim relief and expedited initial discovery.

## LEGAL STANDARDS[1]

The AAA's Emergency Rule O-4 provides that emergency interim relief is proper where "the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief." Similarly, New York law allows an employer to seek a preliminary injunction to enforce restrictive covenants where the claimant "show[s] a probability of success on the merits, the danger of

---

[1]     Coon's Employment Agreement provides that "[a]ny dispute arising between any of the Company and [Coon] under this Agreement, or under any statute, regulation, or ordinance, or in connection with [Coon's] Employment with the Company, shall be submitted to binding arbitration before the American Arbitration Association ("AAA") for resolution."  (Ex. B at 11.) It further provides that the arbitration proceedings will be governed by New York law and "conducted in accordance with AAA's Employment Arbitration Rules and Procedures."  *Id.*  And it provides "that in the event of a breach of any provision of this Agreement, money damages would be inadequate and neither [Mr.Coon] nor the Company would have an adequate remedy at law" and that injunctive relief is appropriate.  *Id.*

irreparable injury in the absence of a preliminary injunction and a balancing of the equities in its favor." *Frank May Assocs. Inc. v. Boughton*, 281 A.D.2d 673, 674 (N.Y. S. Ct. App. Div. 2001). "[T]he purpose of a preliminary injunction is to preserve the status quo until a decision is reached on the merits." *NYSARC, Inc. v. Syed*, 747 N.Y.S.2d 327, 329 (N.Y. S. Ct. 2002).

## ARGUMENT

Coon violated his duty of loyalty and his restrictive covenants by planning to start a competing business while still employed at WSP and soliciting WSP's other employees to join him. If he is permitted to begin competing with WSP, he will not only further violate his restrictive covenants, but WSP will also be irreparably harmed through the loss of its competitive position, the threatened and/or actual disclosure and misuse of its confidential information and trade secrets, and the impairment of kW MCE's business and customer good will for which WSP specifically bargained. Moreover, WSP requires expedited initial discovery on specific, targeted issues to determine the extent of the violations and Coon's plans for his competing business so that it can provide additional evidentiary support for continuing injunctive relief.

**I.     WSP Is Entitled to Emergency Interim Relief.**

**A.     WSP Is Likely to Succeed on the Merits of Its Breach-of-Contract Claims.**

To establish breach of contract, a claimant must show "the existence of a contract, the [claimant's] performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Tri-Star Lighting Corp. v. Goldstein*, 151 A.D.3d 112, 1105 (N.Y. App. Div. 2017). Here, Coon breached his Employment Agreement by failing to abide by the restrictive covenants.

**i.     The Restrictive Covenants Are Enforceable.**

The Employment Agreement, including the restrictive covenants, is a valid and enforceable contract.  "Generally, a covenant not to compete will be enforced . . . if it is reasonably limited temporarily and geographically and, without being harmful to the public or unduly burdensome, serves the acceptable purpose of protecting the former employer from unfair competition." *Bollengier v. Gulati*, 233 A.D.2d 721, 722 (N.Y. App. Div. 1996).  Moreover, "[c]ourts will enforce noncompetition clauses 'where necessary to protect, *inter alia*, an employer's confidential customer information and the good will of . . . customer[s] generated and maintained at the employer's expense.'"  *Gundermann & Gundermann Ins. V. Brassill*, 46 A.D.3d 82, 83 (N.Y. App. Div. 2007) (quoting *Milbrandt & Co., Inc. v. Griffin*, 1 A.D.3d 327, 328 (N.Y. App. Div. 2003)).

As an initial matter, in his Employment Agreement, Coon agreed that "the territorial and time limitations set forth in th[e] Non-Compete clause are reasonable and necessary for the protection of the Company's interests."  (Ex. B at 7.)  Accordingly, he has already conceded that they are valid.  *See* Arbitration Award, *Clopay Corp. v. Priest*, 2023 WL 5657724 (E.D. Ok. July 10, 2023) (holding that national scope of restrictive covenant was reasonable based on employee's admission in contract).

Moreover, courts routinely hold that the Agreement's temporal scope—twelve months after the employee leaves the company—is reasonable.  *See, e.g.*, *Artech Info. Sys., L.L.C. v. Tee*, 280 A.D.2d 117, 124 (N.Y. App. Div. 2001); *Michael I. Weintraub, M.D., P.C. v. Schwartz*, 131 A.D.2d 663, 665 (N.Y. App. Div. 1987); *J.H. Goldberg Co., Inc. v. Stern*, 53 A.D.2d 246, 250 (N.Y. App. Div. 1976).  The temporal scope is particularly reasonable here because the covenants were connected to the acquisition of kW MCE.  "New York courts have found three to five year restrictions reasonable in the context of the sale of a business."  *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 235 (S.D.N.Y. 2014)).  Although the restrictive

9

covenants were not part of the contract for the acquisition of kW MCE itself, the acquisition contemplated that the restrictive covenants would be in place.  Indeed, the Employment Agreement specifically references the transition from kW MCE to WSP, (Ex. B at 1), and the RCA states that the purpose of that agreement, including the similar restrictive covenants set forth therein, is "to incentivize [the employees] to remain with [kW MCE] . . . in order to assist [kW MCE] with integration into WSP."  (Ex. C at 1.)

The Employment Agreement's lack of a specific geographic scope is also reasonable for two reasons.  First, WSP works with clients and vendors around the world.  *See Uni-World Capital L.P.*, 73 F. Supp. 3d at 235 (upholding non-compete that applied to "the United States of America, its territories and possessions, and any country outside of the United States of America to which products of the Business are sold"); *Integra Optics, Inc. v. Nash*, 2018 WL 224460, at *10 (N.D.N.Y. Apr. 10, 2018) (applying Colorado law and enforcing worldwide scope of restrictive covenant); *GE Betz Inc. v. Moffitt-Johnson*, 301 F. Supp. 3d 668, 685 (S.D. Tex. 2014); *Bio-Imaging Techs., Inc. v. Marchant*, 584 F. Supp. 2d 322, 328 (D. Mass. 2008) (upholding non-compete agreement that extends to "any state or country where [employer] does business); *Universal Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140, 1153 (D. Kan. 2007).  Second, the covenants are limited to conduct that is directed at WSP's existing and prospective clients—*e.g.*, soliciting them or engaging in conduct that "would reasonably be expected" to divert them away from WSP.  *See Crest Hill Capital LLC v. Gonzalez*¸ 2019 WL 1557512, at *6 (NY. S. Ct. Apr. 10, 2019) ("No geographic limitation is required for a non-solicitation clause that is client-based."); *W.R. Grace & Co., Dearborn Div. v. Mouyal*, 422 S.E.2d 529, 533 (Ga. 1992) ("Where . . . the former employee is prohibited from post-employment solicitation of employer customers which the employee contacted during his tenure with the employer, there is no need for a territorial

restriction expressed in geographic terms." (footnote omitted)).  Even if this were not the case (which it is), Coon intends to operate his business—and has solicited WSP employees to work on that business—in New York, where kW MCE was primarily located, and Arizona, where Coon personally worked while employed at WSP.  (*See* Ex. B at 1.)  Accordingly, enforcing the restrictive covenants to prevent Coon from starting his competing business is reasonable and necessary to protect WSP's legitimate interests.

### ii.   Coon Breached the Restrictive Covenants and Will Breach Them Again.

While WSP performed its obligations under the Employment Agreement by paying Coon a substantial salary, benefits, and bonuses, Coon violated his restrictive covenants and is planning to violate them again.  The non-solicitation clause of the Employment Agreement provides that Coon shall not "engage in any activity which involves . . . the solicitation, hiring, or engagement of any person or entity who is, at the time, or was within the last 12 months of [his] employment with the Company, an employee . . . of the Company or any of its affiliates."  (Ex. B at 8.)  He has already done that by asking Messrs. Leone and Russinko to work for him at his competing business, causing them to resign.

Moreover, Coon's competing business itself will violate the non-competition and non-solicitation provisions.  The non-competition clause provides that Coon "shall not directly or indirectly own, manage, operate, [or] control . . . any business in a manner that would reasonably be expected to divert business from any of the Company's 'Clients' or 'Prospective Clients' with whom [he] had any involvement in developing, servicing, soliciting, or maintaining during the year prior to [his] termination."  (*Id.* at 7.)  Yet, as noted above, that is exactly what Coon admits that he intends to do.  Similarly, the non-solicitation clause provides that Coon "shall not . . . contact, call upon, solicit or otherwise accept business from, render services to, market services or

products to, divert business from, and/or interfere with the Company's relationship or business with any of the Company's existing Clients or Prospective Clients" that he learned of, did work for, or learned confidential information about through WSP "during the year prior to [his] termination." (*Id.*)  Coon has openly admitted he would go after the same client base given the team he is recruiting and his stated intention to start a competing business.  (Ex. A ¶¶ 20, 21, 35.)

### iii.        WSP Has Been Harmed.

WSP has already suffered damages and will suffer further damages without interim relief. Specifically, WSP has already been harmed by Coon's tortious interference with Messrs. Leone and Russinko's retention agreements in violation of his (and their) restrictive covenants—WSP lost two valuable employees.  Moreover, as explained below, WSP will suffer irreparable damage to its reputation, good will, and customer relationships if Coon is permitted to begin competing with it to solicit the same customers Coon worked with while at kW MCE/WSP.  (*See* Part I.B, *infra*.)

### B.        WSP Will Be Irreparably Harmed Without Interim Relief.

An injury is irreparable for the purpose of obtaining preliminary relief where the party would not have an adequate remedy at law.  *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999).  Here, WSP will suffer several irreparable injuries if the Arbitrator does not intervene.

As with the reasonableness of the restrictive covenants, Coon conceded that WSP will suffer irreparable harm if he is permitted to start a competing business before the covenants expire. Specifically, in the Employment Agreement, Coon agreed that "that in the event of a breach of any provision of this Agreement, money damages would be inadequate and neither [Mr.Coon] nor the Company would have an adequate remedy at law" and that injunctive relief is appropriate.  (Ex. B at 7); *see also Ticor Title Ins. Co.*, 173 F.3d at 69 (holding that contract provision that "in the event

of Cohen's breach of the post-employment competition provision, Ticor shall be entitled to injunctive relief, because it would cause irreparable injury" is an admission that harm would be irreparable).

Even apart from this admission, Coon's competing business in fact will likely cause substantial irreparable harm to WSP. "It is well established that the loss of customer relationships stemming from the violation of nonsolicitation and non-competition clauses constitutes irreparable harm sufficient to support injunctive relief." *Crest Hill Capital LLC*, 2019 WL 1557512, at *6. "[T]he violation of a non-compete by the solicitation of employees also constitutes irreparable harm." *Global Switching Inc. v. Kasper*, 2006 WL 1800001, at *12 (E.D.N.Y. June 28, 2006); *EASi, LLC v. Gaffar*, 2020 WL 3868394, at *3 (C.D. Ill. July 9, 2020) (finding risk of irreparable harm because "[i]f Gaffar or L&T continue to solicit and hire EASi employees during the pendency of this lawsuit, EASi risks losing significant work from CAT, a large client, and may be competitively disadvantaged on future projects because the former EASi employees likely take with them the customer goodwill they helped to create for the employer"); *cf. Newmark Partners, L.P. v. Hunt*, 200 A.D.2d 557 (N.Y. App. Div. 2021) (granting preliminary injunction "to protect [plaintiff's] client relationships, reputation, and goodwill after losing all or almost all of their multifamily property group to their primary competitor").

As explained above, the data-center design industry is highly competitive, and a business' ability to compete depends in large part on the particular engineers working for it and its knowledge of a particular client's preferences about how the engineering team will operate. Coon knows WSP's clients' preferences and may be able to divert substantial business from it by siphoning off its valuable team of engineers. Coon also has knowledge of WSP/kW MCE's valuable trade secrets relating to customer projects/proposals, including design elements,

proposal/fee schedules, and instruments of service like field construction documents. Any competition or solicitation by Coon and his former WSP colleagues will necessarily involve the actual or inevitable disclosure of WSP's confidential and trade secret business information.

Finally, these harms will be compounded by the fact Coon's restrictive covenants were integral to "the sale of an existing business with its goodwill." *Frank May Assoc.*, 281 A.D.2d at 674; *accord Lund v. Agmata Wash. Enterprises, Inc.*, 190 A.D.2d 577, 577 (N.Y. App. Div. 1993); *Hay Grp., Inc. v. Nadel*, 170 A.D.2d 398, 399 (N.Y. App. Div. 1991). WSP will irreparably lose part of the good will it purchased in the acquisition if Coon is permitted to compete with it and steal its employees during the term of the restrictive covenants.

In sum, WSP will be irreparably harmed if Coon is not enjoined from competing with it and continuing improperly to solicit its employees in violation of his restrictive covenants.

### C.     The Balance of Equities Favors WSP.

The balance of the equities favors WSP. As explained above, WSP paid Coon substantial sums of money in exchange for his employment *and* his agreement to abide by the restrictive covenants, and WSP will suffer significant and irreparable harm to its business, reputation, good will, and customer relationships if Coon is not enjoined from violating those covenants.

Moreover, those covenants are reasonably limited to protect WSP's interests. They do not prohibit Coon from obtaining gainful employment. Rather, they prohibit him only from soliciting the specific employees, vendors, and clients that belong to WSP, and from doing work that "would reasonably be expected to divert business" away from WSP. *See Battenkill Veterinary Equine P.C. v. Cangelosi*, 1 A.D. 856, 859 (N.Y. App. Div. 2003) (holding that equities favored the plaintiff where "[d]efendant is not being deprived of her livelihood").

Accordingly, the equities favor WSP, and the Arbitrator should issue emergency interim relief to enjoin Coon from competing with WSP and soliciting its employees or vendors during the pendency of this arbitration.

**II.      WSP Is Entitled to Expedited Initial Discovery.**

An "arbitrator [has] the authority to order such discovery, by way of  deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute,  consistent with the expedited nature of arbitration." AAA'S EMPLOY. ARB. R. & MEDIATION P. 9.  WSP requests that Coon be required to preserve all relevant documents, including personal communications like emails and text messages, and that WSP be permitted to serve up to fifteen document requests and ten interrogatories to understand more about the specifics of Coon's competition plans and the full extent of his breach of his post-employment covenants.  These requests and interrogatories should include, but not be limited to, the specific requests attached hereto as Exhibits K and L.

## CONCLUSION

For the forgoing reasons, the AAA should appoint an emergency arbitrator to this matter, order Coon not to compete with WSP or solicit its employees or vendors, and order Coon to preserve all relevant documents and to respond to expedited initial discovery.

Dated: January 2, 2024                             Respectfully submitted,

                                                  */s/ Nipun J. Patel*
                                                  **HOLLAND & KNIGHT LLP**
                                                  TODD WOZNIAK
                                                  Nipun J. Patel
                                                  Justin Kadoura
                                                  1650 Market Street, Suite 3300
                                                  Philadelphia, PA 19104
                                                  Todd.Wozniak@hklaw.com

Nipun.patel@hklaw.com
justin.kadoura@hklaw.com
Telephone:  215.252.9600
Fax:  215.867.6070

*Counsel for WSP USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Nipun J. Patel, do hereby certify that on January 2, 2024, a true and correct copy of

the foregoing was served via email and mail to:

Stephen Coon
5533 Evia Caballo Blanco
Cave Creek, AZ 85331

9273 E Western Saddle Way
Scottsdale, AZ 85255

Coon1986@gmail.com

*/s/ Nipun J. Patel*
Nipun J. Patel

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WSP USA BUILDINGS INC.,

                    Plaintiff,

          -v-                              1:24-CV-076

STEPHEN COON,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

Holland & Knight LLP            SEAN C. SHEELY, ESQ.
Attorneys for Plaintiff
31 West 52 Street
New York, NY 10019

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

## I. INTRODUCTION

On January 17, 2024, plaintiff WSP USA Buildings Inc. ("WSP" or "plaintiff"), a national engineering firm, filed this action against one of its former employees, defendant Stephen Coon ("Mr. Coon" or "defendant"). That same day, plaintiff filed an emergency motion seeking a temporary restraining order ("TRO") and preliminary injunction that would prevent

defendant from allegedly violating certain restrictive covenants contained in his employment agreement ("the Agreement").[1]

Mr. Coon worked as a professional electrical engineer and managing principal of kW Mission Critical Engineering's ("KW") Phoenix, Arizona office for eight years prior to WSP's acquisition of KW in 2020. Dkt. No. 1. When KW was acquired by plaintiff, defendant and other senior leadership signed the Agreement as part of plaintiff's acquisition of KW and its employees. *Id.*

Mr. Coon later resigned in late 2023. Dkt. No. 1. What began as the ordinary departure of a key employee has since turned sour. Both parties have initiated parallel lawsuits contesting the validity of the Agreement. According to plaintiff, the Agreement—which contains both non-compete and non-solicitation language—prevents defendant from competing with plaintiff's engineering business anywhere in the country. Dkt. No. 1-1.

But Mr. Coon acted first. On January 2, 2024, defendant filed a lawsuit in the California Superior Court in Sonoma County against WSP seeking declaratory relief. Dkt. No. 1. That case was removed by plaintiff to the Northern District of California on January 17, 2024—the same day that it sought relief in this district. *See CG Enter. Holdings, LLC v. WSP USA, Inc.*, No. 24-CV-0292 (CRB).

---

[1] WSP's request for a TRO and preliminary injunction was filed *ex parte*. To date, Mr. Coon has yet to appear in this action, and it remains unclear whether he has even been served with either the complaint or plaintiff's motion papers. Dkt. No. 7-2.

Resolution of this case, however, does not require a discussion of the merits. This is because there are several procedural hurdles, discussed below, that plaintiff has not cleared which permit dismissal of this case.

## II. <u>DISCUSSION</u>

First, dismissal of WSP's case is proper under the so-called "first-to-file" rule. *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) ("Where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second."). While ordinarily the district court hearing the original suit will enjoin the second suit, the court being posed the second lawsuit must also exercise its "judicial self-restraint" to decline to hear the second suit while the first remains pending elsewhere. *Id.* (citing *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202–03 (2d Cir. 1970)). Thus, it is not only within a district judge's discretion, but his duty to conserve judicial resources which permits dismissing or staying the second action when an earlier, identical case remains pending elsewhere. *Id.* at 92.

This rule permits dismissal of WSP's case here on account of Mr. Coon's earlier lawsuit pending before the Northern District of California. Compl. ¶

58; Pl.'s Mem. at 8.[2]  Like this lawsuit, Mr. Coon's lawsuit also contests the enforceability of, and alleged violation of, the Agreement.  Critically, as noted, defendant was the first to file.  As a result, his case takes priority over this case.

There are, of course, exceptions to the first-to-file rule.  *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (citations omitted) ("We have recognized only two exceptions to the first-filed rule: (1) where the "balance of convenience" favors the second-filed action . . . and (2) where "special circumstances" warrant giving priority to the second suit[.]").  Upon review, however, neither exception applies in this case.[3]

Therefore, dismissal of WSP's suit is proper to give way to Mr. Coon's earlier action in the Northern District of California.  Yet, even assuming that the first-to-file rule is somehow inapplicable, there are more procedural hurdles that remain.

Second, in addition to losing the race to the courthouse, WSP appears to have mislaid venue.  Applying the federal venue statute correctly, venue

---

[2] Pagination corresponds to CM/ECF.

[3] To the extent that the "special circumstances" exception may apply in this case given the timeline between plaintiff's demand for arbitration and defendant's filing of the California lawsuit, the Second Circuit has not outlined factual scenarios in which a declaratory lawsuit will be deemed "improper anticipatory litigation" when it is filed close in time to a demand for arbitration as opposed to a formal demand letter referencing imminent federal litigation.  *See Fit & Fun Playscapes, LLC v. Sensory Path, Inc.*, 2022 WL 118257, at * 7–8 (S.D.N.Y. Jan 12, 2022) (citing *Buddy USA, Inc. v. Recording Indus. Ass'n of America, Inc.*, 21 F. App'x 52, 55 (2d Cir. 2001) (summary order)).

appears to be proper in the following locations: in the District of Arizona, where defendant is domiciled and subject to general personal jurisdiction pursuant to §§ 1391(b)(1) and (3); in the Northern District of California where plaintiff has established a competing business entity as an alleged violation of the Employment Agreement pursuant to §§ 1391(b)(2)–(3); or perhaps in the Southern District of New York, the forum explicitly contemplated in the Agreement itself. *See* Ex. A to Mot. for TRO at 13. Not found in this list, however, is the Northern District of New York.

In filing this case, WSP claims that venue is proper pursuant to § 1391(b)(2) on account that "a substantial part of the events of omissions giving rise to the claims occurred within the Northern District[.]" Compl. ¶ 13. Yet, the only fact WSP has alleged that might support venue in the Northern District is that Mr. Coon solicited one of its employees who happens to work in its Troy, New York office. Compl. ¶¶ 39, 43. Plaintiff does not allege that defendant has ever traveled to, or is currently operating a competing business in this district.[4] Plaintiff makes only speculative claims that that defendant plans to do so. *Id.* ¶ 38.

---

[4] For the same reasons, it is doubtful that plaintiff has met its burden of establishing that this Court has *personal jurisdiction* over defendant, whose contacts with New York appear attenuated at best.

In sum, it is not clear how this dispute should or will be resolved. However, it is clear that it must be resolved elsewhere.[5]

Therefore, it is

ORDERED that

1. Plaintiff's complaint is DISMISSED, without prejudice; and

2. Plaintiff's motion for a TRO and a preliminary injunction is DENIED without prejudice as moot.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  January 25, 2024
        Utica, New York.

---

[5] While arguably the more prudent course in this case might be to deny plaintiff's TRO and to schedule a hearing on the preliminary injunction, that would further waste the Court's valuable resources and time.  Given the obvious procedural defects in plaintiff's case, we need not wait for defendant, who will likely raise the same issues presented here, to reach the same conclusion we reach today.

# Exhibit C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WSP USA BUILDINGS INC.,

                         Plaintiff,

            -v-                               1:24-CV-076

STEPHEN COON,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                   OF COUNSEL:

HOLLAND & KNIGHT LLP      SEAN C. SHEELY, ESQ.
Attorneys for Plaintiff
31 West 52 Street
New York, NY 10019

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On January 17, 2024, plaintiff WSP USA Buildings Inc. ("WSP" or "plaintiff") filed this action against a former employee, Stephen Coon ("Mr. Coon" or "defendant").  Dkt. No. 1.  That same day, plaintiff filed an *ex parte* emergency motion for a temporary restraining order ("TRO") and preliminary injunction ("PI") to enforce the restrictive covenants contained in Mr. Coon's employment agreement (the "Agreement").  Dkt. No. 3.

On January 25, 2024, a Decision and Order (the "January Order") was issued dismissing WSP's case without prejudice.  Dkt. No. 9.  A judgment was entered accordingly.  Dkt. No. 10.  Plaintiff filed a motion for reconsideration of the January Order pursuant to Local Rule 60.1 on February 8, 2024.  Dkt. No. 11.

Mr. Coon has yet to appear in this action.  However, resolution of WSP's motion for reconsideration may proceed unopposed at this time.  The motion will be considered on the basis of plaintiff's submission and without oral argument.

## II.  BACKGROUND

In 2020, WSP acquired kW Mission Critical Engineering ("KW").  Compl. ¶¶ 2, 10, 14.  As a member of senior leadership, Mr. Coon signed the Agreement with plaintiff that contained restrictive covenants prohibiting him from, *inter alia*, competing with plaintiff's business and soliciting plaintiff's employees.  *Id.* ¶ 16.

On November 22, 2023, Mr. Coon tendered a letter of resignation notifying WSP of his intention to leave the company after over a decade of service.  Compl. ¶ 35.  On October 25, 2023, plaintiff mailed defendant a letter (the

"October Letter") reminding him that he remained bound by the Agreement for the next year.  *Id.* ¶¶ 37, 51; Ex. G to Compl., Dkt. No. 1-1 at 38–39.[1]

Since then, the parties have disagreed as to the validity of the Agreement and have each initiated parallel litigation on opposite ends of the country. Compl. ¶ 58.  On January 2, 2024, Mr. Coon filed an action in the California Supreme Court, Sonoma County against WSP contesting the validity of the Agreement.  *Id.*  Plaintiff later removed that case to the Northern District of California on January 17, 2024.  *See CG Enters. Holdings, LLC v. WSP USA, Inc.*, No. 24-CV-0292 (VC).  That same day, plaintiff filed this lawsuit in the Northern District of New York seeking both a TRO and PI that were denied. *See* January Order at 6.

On February 2, 2024, WSP moved to dismiss Mr. Coon's lawsuit in the Northern District of California pursuant to Federal Rule of Civil Procedure ("Rule") 12(b).  Ex. 3 to Mot. for Reconsideration, Dkt. No. 11-3.  As is especially relevant here, that motion remains pending before the Northern District of California.

## III.  <u>LEGAL STANDARD</u>

Local Rule 60.1 provides that a party may file a motion for reconsideration within fourteen days from the date a judgment, order, or decree is entered. N.D.N.Y. L.R. 60.1.  The standards governing motions for reconsideration are

---

[1] Pagination corresponds to CM/ECF.

necessarily strict to prevent litigants from rehashing the same issues that have already been carefully considered by the district court in the prior ruling. *Navigators Ins. Co. v. Goyard, Inc.*, 623 F. Supp. 3d 220, 222 (S.D.N.Y. 2022) (quoting *Analytical Survs. Inc. v. Tonga Partners L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("[S]uch a motion 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple[.]'").

In this circuit, "[a] court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *DG N.Y. CS, LLC v. Norbut Solar Farm, LLC*, 2024 WL 476540, at *1 (N.D.N.Y. Feb. 7, 2024) (quoting *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, J.)).

## IV.  DISCUSSION

The motion for reconsideration standard is a high bar.  WSP has not presented new law or facts that require this Court to revisit the January

Order.[2]  As discussed in the January Order, dismissal of this case is proper for several reasons.  Among them are the so called first-to-file rule, lack of personal jurisdiction, and improper venue.

## A. **First-to-File Doctrine**

First, WSP fails to establish a clear error is dismissing this case under the so-called "first-to-file" rule.  Plaintiff argues that this case presents "special circumstances," precluding the application of the first-to-file rule.  Pl.'s Mem., Dkt. No. 11-5 at 3–10.  Plaintiff argues that defendant's decision to initiate a lawsuit in California was both improper forum shopping and improper anticipatory litigation.  Pl.'s Mem. at 3–9.  These arguments must be rejected.

As discussed in the January Order, judges in this Circuit enjoy wide discretion to dismiss, transfer, or stay an action where an earlier, identical lawsuit has been filed in another district court under the "first-to-file" rule. *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 138–84 (1952)).  Of course, exceptions to this rule exist.  Under the "special circumstances" exception, which encompasses both the forum shopping exception and the improper

---

[2] WSP has filed a motion to dismiss Mr. Coon's lawsuit in the Northern District of California that remains pending before the court. *See supra*.  While the Northern District of California may grant that motion, it may also deny it.  Therefore, simply appending its motion papers does not support the existence of new facts to require reconsideration of the January Order as to the applicability of the first-to-file rule.  Plaintiff has also appended the docket of a First Circuit case filed in the District of Massachusetts, *DraftKings, Inc. v. Hermalyn*, No. 24-CV-10299.  Ex. 2 to Decl. of Sean C. Sheely, Dkt. No. 11-2. However, that case is of no precedential value and does not demonstrate a "change in the law" sufficient to require reconsideration of the January Order.

anticipatory action exception, plaintiffs who are the first-to-file do not enjoy the priority conferred by the rule. *Fit & Fun Playscapes, LLC v. Sensory Path, Inc.*, 2022 WL 118257, at *7–8 (S.D.N.Y. Jan. 12, 2022).

To demonstrate that forum shopping constitutes a special circumstance, "the first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 276 (2d Cir. 2008). A lawsuit is improper anticipatory litigation when it is filed in direct response to a demand letter that provides specific deadlines or notifies a party of "imminent" litigation in a different district. *Fit & Fun Playscapes, LLC*, 2022 WL 118257, at *8 (collecting cases).

Upon review, WSP has not demonstrated that the Court committed clear error when it concluded that Mr. Coon's pending lawsuit in the Northern District of California was not improper forum shopping nor improper anticipatory litigation. This dispute concerns defendants' alleged breach of the Agreement. Compl. ¶ 1. Mr. Coon has incorporated his competing business entity in California and maintains its principal place of business there. *See* Ex. 1 to Def.'s Mem, Dkt. No. 11-1 at 2. Therefore, the decision to

litigate there appears not only logical but efficient given the nature of the dispute.

Next, WSP's argument that Mr. Coon's California lawsuit is improper rests on a mischaracterization of the October Letter to defendant. The October Letter does not contain sufficient detail to be considered a demand letter in this context. *Fit & Fun Playscapes, LLC*, 2022 WL 118257, at *8 (collecting cases). The October Letter provides no deadlines or otherwise apprised defendant of plaintiff's intention to bring certain claims in this district or any other. Ex. G to Compl. at 39.

Therefore, WSP has not demonstrated that special circumstances exist to rebut the presumption that the first-to-file rule applies here. Dismissal is proper here to give priority to Mr. Coon's earlier lawsuit in the Northern District of California. Accordingly, plaintiff's argument that the January Order was made in clear error must be rejected.

## C. **Personal Jurisdiction**

Second, WSP urges that this Court has overlooked facts giving rise to personal jurisdiction over Mr. Coon. Plaintiff cites defendant's Bonus Retention Agreement in which the parties agree that disputes over *arbitration* awards should be litigated in the courts of New York, New York. Pl.'s Mem. at 11. However, the courts of New York County do not include the

Northern District of New York.  28 U.S.C. § 112(b).  Accordingly, plaintiff's argument must be rejected.

**B. <u>Venue</u>**

Finally, WSP argues that the January Order overlooked key facts that properly lay venue in this district.  *See* 28 U.S.C. § 1391(b)(2).  Plaintiff urges once more that venue has been properly laid in the Northern District of New York because a "substantial part of the events giving rise to the claim occurred" here.  Pl.'s Mem. at 9; 28 U.S.C. § 1391(b)(2).

While WSP presents no new facts other than the ones carefully considered in the January Order, explanation of the federal venue statute appears necessary in this case.  The venue statue provides three possible district courts in which plaintiffs may initiate this litigation.  These include:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the acts or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brough as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

Here, Mr. Coon resides in Arizona.  Compl. ¶ 11.  As such, venue would be proper in the District of Arizona in accordance with § 1391(b)(1).  Defendant

has incorporated a competing business entity in the state of California with a mailing address in Santa Rosa, California.  Ex. 1 to Decl. of Sean C. Sheely, Dkt. No. 11-2 at 2.  Therefore, the acts or omissions giving rise to this claim occurred in the Northern District of California—where defendant has already initiated a lawsuit.[3]  28. U.S.C. § 84(a).  Finally, as a last resort, plaintiff could lay venue anywhere that defendant is subject to the court's personal jurisdiction.  However, as discussed in the January Order, plaintiff has alleged merely speculative ties between defendant and this district.  Pl.'s Mem. at 10; Compl. ¶¶ 42–43.

Therefore, WSP has incorrectly laid venue in the Northern District of New York.  Accordingly, dismissal is proper under 28 U.S.C. § 1406(a).

## IV.  CONCLUSION

In sum, WSP fails to establish new law or facts that require revisiting the January Order.  Plaintiff also fails to establish that the Court committed clear error in deciding the January Order.  In reviewing plaintiff's motion, it is clear that it does not wish to litigate this dispute in the Northern District of California.  Resolution of plaintiff's pending motion in that court may well prove meritorious.  However, the question presented in *this* case is whether

---

[3] WSP also claims that Mr. Coon has solicited former employees from its Troy, New York office yet does not allege that defendant ever traveled to or conducted business anywhere in the state of New York.  Pl.'s Mem. at 10.

plaintiff may file its case in the Northern District of New York.  Once more, the answer to that question is no.

Therefore, it is

ORDERED that

1.  Plaintiff's motion for reconsideration is DENIED; and

2.  Plaintiff is directed to serve a copy of the complaint on defendant in a manner that conforms to the Federal Rules of Civil Procedure no later than April 16, 2024.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  February 14, 2024
        Utica, New York.

# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WSP USA Buildings Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-00076-DNH-TWD |
| | ) | |
| STEPHEN COON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## PLAINTIFF WSP USA BUILDINGS INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

---

By:   Sean C. Sheely
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
212-513-3200
Sean.sheely@hklaw.com

Nipun J. Patel (*pro hac vice forthcoming*)
Justin M. Kadoura (*pro hac vice forthcoming*)
HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, PA 19103
215-252-9527
Nipun.patel@hklaw.com
Justin.kadoura@hklaw.com

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................3

    I.      THE SPECIAL CIRCUMSTANCES EXCEPTION APPLIES HERE. ........................3

          A.     Mr. Coon's California Action Was Motivated Solely by Forum Shopping. ......3

          B.     Mr. Coon's California Lawsuit is an Improper Anticipatory Action.................8

    II.     THE COURT'S VIEWS ON VENUE AND PERSONAL JURISDICTION
         SHOULD BE REVISITED AND THIS ACTION REINSTATED. ..............................9

          A.     Venue is Proper in this District. ........................................................................9

          B.     This Court Has Personal Jurisdiction over Coon. .............................................11

CONCLUSION.......................................................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Absolute Nevada, LLC v. Grand Majestic Riverboat Co., LLC,*
    646 F. Supp. 3d 426 (S.D.N.Y. 2022) ...................................................................................12

*Am. Integrated Sec. Grp., Inc. v. Terra Sound Tech. LLC,*
    No. 22CV2773AMDMMH, 2023 WL 6308014 (E.D.N.Y. Sept. 28, 2023) ..........................10

*Astor Holdings, Inc. v. Roski,*
    No. 01 CIV. 1905 (GEL), 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) ...................................11

*Bartz v. Agway, Inc.,*
    849 F. Supp. 166 (N.D.N.Y. 1994) .........................................................................................1

*Bollengier v. Gulati,*
    233 A.D.2d 721 (3d Dep't 1996) .............................................................................................4

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,*
    511 F.3d 535 (6th Cir. 2007) ...................................................................................................6

*CGI Solutions, LLC v. Sailtime Licensing Grp., LLC,*
    No. 05 CV 4120, 2005 WL 3097533 (S.D.N.Y. Nov. 17, 2005) .............................................8

*D.H. Blair & Co. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006) .....................................................................................................11

*Daniel v. Am. Bd. of Emergency Med.,*
    428 F.3d 408 (2d Cir. 2005) ...................................................................................................10

*Dornuch Ltd. v. PBM Holdings, Inc.,*
    666 F. Supp. 2d 366 (S.D.N.Y. 2009) .....................................................................................6

*DraftKings Inc. v. Hermalyn,*
    Case No. 1:24-cv-10299-JEK (D. Mass. filed Feb. 5, 2024), ECF No. 4 ................................7

*Eisemann v. Greene,*
    204 F.3d 393 (2d Cir. 2000) ................................................................................................1, 3

*Employers Ins. of Wausau v. Fox Entertainment Grp. Inc.,*
    522 F.3d 271 (2d Cir. 2008) ................................................................................................2, 3

*Everest Cap. Ltd. v. Everest Funds Mgmt., LLC,*
    178 F. Supp. 2d 459 (S.D.N.Y. 2002) .....................................................................................7

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  579 F.2d 215 (2d Cir. 1978)..................................................................................8

*Iragorri v. Un. Tech. Corp.*,
  274 F.2d 65 (2d Cir. 2001).....................................................................................4

*Kellen Co., Inc. v. Calphalon Corp.*,
  54 F. Supp. 2d 218 (S.D.N.Y. 1999) ......................................................................6

*McCrory Corp. v. Cloth World, Inc.*,
  378 F. Supp. 322 (S.D.N.Y. 1974) .......................................................................12

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*,
  553 F.2d 842 (2d Cir. 1977).............................................................................11, 12

*Ministers & Missionaries Benefit Bd. v. Snow*,
  26 N.Y.3d 466 (2015) .............................................................................................4

*Motion Picture Laboratory Techs. Local 780, I.A.T.S.E. v. McGregor v. Werner, Inc.*,
  804 F.2d 16 (2d Cir. 1986).....................................................................................3

*New York Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
  599 F.3d 102 (2d Cir. 2010)....................................................................................1

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995)......................................................................................3

*Six Dimensions, Inc. v. Perficient, Inc.*,
  No. 15 CIV. 8309 (PGG), 2017 WL 10676897 (S.D.N.Y. Mar. 28, 2017)...........11

*Steuben Foods, Inc. v. Morris*,
  No. 01-CV-0521E(SC), 2002 WL 1628061 (W.D.N.Y. May 29, 2002)..............12

*White & Case, LLP v. Suez, SA*,
  12 A.D.3d 267 (1st Dep't 2004) .............................................................................9

*William Gluckin & Co. v. Int'l Playtex Corp.*,
  407 F.2d 177 (2d Cir. 1969)....................................................................................1

**Statutes**

28 U.S.C. § 1391(b)(2) ..................................................................................3, 9, 10

**Other Authorities**

C.P.L.R. § 302(a)......................................................................................................12

Jimmy Vielkind, *New York Gov. Kathy Hochul Rejects Ban on Noncompete Agreements*, WALL ST. J., Dec. 23, 2023 ................................................................4

Northern District of New York Local Rule 60.1 .........................................................1

S. 3100A, 118th Cong. (2023) ....................................................................................4

## INTRODUCTION

Pursuant to Local Rule 60.1, Plaintiff WSP USA Buildings Inc. ("WSP") respectfully moves for reconsideration of the Court's January 25, 2024 Order and Decision (the "January 25 Decision") dismissing WSP's complaint without prejudice and denying as moot WSP's motion for preliminary injunction in aid of arbitration with temporary restraints (*see* ECF Nos. 9 and 10).

WSP acknowledges that reconsideration relief is limited to where material law or facts were overlooked or there is a need to correct a clear error or prevent manifest injustice. *Eisemann v. Greene*, 204 F.3d 393, 395 n. 2 (2d Cir. 2000); *see Bartz v. Agway, Inc.*, 849 F. Supp. 166, 167 (N.D.N.Y. 1994). Respectfully, that relief is warranted here because the Court's deference to Defendant Stephen Coon's ("Mr. Coon") earlier-filed California action overlooked facts showing the "special circumstances" for departure from the first-filed rule and reasons why this action should proceed in earnest. *New York Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) ("The [first-filed] rule is inapplicable when there are 'special circumstances'").

Mr. Coon's California action is quintessential forum shopping. *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) ("[w]here forum shopping alone motivate[s] the choice of the situs for the first suit . . . departure from the first-filed rule of priority [is warranted]."). Mr. Coon wants to immediately compete with WSP. To do so, he needs to invalidate his restrictive covenants with WSP. So, he identified California legislation that purports to void such restrictions and incorporated an "employer" there to avail himself of this favorable California law. He then waited until the statute went into effect on January 1, 2024 to commence his declaratory action in California the very next day. Mr. Coon intentionally undertook all these measures in derogation of the New York choice of law and forum selection clauses in his contracts

with WSP, and to thwart WSP's affirmative action against him for breach of his restrictive covenants.

Mr. Coon also improperly used an anticipatory lawsuit to secure priority status. *Employers Ins. of Wausau v. Fox Entertainment Grp. Inc.*, 522 F.3d 271, 275-76 (2d Cir. 2008) (special circumstances exist where "first-filed lawsuit is an improper anticipatory declaratory judgment action"). In the face of WSP's October 25 notice that it will pursue litigation and injunctive relief to hold Mr. Coon to his restrictive covenants, Mr. Coon filed his California action on the earliest possible date after enactment of the California statute, seeking to invalidate his covenants under that statute and thwart WSP's anticipated New York proceedings to hold him in breach of them. Mr. Coon readily admitted this improper purpose to the California court: "Defendants have threatened to sue Plaintiffs for doing precisely what they have a fundamental right to do under California law. This case seeks declaratory and injunctive relief preventing Defendants from doing so." Compl. (ECF No. 1) at Ex. K (referred to herein as "Coon CA Compl."), ¶ 4.

The January 25 Decision, while rooted in comity and judicial economy, regrettably rewards Mr. Coon's forum-motivated tactics while significantly prejudicing WSP. *Cf. Employers Ins.*, 522 F.3d at 275 (special circumstances exceptions are rooted in the notion that the "federal declaratory judgment is not a prize to the winner of a race to the courthouses.") (citations and quotations omitted). For WSP to have its injunctive request heard, it must appear in a distant forum selected by the nominal defendant where, as WSP contends in its pending motion to dismiss, personal jurisdiction is lacking. To the contrary, WSP and Mr. Coon mutually agreed to submit to jurisdiction in New York, not California. They agreed that the restrictive covenants would be decided according to New York's substantive law and public policy, not California's. And they agreed to litigate any dispute between them in New York, not California.

These facts also overcome the Court's venue and jurisdictional concerns embodied in the January 25 Decision. Mr. Coon expressly consented to this Court's exercise of personal jurisdiction over him in his contracts with WSP. And WSP laid venue in this Court under 28 U.S.C. § 1391(b)(2) because the gravamen of WSP's contractual and tort claims against Mr. Coon arise out his improper solicitation of *four* now-departed WSP senior employees in this District.

It is these indisputable facts, and their implications if the January 25 Decision stands, for which WSP respectfully requests that this Court have another look.

## ARGUMENT

Reconsideration relief is warranted where movant shows that "the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Eisemann*, 204 F.3d at 395 n. 2 (quotation and citation omitted); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration relief warranted where moving party "point[s] to controlling decisions and data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). Here, the factual record demonstrates the inapplicability of the first-filed rule under Second Circuit precedent and the propriety of venue in this District.

## I. THE SPECIAL CIRCUMSTANCES EXCEPTION APPLIES HERE.

### A. Mr. Coon's California Action Was Motivated Solely by Forum Shopping.

The Second Circuit directs that the first-filed rule will not apply where "the first-filing plaintiff [] engage[s] in some manipulative or deceptive behavior, or the ties between the litigation and the first forum [are] so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first." *Employers Ins*, 522 F.3d at 276; *see Motion Picture Laboratory Techs. Local 780, I.A.T.S.E. v.*

*McGregor v. Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986) ("[T]he chief 'special circumstance' we have noted is our interest in discouraging forum shopping."). Both gamesmanship and insufficient ties are present here.

**First**, Mr. Coon manufactured a lawsuit in California for solely a tactical advantage. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (stating that one indication of forum shopping is "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case."). Mr. Coon readily admits that his restrictive covenants in his Employment and Bonus Retention Agreements with WSP are governed by New York law. Coon CA Compl. ¶ 19 ("By agreement of the contracting parties, New York law applies to the interpretation or enforcement of the contracts at issue in this lawsuit."); *see also* Compl., Ex. A § 17(b) ("the arbitrator will apply New York State law"); *id.* Ex. B § IV(E) ("This Retention Agreement shall be governed by and construed in accordance with the laws of the State of New York").

As the Court well knows, New York has a vested policy interest in having its laws applied where the parties so designate, as they did here. *See Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 472-476 (2015). Under New York law, Mr. Coon's contractual restrictive covenants will be enforced. *See Bollengier v. Gulati*, 233 A.D.2d 721, 722 (3d Dep't 1996). In fact, Governor Kathy Hochul recently vetoed a bill similar to the one relied upon by Mr. Coon in California, which "would broadly prohibit all non-compete agreements in New York," explaining that New York businesses "have legitimate interests [in non-competition agreements] that cannot be met with the Legislation's one-size-fits-all approach."[1]

---

[1]    *See* S. 3100A, 118th Cong. (2023), https://www.nysenate.gov/legislation/bills/2023/S3100/amendment/A; *see also* Jimmy Vielkind, *New York Gov. Kathy Hochul Rejects Ban on Noncompete Agreements*, WALL ST. J., Dec. 23, 2023, https://www.wsj.com/us-news/law/new-york-gov-kathy-hochul-to-reject-ban-on-noncompete-agreements-3f0eb7d4.

Mr. Coon also admits that he agreed to resolve disputes under his Bonus Retention and Employment Agreements in a New York court and a New York arbitration, respectively. Coon CA Compl. ¶ 35 ("[t]he Agreement requires the parties to resolve their disputes by arbitration with the America Arbitration Association . . . in New York"); *see* Compl., Ex. B § IV(E); Ex. A § 17 (a), (d).

Faced with these substantive and procedural hurdles, Mr. Coon identified California law as a gateway to invalidating his restrictive covenants so that he could immediately compete with WSP. According to Mr. Coon, California's statute enacted on January 1, 2024, Business and Professions Code Section 16600, voids restrictive covenants and noncompete provisions in employment contracts "even if the employee had signed the contractual restraint while living outside of California and working for a non-California employer." Coon CA Compl. ¶¶ 1-3(d).

But Mr. Coon, an Arizona domiciliary, needed a California, employment-based nexus to avail himself of the California law. *See id.* ¶ 3(e). So, he manufactured one. Following his departure from WSP on October 18, 2023, Mr. Coon formed CG Enterprises Holdings, LLC ("CG") in California on November 29, 2023. *See* Declaration of Sean C. Sheely ("Sheely Decl.") at Ex. 1; *see also* Declaration of Stephen M. Coon dated January 16, 2024 ("Coon Decl."), annexed as Ex. L to the Compl., at ¶ 8 (admitting same). Although Mr. Coon tries to cast CG as a "California employer" that "wishes to engage Steve as an employee," Mr. Coon readily admits that he solely founded and now "owns" the company. *Compare* Coon CA Compl. ¶¶ 33, 34 *with* ¶¶ 1, 8. Said differently, CG is not some established California-based competitor of WSP that courted Mr. Coon for his expertise but is now restrained from hiring him; rather, Mr. Coon himself created CG in California to compete with WSP and operates under his control.

5

Mr. Coon waited until the California statute went into effect on January 1 to file his California lawsuit on January 2, naming himself and CG as "plaintiffs." Coon CA Compl. ¶ 2 ("Those statutes became effective January 1, 2024"); Coon Decl. ¶ 37 ("On January 2, 2024, . . . I filed this suit."). He seeks declarations that his restrictive covenants with WSP are void and unlawful under the operative California statute and that WSP "can't enforce restrictive covenants against [him or] others." *See* Coon CA Compl. ¶¶ 38, 40, 47, 49.

Taken together, Mr. Coon undertook a series of intentional and manipulative acts to void his restrictive covenants using a California forum. He first identified favorable California legislation. He then formed an entity in California to avail himself of that forthcoming statute. Mr. Coon waited until the California statute went into effect. And when it did, he immediately filed his lawsuit for declaratory relief seeking an application of California law in violation of both the New York choice-of-law and forum selection clauses in his agreements, clauses that Mr. Coon admits are enforceable against him. These facts, without more, render Mr. Coon's California action undeserving of the first-filed priority. *See, e.g., Dornuch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 371 (S.D.N.Y. 2009) (defendant not entitled to benefits of first-filed rule where it commenced action in Virginia, "notwithstanding the clear and mandatory agreement . . . to litigate in New York"); *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) ("By filing in [the first forum], Defendants were attempting to forum shop as well as preempt resolution of the parties' dispute by the proper forum" and therefore could not rely on the first-filed rule); *cf. Kellen Co., Inc. v. Calphalon Corp.*, 54 F. Supp. 2d 218, 223 (S.D.N.Y. 1999) (plaintiff's behavior "smacks of forum shopping" in initiating a secondary action in the hopes of securing "greater relief on the same claim" asserted in the primary case).

Mr. Coon is not the only party to attempt a stunt like this. Just recently, a senior executive from DraftKings Inc. resigned from his job, signed a contract with a California-based competitor, Fanatics, attempted to lay domicile in California, and then initiated a declaratory lawsuit in California seeking to invalidate his restrictive covenants under the same California statute relied upon by Mr. Coon. *See DraftKings Inc. v. Hermalyn*, Case No. 1:24-cv-10299-JEK (D. Mass. filed Feb. 5, 2024), ECF No. 4 at 1-4, 15-16 (arguing and citing case law for the proposition that employee cannot "escape the obligations of the[ir] contracts by, in essence, fleeing the jurisdiction"); *see also* ECF 26 at 4.[2] When DraftKings brought its own action in Massachusetts federal court, the executive sought a stay in favor of his California action under the first-filed rule. *Id.* at ECF No. 26. The Massachusetts court refused to give priority to the California action on the basis that (i) it could "better serve the interests involved" and (ii) the senior executive had executed noncompetition covenants with DraftKings expressly submitting to the jurisdiction of Massachusetts courts and agreeing that the provisions are governed by the laws of Massachusetts. *Id.* at ECF No. 29. This Court should do the same here: hold Mr. Coon to the New York substantive and procedural terms to which he agreed.

***Second***, even if Mr. Coon could point to a *bona fide* reason for his filing in California, any tie to that forum is still threadbare on its face. *See Everest Cap. Ltd. v. Everest Funds Mgmt., LLC*, 178 F. Supp. 2d 459, 470 (S.D.N.Y. 2002) (holding first-filed rule does not apply where plaintiff "select[ed] a forum with only a slight connection to the factual circumstances of his action."). The only nexus to California is the self-serving one created by Mr. Coon when he formed CG. Mr. Coon himself is not a California resident; he lives in Arizona. Defendants are not California

---

[2]     For ease of reference, the operative *DraftKings* filings are annexed to the Sheely Decl. as Ex. 2.

entities; they are New York entities.  *See* Coon Compl. ¶¶ 8, 11, 14 (admitting same).  Mr. Coon's

Employment and Bonus Retention Agreements say nothing of California; they are governed by

New York choice of law and forum selection clauses.  The pending arbitration between the parties

is not seated in California; it is in New York. All four employees who have resigned since Mr.

Coon's departure and are suspected of joining Mr. Coon previously worked in WSP's New York

office and reside in New York.  *See* Declaration of Kenneth Clausen dated February 1, 2024

(Sheely Decl. Ex. 3) ("Clausen Decl.") at ¶ 54.  And, to the extent necessary, all the evidence

regarding Mr. Coon's Employment Agreement and WSP's purchase of kW will be in New York.

### B.     Mr. Coon's California Lawsuit is an Improper Anticipatory Action.

The first-filed rule also does not apply here because Mr. Coon admits he filed the California

lawsuit in response to WSP's litigation threats and in anticipation of WSP's own lawsuit against

him for breaching his restrictive covenants.  *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215,

219 (2d Cir. 1978) (refusing to apply first-filed rule where defendant's "suit for declaratory

judgment was filed in apparent anticipation of [plaintiff]'s New York suit.").

Shortly after Mr. Coon gave notice of his intent to leave, WSP notified Mr. Coon on

October 25 of his continuing restrictive covenants and non-compete obligations, warning him that

"WSP takes these restrictive covenants very seriously and expects you to honor the Agreement.  If

you were to breach one or more of these covenants, WSP would be forced to enforce the

Agreement and seek all available remedies, including an injunction, damages, and attorneys' fees

and costs."  Compl., Ex. G; *see also CGI Solutions, LLC v. Sailtime Licensing Grp., LLC*, No. 05

CV 4120, 2005 WL 3097533, at *3–4 (S.D.N.Y. Nov. 17, 2005) (although notice letter "did not

outright announce that it would be filing suit by a particular date," its statement that the party "may

file a lawsuit seeking injunctive relief and civil damages . . . sufficiently notified Plaintiffs of its

resolve to sue").[3] Not only was Mr. Coon's declaratory lawsuit filed close in time to this formal letter, it was also filed on the *same day* WSP filed its Demand for Arbitration against him. Compl. ¶¶ 54-55; 58.

Mr. Coon concedes that he filed his California lawsuit in response to WSP's threats of litigation and in anticipation of—and to preempt—WSP's inevitable lawsuit: "Defendants have threatened to sue Plaintiffs for doing precisely what they have a fundamental right to do under California law. This case seeks declaratory and injunctive relief preventing Defendants from doing so;" "Defendants threaten to, and unless restrained, will institute lawsuits upon Steve to prevent Steve working for CG." Coon CA Compl. ¶¶ 4, 44.

Mr. Coon also styled his complaint using the species of declaratory, defensive allegations and claims indicative of an improper anticipatory action. That is, in the face of his threatened breach of restrictive covenants by WSP, Mr. Coon turned his defenses of contractual non-enforceability into affirmative declaratory claims that his restrictive covenants are void. *See White & Case, LLP v. Suez, SA*, 12 A.D.3d 267, 268 (1st Dep't 2004) (action was properly dismissed, finding that "use of a declaratory judgment action to determine the viability of a defense, or the existence of merit, to a legal malpractice claim, or any tort claim, would be unusual, at the least").

## II. THE COURT'S VIEWS ON VENUE AND PERSONAL JURISDICTION SHOULD BE REVISITED AND THIS ACTION REINSTATED.

### A. Venue is Proper in this District.

WSP respectfully asks this Court to also revisit its view that "WSP appears to have mislaid venue." January 25 Decision at 4. Section 1391(b)(2) requires WSP only to point to facts showing that a "substantial part of the events giving rise to the claim occurred [in this District]." 28 U.S.C.

---

[3] On December 29, 2023, WSP also issued similar notices to two departing senior leaders suspected of joining Mr. Coon. Compl. Exs. H, I.

§ 1391(b)(2); *see Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (plaintiff need not plead facts showing "the *most* substantial" events occurred in the operative venue; in fact, venue can be appropriate in more than one district as long as a substantial part of the underlying events took place in each of those districts) (emphasis added). So long as the subject events within this forum bear a close nexus to the claims asserted by WSP, they are properly deemed "significant" and, thus, "substantial" for purposes of venue under 28 U.S.C. § 1391(b)(2). *Daniel*, 428 F.3d at 433.

WSP filed for injunctive relief in aid of arbitration in this District because substantial events predicating its claims against Mr. Coon occurred here. WSP has shown that:

- Mr. Coon began competing with WSP in Troy, New York;

- Mr. Coon is leasing, or imminently plans to lease, office space in Troy, New York to strengthen his competitive profile;

- Mr. Coon conveyed to a WSP employee that he planned to take "anyone in Troy who had not signed a retention agreement" with WSP; and

- Mr. Coon already persuaded four senior WSP employees who work and reside in this District (Jason Leone, Gary Russinko, Andrew Stercho, and Jonathan Sterling) to join his competing company.

*See* Compl. ¶¶ 38-43; *see also* Clausen Decl. ¶¶ 24-25, 28, 31-38.

These claims are the centerpiece to WSP's breach of contract, breach of loyalty and tortious interference claims against Mr. Coon (*see, e.g.,* Compl. ¶¶ 68, 70-72, 76, 78-79, 83, 85-86), and venue is proper here on that basis.[4] *See Am. Integrated Sec. Grp., Inc. v. Terra Sound Tech. LLC*, No. 22CV2773AMDMMH, 2023 WL 6308014, at *8 (E.D.N.Y. Sept. 28, 2023) (finding venue

---

[4] To the extent that WSP's *prima facie* showing does not wholly resolve the Court's concerns about venue to warrant reconsideration, WSP respectfully requests that the Court transfer the action to the U.S. District Court for the Southern District of New York in accordance with Mr. Coon's express consent to that venue in his Bonus Retention Agreement.

proper where the complaint alleged that defendants induced plaintiff's employee "to leave his New York employer, breach his New York contract, and steal significant New York business prospects from [plaintiff]" and thereby "a substantial part of the alleged interference and misappropriation happened in New York, which is the location of the confidential information that the defendants allegedly sought."); *Astor Holdings, Inc. v. Roski*, No. 01 CIV. 1905 (GEL), 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002) (noting that "[v]enue will usually exist where an act outside the district causes physical injury or other tortious effect inside the district" and finding venue proper for tortious interference claim where "the complaint allege[d] that [defendant's] actions were directed at interfering with contracts that had substantial connections to New York"); *cf. Six Dimensions, Inc. v. Perficient, Inc.*, No. 15 CIV. 8309 (PGG), 2017 WL 10676897, at *7 (S.D.N.Y. Mar. 28, 2017) (finding venue improper because plaintiff "does not allege that any of its employees who were improperly solicited were employed in this District or solicited in this District").

## B. This Court Has Personal Jurisdiction over Coon.

The Court also had "doubt[s]" about whether it could exercise personal jurisdiction over Mr. Coon. January 25 Decision at 5, n. 4. Here again, WSP respectfully submits that the record should dispel any such doubt. Mr. Coon expressly consented to personal jurisdiction in New York for any dispute involving his Bonus Retention Agreement. *See* Compl., Ex. B at § IV(E). He likewise expressly consented—and now is actively participating—in an arbitration seated here in New York. Compl., Ex. A at § 17(A).

His dual consent is sufficient to confer jurisdiction over him to decide WSP's request for injunctive relief in this Court. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements"); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopoulos*, 553 F.2d 842, 844 (2d

Cir. 1977) (holding an "agreement to resolve disputes by arbitration in New York constitute[s] consent to personal jurisdiction in New York" without the need to engage in a CPLR § 302 analysis)[5]; *Absolute Nevada, LLC v. Grand Majestic Riverboat Co., LLC*, 646 F. Supp. 3d 426, 439 (S.D.N.Y. 2022) ("[B]y consenting to resolve his claim by arbitration in New York, [the party] consented to personal jurisdiction in New York.").

## CONCLUSION

WSP pursues reconsideration relief from this Court because of the significant prejudice it faces from this procedural morass created by Mr. Coon. If WSP is forced to proceed in California, it will be forced to proceed in a jurisdiction that it contends (a) is improper for all the reasons stated herein and (b) lacks jurisdiction for the reasons stated in WSP's pending motion to dismiss (*see* Sheely Decl. Ex. 3). Moreover, WSP is unable to await the outcome of its motion to dismiss because of the irreparable harm accruing each day and the practical reality that it could be many months until a decision is rendered.

For these and all the forgoing reasons, WSP respectfully requests that this Court (i) reconsider and reverse its January 25 Decision, (ii) vacate the Judgment (ECF 10) and reinstate

---

[5]     Even if this Court were to undertake further personal jurisdiction analysis, Mr. Coon's contractual breaches and tortious act in this State would confer jurisdiction over him under New York's long-arm statute, C.P.L.R. § 302(a). *See, e.g., Steuben Foods, Inc. v. Morris*, No. 01-CV-0521E(SC), 2002 WL 1628061, at *3 (W.D.N.Y. May 29, 2002) (finding personal jurisdiction under C.P.L.R. § 302(a)(3)(ii) over Georgia corporation that solicited New York-based employees of another company noting that plaintiff was injured in New York "where it felt the loss of its Solicited Employees" and defendant "should have reasonably expected that its recruitment of [plaintiff's] employees would have consequences in New York"); *McCrory Corp. v. Cloth World, Inc.*, 378 F. Supp. 322, 324–25 (S.D.N.Y. 1974) (finding personal jurisdiction over defendants under C.P.L.R. § 302(a)(3)(ii) where it was "undisputed that the defendants made certain phone calls to various of the employees in New York" in an attempt to lure away plaintiffs' employees and accordingly finding that injury to plaintiffs occurred in New York and defendants "certainly expected or should have expected their alleged acts to have consequences in New York.").

the action, (iii) permit Mr. Coon to be served and immediately joined to this lawsuit; and (iv)

consider WSP's request for a temporary restraining order and preliminary injunction (ECF 3).


Dated: February 8, 2024                    Respectfully submitted,

                                           HOLLAND & KNIGHT LLP
                                           *Attorneys for Plaintiff*

                                           By: ___*/s/ Sean C. Sheely*___
                                                   Sean C. Sheely