Pages 1 - 44

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria

| | |
|---|---|
| CG ENTERPRISES HOLDINGS, LLC; ) | |
| STEPHEN M. COON,                ) | |
|                                 ) | |
|          Plaintiffs,            ) | |
|                                 ) | |
|   VS.                           ) | NO. 3:24-cv-00024 VC |
|                                 ) | |
| WSP USA, INC.; WSP USA          ) | |
| BUILDINGS, INC., kW MISSION     ) | |
| CRITICAL ENGINEERING, D.P.C.,   ) | |
|                                 ) | |
|          Defendants.            ) | |
| _____ ) | |

San Francisco, California
Wednesday, February 21, 2024

**TRANSCRIPT OF PROCEEDINGS BY ZOOM WEBINAR**

**APPEARANCES BY ZOOM WEBINAR:**

For Plaintiffs:
                    DENTON, PETERSON, DUNN, PLLC
                    1930 N. Arboleda, Ste. 200
                    Mesa, AZ 85213
             **BY:  SCOTT GIBSON
                    JAY PARMELEE
                    ATTORNEYS AT LAW**

For Defendants:
                    HOLLAND & KNIGHT, LLP
                    One Liberty Place
                    1650 Market Street, Ste. 3300
                    Philadelphia, PA 19103
             **BY:  NIPUN PATEL
                    JUSTIN KADOURA
                    ATTORNEYS AT LAW**

REPORTED REMOTELY BY:  Rhonda L. Aquilina, RMR, CRR, CRC
                       CSR No. 9956, Official U.S. Reporter

| | |
|---|---|
| 1 | **Wednesday - February 21, 2024**         **10:02 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  Now calling civil case 24-292, CG |
| 5 | Enterprises Holdings, LLC, et al versus WSP USA, Inc. et al. |
| 6 | Will counsel please state your appearances for the record |
| 7 | starting with the plaintiff. |
| 8 | **MR. GIBSON:**  Good morning, Your Honor.  Scott F. |
| 9 | Gibson and Jay Parmelee on behalf of the plaintiffs. |
| 10 | **THE COURT:**  Good morning. |
| 11 | **MR. PATEL:**  Good morning, Your Honor.  Napun Patel and |
| 12 | Justin Kadoura with Holland & Knight on behalf of the |
| 13 | defendants. |
| 14 | **THE COURT:**  Hi.  Okay.  I find this case to be |
| 15 | somewhat confusing. |
| 16 | First of all, let me just ask Mr. Patel, or whoever for |
| 17 | the defendants, do you agree that this request for injunctive |
| 18 | relief can be adjudicated by the arbitrator? |
| 19 | **MR. PATEL:**  Yes, Your Honor, we do.  It should -- the |
| 20 | present request belongs in arbitration because the scope of the |
| 21 | arbitration clause, if you look at it, the exception for |
| 22 | injunctive relief -- |
| 23 | **THE COURT:**  No, I understand.  I just want to make |
| 24 | sure, because I thought there was reference to a request for |
| 25 | injunctive relief from the arbitrator, and the arbitrator said |

**UNITED STATES COURT REPORTERS**

1    you can't have it, or something.  But I didn't -- I don't quite

2    understand what happened there.  But it made me wonder like

3    why, you know, if the arbitrator said you can't have injunctive

4    relief, then why -- why do you believe that the plaintiffs'

5    request for injunctive relief can be heard by the arbitrator?

6    So can you just explain to me what happened there?

7              **MR. PATEL:**  Sure.  We filed a motion for emergency

8    relief with the triple A shortly after we commenced

9    arbitration.

10             **THE COURT:**  Okay.

11             **MR. PATEL:**  Judge Heckman --

12             **THE COURT:**  To prevent him from doing the stuff that

13   he's trying to do?

14             **MR. PATEL:**  Exactly.  To enforce the contract.

15             **THE COURT:**  Okay.

16             **MR. PATEL:**  Judge Heckman, former magistrate judge out

17   of the Western District of New York, was assigned.  She heard

18   oral argument and felt it was a close call, but also felt that

19   one of the areas where arbitrators can sometimes get into

20   trouble is if they overstep their jurisdiction.

21        Now, what she didn't have before her, though, was a

22   request --

23             **THE COURT:**  Wait a minute.  Can you -- that was

24   very -- that was a little bit vague.  So are you saying that

25   she ruled that she didn't have jurisdiction to consider your

```
 1   request for injunctive relief?
 2        MR. PATEL:  She ruled, Your Honor, that she didn't
 3   have jurisdiction to consider our, WSP's request for
 4   injunctive -- for a preliminary injunction to enforce the terms
 5   of the contract.
 6        What she did not rule, though, was whether or not the
 7   scope of the arbitration provision encompassed disputes and
 8   request for injunctive relief that are unrelated to the
 9   exception that's found in the arbitration provision, which we
10   believe is limited to situations where a party is seeking
11   injunctive relief or specific performance before a court of
12   competent jurisdiction, quote, in order to enforce or prevent
13   any violations of the agreement.
14        THE COURT:  Right, I understand that's -- that is, by
15   its language, what that provision, what is it, Section 16 says,
16   but that leaves us in a weird situation, right?  You have --
17   you have a situation where if you want damages, I guess, you go
18   to arbitration.
19        And if you want damages based on a violation of the
20   contract or damages based on, you know, anything in connection
21   with the relationship, right, with the employment
22   relationship -- so it might not just be a breach of contract
23   that you're seeking damages for, but something relating to the
24   employment relationship -- you go to arbitration.
25        And then I guess there are two potential types of
```

1  injunctive relief:  One is injunctive relief to enforce the

2  contract or prevent a breach of the contract, and the contract

3  says that if you want that, you gotta go to court.  But then

4  another type of injunctive relief is, I guess, other injunctive

5  relief that is relating to the employment relationship.  And

6  you're saying that by implication that type of injunctive

7  relief is to be heard by the arbitrator.

8       That's pretty strange.  Like why would an agreement ever

9  say, well, this type of injunctive relief you gotta go to

10  court, but this other type of injunctive relief you gotta go to

11  the arbitrator?  Isn't that a -- I mean, this is one of the

12  strangest arbitration arrangements I've ever seen.

13       **MR. PATEL:**  Your Honor, I agree that it is a strange

14  arbitration provision the way it's set up.

15       You know, respectfully, we disagreed with Judge Heckman's

16  reasoning.  We felt that --

17       **THE COURT:**  Why?  I mean, it sounds like her reasoning

18  is consistent with -- is exactly consistent with what you're

19  saying now, which is that if you're seeking an injunction to

20  enforce the provisions of the contract or prevent violations of

21  the contract, you gotta go to court.

22       **MR. PATEL:**  Well, I think because the language of

23  Section 16 it says "In addition and supplementary to other

24  rights and remedies existing in its favor," you know, we read

25  that in connection with the broad --

**UNITED STATES COURT REPORTERS**

1          **THE COURT:**  I see.

2          **MR. PATEL:**  -- arbitration provision.

3          **THE COURT:**  I see.  Okay.

4          **MR. PATEL:**  So it basically gives us the option but

5    not mandate that we go to court to seek an injunction to

6    enforce the contract.

7          **THE COURT:**  I see.  Hold on.  Let me read it again

8    with an eye toward that.  Hold on.

9              (As read) Accordingly, the parties agree that in the

10             event of a breach or a threatened breach of any of the

11             provisions of this agreement, either party may in addition

12             and supplementary to other rights and remedies existing in

13             its favor, apply to any court of law or equity of

14             competent jurisdiction for specific performance and/or

15             injunctive or other relief...in order to enforce or

16             prevent any violations of the provisions thereof.

17         Okay.  I see what you're saying.  But, and what you're

18    saying is -- well, you disagree with her ruling.  The contract

19    allows for you to go to court to seek injunctive relief to

20    prevent -- to enforce a provision of the contract or prevent a

21    violation of the provision of the contract.

22         But what the contract does not allow is for somebody to go

23    to court for some other kind of injunctive relief -- injunctive

24    relief that is not to enforce a provision of the contract, but

25    that is in connection with the employment relationship.  That

1  kind of injunctive relief you're not allowed to go to court to

2  get.

3          MR. PATEL:  That's exactly right, Your Honor.  Any

4  other type of injunction request would fall under kind of the

5  broader:  Any dispute arising between any of the company and

6  senior leader under this agreement *or* under any statute,

7  regulation or ordinance *or* in connection with the senior

8  leaders' employment with the company shall be submitted to

9  binding arbitration.  Anything that falls within that, Your

10  Honor.

11          THE COURT:  It's just so strange.  Can you think of a

12  reason why anybody -- I mean, was this like a drafting error,

13  that when somebody was drafting paragraph 16 they were being

14  sloppy and not sort of mirroring the language of Section 17

15  which talks about sort of any dispute that arises under the

16  agreement or is in connection with the employment relationship.

17          MR. PATEL:  Your Honor, I have no facts to suggest

18  that it was a drafting error.  I think, you know, the harmony,

19  it can be read -- the two provisions can be harmonized with one

20  another if the interpretation that we've respectfully asserted,

21  which is that there's optionality around which forum you can go

22  to to seek injunctive relief to enforce the covenant, that's

23  basically how we interpret it.

24          THE COURT:  Yeah, I mean, that seems like a good

25  interpretation, but it still doesn't explain the disconnect

```
 1   between the types of disputes that are covered by Section 16,
 2   and the types of disputes that are covered by Section 17.
 3        I just -- I can't think of a reason why -- if you're going
 4   to say, look, there are some circumstances -- you know, in the
 5   case of a need for an injunction, you get to go to court.  I
 6   can't think of a reason why you would limit it to enforcement
 7   of the provisions of the contract, as opposed to mirroring the
 8   language of Section 17, which talks about any dispute
 9   arising -- that is connected to the employment arrangement.
10        MR. PATEL:  Well, let me try to offer at least one
11   explanation that just maybe --
12        THE COURT:  It may not matter.  Maybe it doesn't
13   matter, like maybe the answer is the language of the agreement
14   is the language of the agreement.  And, you know, both sides
15   are sophisticated parties and they're stuck with the language.
16        But I was just curious, like what reason could possibly
17   exist for doing it that way?
18        MR. PATEL:  So one reason, Your Honor, just
19   hypothetically, I mean, there are situations where if you're
20   seeking to enforce, you may want to run in to court first in
21   order potentially to avoid an argument about having to confirm
22   an arbitration award, right?  That could be a reason.  Or that
23   you feel like a court of competent jurisdiction may be able to
24   hear your request prior to a triple A emergency arbitrator.
25        So I think perhaps, Your Honor --
```

1          **THE COURT:**  Yeah, but that would apply equally to a

2    dispute that is connected to the employment agreement but not a

3    dispute that seeks to enforce the provisions of the agreement.

4          **MR. PATEL:**  I don't -- well, I don't think that's what

5    the agreement says, though, right, because --

6          **THE COURT:**  Well, Section 16 talks only about

7    enforcing the provisions of the agreement, and Section 17 talks

8    about enforcing the provisions of the agreement and

9    adjudicating any dispute that is in connection with the

10   employment arrangement, right?

11         **MR. PATEL:**  That's right, Your Honor, but that's the

12   only circumstance I can think of is, again, when you're looking

13   to enforce, there may be a reason you need to go in to court

14   sooner or feel like you need to go in to court sooner or maybe

15   more advantageous, just from a timing standpoint, to go in to

16   court to obtain an injunction in aid of arbitration.

17         **THE COURT:**  I saw some reference -- there was some

18   reference in the papers, that I didn't understand, to the

19   parties not having availed themselves of the emergency

20   procedures or the emergency rules in the arbitration.  I didn't

21   understand -- I have no experience with actually doing

22   arbitrations, so I didn't understand those references.

23        What was that discussion about?

24         **MR. PATEL:**  Your Honor, that's the argument that

25   Mr. Gibson raised, right, which is that basically had we wanted

**UNITED STATES COURT REPORTERS**

1   the -- had we expressly wanted the emergency arbitration -- I'm

2   sorry -- the emergency provisions of the triple A employment

3   rules to apply, we should have expressly adopted the optional

4   measures for emergency relief in the arbitration clause in

5   17(b), that there should have been an express reference to

6   that.

7           **THE COURT:**  Oh, so that's not -- that's not -- I

8   misunderstood.  I thought that Mr. Gibson was saying like when

9   you went to arbitration, you didn't avail yourselves of these

10  procedures or something like that.

11          **MR. GIBSON:**  Your Honor, if I might.

12          **THE COURT:**  Yeah.

13          **MR. GIBSON:**  The agreement incorporates or requires

14  the parties to arbitrate under the employment rules of the

15  triple A.  There is a section of optional rules that are

16  designated as optional rules that say these don't apply unless

17  you specifically agree to them in your agreement or you have a

18  separate agreement that incorporates them.  Those optional

19  rules deal with the ability to grant injunctive or emergency

20  relief, and that was not done as part of the agreement between

21  the parties.

22          And inasmuch as arbitration is a creature of agreement,

23  the arbitrator had no authority on which to enter any -- or to

24  consider any emergency relief.

25          **THE COURT:**  Was that the arbitrator's reasoning?

1    Mr. Patel made it sound like the arbitrator believed that she

2    didn't have jurisdiction to entertain the request for

3    injunctive relief because of paragraph 16; is that what --

4         **MR. GIBSON:**  She did not have jurisdiction, because

5    the parties had not given her authority to consider the

6    optional rules that would enable her to consider injunctive

7    relief.

8         **THE COURT:**  Is there a written ruling from the

9    arbitrator on this?

10        **MR. GIBSON:**  There is.

11        **THE COURT:**  Is it in the record?

12        **MR. GIBSON:**  I believe -- I believe it is.

13        **THE COURT:**  Can you tell me where?

14        **MR. GIBSON:**  We will find it for you and let you know

15   that.

16        **THE COURT:**  Okay.

17        **MR. GIBSON:**  I don't have it here at my fingertip.

18        **THE COURT:**  Okay.  That seems like an important

19   document for me to read, so, yeah, let me know where it is.

20        But I guess putting that aside for the moment, and maybe

21   that's important, but putting it aside for the moment, I guess,

22   Mr. Gibson, I just don't understand.  Looking at the text of

23   the agreement, of the arbitration agreement, it looks like

24   there's a very broad arbitration provision.  It says everything

25   goes to arbitration, but if somebody wants to seek an

1    injunction to enforce a provision of the agreement or prevent a

2    violation of the agreement, they have the option of going to

3    court instead of arbitration.

4        But that's not what you're seeking to do here.  And so it

5    does not seem like your lawsuit here is covered by paragraph

6    16, and, therefore, it seems like the most natural reading of

7    the contract is that your lawsuit is covered by paragraph 17.

8        It's all very weird, I give you that, for the reasons that

9    we discussed with Mr. Patel.  But just looking at the language

10   of the arbitration agreement it seems like this lawsuit is

11   probably covered.  What am I missing?

12       **MR. GIBSON:**  I think that what you're missing or the

13   additional point that we'd like to add here is that the

14   California statute addresses this issue specifically.

15       **THE COURT:**  The issue of whether this dispute is

16   covered by arbitration?

17       **MR. GIBSON:**  The issue of whether the Court has

18   authority to consider the void provision under the law or the

19   statute.

20       **THE COURT:**  Well, wait a minute.  I mean, the

21   preliminary question is who decides it, right?  And you have a

22   contract that seems to say that if you -- if you wish to

23   challenge the validity of the non-compete stuff, you need to do

24   that in arbitration.  That's what this contract seems to say.

25       So you're going to the substantive law to say -- to argue

1  that the Court has the authority to decide whether the

2  non-compete stuff is void.  But that sort of begs the question

3  whether this dispute is covered by the arbitration provision.

4  And if the dispute is covered by the arbitration provision,

5  then it's for the arbitrator to decide whether these

6  non-compete provisions are void under California law, assuming

7  California law applies, right?  I mean, what am I missing?

8          **MR. GIBSON:**  Let me answer your first question.  You

9  asked where the ruling of the arbitrator was.  It is attached

10  as Exhibit H to the response to the motion to dismiss.

11          **THE COURT:**  Okay.  We'll get back to that.

12      But putting that aside for the moment, why -- I mean,

13  there's an arbitration provision and then there's another

14  provision of the contract that you contend is void under

15  California law.  But the first question is who gets to decide

16  the dispute?  And the substantive California law provision

17  regarding non-compete can't invalidate the arbitration

18  agreement, can it?  Is that what you're trying to argue?

19          **MR. GIBSON:**  No, I'm not arguing that.

20          **THE COURT:**  You do agree that the arbitration

21  agreement is valid?

22          **MR. GIBSON:**  I agree that there is an arbitration

23  provision in the agreement.

24          **THE COURT:**  And it's not void -- it's not invalid?

25  You're not arguing that it's invalid, right?

1          **MR. GIBSON:**  I'm not arguing that it's invalid.

2          **THE COURT:**  Okay.

3          **MR. GIBSON:**  I am arguing that under --

4          **THE COURT:**  Just a question of whether this dispute is

5    covered by the arbitration agreement, right?

6          **MR. GIBSON:**  Correct, Your Honor.

7          **THE COURT:**  And then, yeah, so I guess I'm just not

8    understanding why, under the language of the arbitration

9    agreement, why this dispute is not covered by the arbitration

10   agreement.

11         **MR. GIBSON:**  Well, because we're looking at,

12   number one, the agreement Section 17 references either party

13   having the right to go in to court for specific performance

14   or --

15         **THE COURT:**  You mean Section 16?

16         **MR. GIBSON:**  If I got it --

17         **THE COURT:**  The remedy section, right?

18         **MR. GIBSON:**  Okay.  I'm sorry, I don't have the copy

19   right here in front of me.

20         **THE COURT:**  Oh, you should get it in front of you.

21   It's -- that's what this whole case is about.  You should have

22   that in front of you for sure.

23         **MR. GIBSON:**  Okay.  Yes, I had some --

24         **THE COURT:**  Yeah, section -- I think you're referring

25   to Section 16, right?  And it says that:  Accordingly, the

1  parties agree that in the event of a breach or a threatened

2  breach of any provision of this agreement, either party may, in

3  addition to going to arbitration, apply to any court of law or

4  equity of competent jurisdiction for a specific performance

5  and/or injunctive relief.

6      But it specifies what you can go to a court of law or

7  equity for.  And what you can go to a court of law or equity

8  for is -- any party can do it, right?  Either party can do it,

9  but it's for injunctive relief to enforce or prevent any

10  violations of the provisions of the contract.  And you have not

11  filed a lawsuit to enforce or prevent any violations of the

12  provisions of the contract, and so it seems like by its plain

13  language your lawsuit is not covered by Section 16.

14      **MR. GIBSON:**  And, Your Honor, we maintain that the

15  interpretation that the parties -- that WSP seeks to give to

16  the agreement is in fact in violation of law, and that's why we

17  are in the court in front -- on the injunctive relief.

18      **THE COURT:**  Wait a minute, the interpretation that WSP

19  seeks to give to the agreement?

20      **MR. GIBSON:**  Yes.

21      **THE COURT:**  You mean their enforcement, their attempt

22  to enforce the agreement is in violation of California law?

23      **MR. GIBSON:**  Yes.

24      **THE COURT:**  Right.  But that doesn't make you -- your

25  claim covered by -- I mean, that's basically a defense to the

 1    arbitration, right?  That's a defense in the arbitration, but

 2    it's not a basis for circumventing the arbitration provision,

 3    because that's not what Section 16 contemplates.

 4        I mean, let me just try -- I mean, I want to make sure I'm

 5    not -- this is all confusing, so I want to make sure I'm not

 6    missing anything, but I'll give you one more chance to try and

 7    explain it.  How is your lawsuit a lawsuit to enforce or

 8    prevent any violations of the provisions of the contract?

 9        It seems to me that your lawsuit is a lawsuit to prevent a

10    violation of the California statute.  Your lawsuit does not

11    seem like a lawsuit to enforce or prevent any violation of the

12    provisions of this contract.  So if it is, can you explain to

13    me how it is?

14        **MR. GIBSON:**  I think we may just disagree on that,

15    Your Honor.  The terms of the agreement need to be interpreted

16    and consistent with the relevant law, and that's why there is a

17    violation of the provisions of the agreement.

18        **THE COURT:**  The terms are being interpreted in a

19    manner that's contrary to California law?

20        **MR. GIBSON:**  Yes, Your Honor.

21        **THE COURT:**  Okay.  Okay.  So, and if I disagree with

22    you about that, then I deny the motion for a TRO and I grant

23    the motion to dismiss, and you go deal with this in the

24    arbitration?

25        **MR. GIBSON:**  I believe we're entitled to assert the

1   claim in a California court regardless of the arbitration

2   provision, which is why we asserted this claim beforehand.

3       The legislature has specifically granted the rights -- has

4   granted the private right of action, has granted and declared

5   as a fundamental aspect of public policy that this is a void

6   provision.  And I don't think the parties --

7           **THE COURT:**  Right.  When you say this is a void

8   provision, you're not talking about the arbitration provision,

9   you're talking about the non-compete provision, right?

10          **MR. GIBSON:**  Yes, Your Honor, yes.

11          **THE COURT:**  Right.  So are you saying that the -- that

12  this California -- this substantive provision of California law

13  automatically invalidates the arbitration agreement?  I thought

14  you said you weren't contending that the arbitration agreement

15  was invalid.

16          **MR. GIBSON:**  I'm saying that the California statute

17  gives the authority to pursue this claim regardless of the

18  existence of the arbitration provision.

19          **THE COURT:**  So are you saying that if the arbitration

20  provision said -- let's imagine that the arbitration provision

21  was written a little more clearly, okay.  And let's say that it

22  said -- well, I don't know about clearly.  I think it's

23  actually written clearly.  It's just that it's weird, like

24  there's this disconnect between Section 16 and Section 17.

25  It's weird.  And it seems like maybe two different people

```
1   drafted them or something, but, actually, both of them are

2   pretty clear read on their own.

3       But let me just ask the question this way.  If the

4   arbitration provision said any dispute has to go to

5   arbitration, including any dispute about the validity of the

6   non-compete provisions of this agreement, would you contend

7   that California law trumps that -- trumps that provision such

8   that you would be able to pursue this claim in court?

9       MR. GIBSON:  I would, Your Honor.  I don't believe

10  that the parties can contract around a fundamental policy of

11  the --

12      THE COURT:  Well, they're not contracting around the

13  policy.  They've just entered into a contract about who decides

14  the dispute involving the statutory provision, right?

15      MR. GIBSON:  And they are -- they would in essence be

16  contracting around it, because the agreement says we're going

17  to look at New York choice of law on this regardless of where

18  the employee is located, and --

19      THE COURT:  Okay.  Do you have any -- do you have any

20  case law that stands for the proposition that disputes

21  involving Section 16600 may not be subject to arbitration?

22      MR. GIBSON:  I have not researched that issue, Your

23  Honor.  I do not have any authority at this time.

24      THE COURT:  Okay.  All right.

25      Okay.  Now, I want to go back and look at Exhibit H to the
```

UNITED STATES COURT REPORTERS

1  motion to dismiss.

2          MR. GIBSON:  Response to the motion to dismiss, Your

3  Honor.

4          THE COURT:  Response.  Okay.

5      Okay.  So this is the arbitrator's ruling?

6          MR. GIBSON:  Yes.

7          THE COURT:  Okay.  I'm looking at it now.

8      The parties agree that nothing in the arbitration

9  agreement modifies the triple A optional rule --

10          (As read) The parties agree that nothing in the

11      arbitration agreement modifies the triple A optional rules

12      for emergency measures of protection contained in the

13      employment rules.  Respondent Objects to the motion for

14      emergency relief on the basis the parties have not opted

15      into those rules.

16          It is undisputed that the parties have not entered

17      into a special agreement allowing the arbitrator to use

18      the optional rules, and the arbitration clause does not

19      adopt the optional rules.  Instead, the employment

20      agreement allows the parties to seek injunctive relief in

21      aid of arbitration, but that relief is limited to any

22      court of law or equity of competent jurisdiction.

23      So it seems like we have a situation where the arbitration

24  agreement -- I mean, I've just read this quickly, so, you know,

25  take what I'm about to say with a grain of salt.  But it seems

1    like we have a situation where the arbitration agreement

2    contemplates that, as a result of paragraph 16, that you could

3    go to -- you could seek injunctive relief from the arbitrator

4    in addition to seeking injunctive relief from a court to

5    enforce the provisions of the agreement.

6        And we have an arbitration agreement that seems like it

7    doesn't permit the plaintiff to come to court to seek what it's

8    seeking now.  It seems -- an arbitration agreement that seems

9    to cover the claims that the plaintiff is making now.  But we

10   have an arbitrator who has previously ruled that she doesn't

11   have jurisdiction to consider any sort of request for

12   injunctive relief.

13       **MR. GIBSON:**  And, again, the reason she ruled that way

14   is that the optional rules, or, excuse me, the triple A

15   employment rules have a section for the optional rules that

16   allow emergency relief to be considered by an arbitrator.

17       **THE COURT:**  She seems to be saying that that has to

18   be -- that either has to be in the agreement or they have to

19   separately agree to it, otherwise --

20       **MR. GIBSON:**  And that --

21       **THE COURT:**  -- but there has to be an explicit

22   reference to those rules governing emergency relief.

23       **MR. GIBSON:**  Yes.

24       **THE COURT:**  And it's not enough to do what was done in

25   paragraph 16 and 17, which is, you'd say that, you know, this

1    goes to arbitration.  But with respect to a particular type of

2    injunctive relief, the parties have the option of going to

3    court instead of the arbitrator; that even though that's what

4    the contract seems to say, that's not enough to give the

5    arbitrator jurisdiction over any request for injunctive relief.

6        **MR. GIBSON:**  The optional rules specifically state you

7    must either have a specific agreement or adopt the optional

8    rules as part of your arbitration agreement.  Neither one of

9    those existed, so that's why the arbitrator lacked

10   jurisdiction.

11       **THE COURT:**  The optional rules say that you must

12   incorporate the optional rules into the agreement.

13       **MR. GIBSON:**  Yes.

14       **THE COURT:**  It's not enough to just say -- to just

15   have an agreement that gives the arbitrator jurisdiction over

16   all disputes?

17       **MR. GIBSON:**  Correct, Your Honor.  The optional rules

18   specifically require -- they're optional, and so they may or

19   may not --

20       **THE COURT:**  I'm really surprised to hear that there

21   would be such a rule that says -- I mean, you could imagine a

22   court adopting a rule that, you know, unless you specifically

23   say that the arbitrator can do this, you know, we're not going

24   to construe it that way.  I'm surprised that the triple A would

25   have a rule that says even if the language of the contract

1  suggests that the parties intended for all disputes to be

2  subject to arbitration, we're not going to allow you to

3  litigate a request for injunctive relief here unless you

4  explicitly say in your arbitration agreement that the

5  injunctive relief rules are incorporated.

6        MR. GIBSON:  That is specifically what it says, Your

7  Honor.

8        THE COURT:  Are those rules in the record anywhere?

9        MR. GIBSON:  They are not, but I know my argument to

10  the arbitrator was that the language of the rules require that.

11  And, frankly, the optional rules are available on the triple A

12  web site.

13        THE COURT:  All of this makes you wonder why people

14  want to go to arbitration so much.  I mean, it seems like I

15  see -- with some frequency I see, you know, parties getting

16  bollocksed up in problems like this when they go to

17  arbitration, where it would probably be easier to cut through

18  it all and get your dispute resolved more quickly if you just

19  went to a court.

20        MR. GIBSON:  And, Your Honor, one point that may be of

21  interest to you is that the commercial rules have arbitration

22  or, excuse me, have injunctive type rules as part of those, but

23  the employment law rules do not.  And the optional rules are a

24  part of the employment law rules, and this agreement is under

25  the employment law rules.

1          **THE COURT:**  Well, it's so strange.  And to add to the

2     complexity a little bit, we haven't yet talked about the

3     delegation provision in the arbitration agreement, right?

4     Because the delegation provision makes clear, I think, that the

5     arbitrator, and not any court, shall have exclusive authority

6     to resolve any dispute relating to arbitrability, right?

7          So here we have a dispute about whether this is

8     arbitrable, this case is subject to arbitration.  We have a

9     dispute that the defendant says that it is subject to

10    arbitration, and they seem to have a very good argument based

11    on the weird language of the arbitration agreement, and you say

12    that it's not subject to arbitration.

13         And so if I'm just looking at the delegation clause, the

14    answer is, well, the arbitrator has the authority to decide.

15    It's the arbitrator who is supposed to decide whether this

16    dispute is subject to arbitration or not.  So I should send it

17    to the arbitrator for the purpose of deciding arbitrability.

18         But then we have this decision by the arbitrator that

19    seems to reflect an opinion that the arbitrator has no

20    jurisdiction over any request for injunctive relief.  So in a

21    previous ruling she's already answered the question that I'm

22    supposed to -- that has been delegated to her that I would

23    normally need to send to her to decide.

24         **MR. PATEL:**  Can I just jump in for one point of

25    clarification, Your Honor?

1        **THE COURT:**  Yeah.

2        **MR. PATEL:**  You know, first of all, we disagreed that

3 the emergency rules weren't implicitly adopted between 16 and

4 17, but, putting that aside, paragraphs 16 and 17 of the

5 employment agreement.

6      You know, the optional rules relate to emergency measures

7 for protection, right, so interim awards, preliminary

8 injunctions.  They do not relate to all requests for injunctive

9 relief.  That is not excluded, so I just wanted to be clear

10 about that.

11        **THE COURT:**  Okay.

12        **MR. PATEL:**  I don't believe that's what the emergency

13 rules say or require.

14        **THE COURT:**  Okay.  Well, I was using shorthand for --

15 we're on the same page on that.  I was just using injunctive

16 relief as shorthand, but of course here they're seeking a TRO,

17 right?

18        **MR. PATEL:**  Correct, they're akin to a preliminary

19 injunction, yes.

20        **THE COURT:**  Right.

21        **MR. PATEL:**  That was the only point I wanted to just

22 clarify about --

23        **THE COURT:**  Okay.

24        **MR. PATEL:**  -- the scope of the optional rules.

25        **THE COURT:**  I'm just -- I'm left really scratching my

1   head as to what to do here, because it does seem like we have

2   this situation where, A, if you look at the plain language of

3   the contract, it seems like this dispute is covered by the

4   arbitration agreement, right?  B, we have a delegation

5   provision in the arbitration agreement that says if there's a

6   dispute about whether it's arbitrable, you gotta send it to the

7   arbitrator to decide whether it's arbitrable.

8        So like for those two reasons, especially the second

9   reason, I would normally say, all right, TRO denied, motion to

10  dismiss granted, this goes to arbitration, right?  Or motion to

11  compel arbitration -- you called it a motion to dismiss.  I

12  think it's probably better understood as a motion to compel.

13  But in any event, this has to go to the arbitrator to decide

14  arbitrability.

15       But we have this ruling from the arbitrator in a prior

16  motion where she's already said I don't think I have

17  jurisdiction to consider this type of dispute.  So does it

18  really make sense to send it to her to decide arbitrability?

19       **MR. PATEL:**  Well, Your Honor, but the dispute that she

20  had before her was not one that falls within the optionality of

21  16(b), right?  This isn't a dispute about to enforce or prevent

22  any violation, so...

23       **THE COURT:**  You're saying that she -- but her

24  rationale -- again, I read the ruling quickly, but her

25  rationale seems to be not limited to requests for injunctive

1    relief that are to enforce the provisions of the contract.  She

2    seems to be saying I don't have authority to consider emergency

3    motions, period, because these optional rules weren't

4    incorporated into the arbitration agreement.

5        So doesn't that rationale apply equally to this TRO that

6    the plaintiffs are seeking?

7        **MR. PATEL:**  I don't think it should be read that

8    broadly, because I think what she really ruled is that she

9    didn't have authority to hear an emergency motion to enforce

10   the provisions of the contract.

11       She was not faced with, because it was not raised, the

12   question of whether or not she has authority to rule on an

13   emergency application for what is essentially a declaration

14   that the contract is void.  And that is something we think that

15   can and properly should be litigated by way of defense and a

16   request for a permanent injunction in the arbitration.

17       **THE COURT:**  By way of defense.  But, I mean, it can't

18   be that when an employee is trying to compete, right, and they

19   contend that the law allows them to compete, and the employer

20   or the former employer is trying to prevent them from

21   competing, it can't be that in all circumstances the employee

22   is limited to asserting it as a defense, right, asserting the

23   statutory protection as a defense.

24       I mean, an employee at least in some circumstances has to

25   be able to seek emergency relief that might be necessary to

```
 1   permit them to compete in the way that they believe the law
 2   permits them to do; don't you agree?
 3           MR. PATEL:  Well, yeah, he could have filed -- in a
 4   sense that Mr. Coon could have filed an arbitration demand,
 5   sought emergency relief by way of an affirmative claim, right,
 6   and it would have been a dispute arising between him and the
 7   company regarding a statute, right, under the statute.
 8           THE COURT:  But if he -- but if he had sought
 9   emergency relief in that fashion, in the arbitration, wouldn't
10   the arbitrator have just said, excuse me, didn't you read my
11   prior ruling from when the defendants sought an injunction and
12   I said I don't have the authority to entertain requests for
13   emergency relief?
14           MR. PATEL:  Well, I don't believe so, for one, Your
15   Honor, because we wouldn't have opposed the arbitrator's
16   authority in that situation, right?
17       This was -- what Arbitrator Heckman dealt with was an
18   opposed request for emergency relief based on a claim that at
19   least arguably fits within the exception, the narrow exception
20   that's found in Section 16, so I think that's where there's a
21   distinction.
22           THE COURT:  Yeah, but she didn't say -- I mean, I
23   don't think she said I'm not allowed to consider a request for
24   emergency relief because Section 16 doesn't allow me to.  It
25   doesn't seem like that's what she said, nor I think could she
```

 1    say it based on the language of Section 16, right?

 2        I mean, Section 16, as you've pointed out, makes pretty

 3    clear that you can go to court to seek emergency relief as a

 4    supplementary matter, right?  She's saying I don't have

 5    authority to issue emergency relief because the parties never

 6    agreed that I could issue emergency relief, and so you gotta go

 7    to court for that, and it seems like that would apply equally

 8    to this lawsuit.

 9             MR. GIBSON:  And, Your Honor, that's, in fact, what

10    WSP did.  After the arbitrator ruled that she had no

11    jurisdiction, they filed a claim in the Northern District of

12    New York, which the Court twice *sua sponte* ruled that that

13    matter needed to be heard here in this proceeding.

14             THE COURT:  Just because this was the first case

15    filed?

16             MR. GIBSON:  Because it was --

17             THE COURT:  The Court didn't rule that it was not

18    covered by arbitration.  The Court just ruled that the first

19    case was filed here, and so it takes --

20             MR. GIBSON:  Yes.

21             THE COURT:  -- it takes priority over the New York

22    court lawsuit, right?

23             MR. GIBSON:  Yes, Your Honor.

24             THE COURT:  Yeah, okay.

25             MR. PATEL:  We, just for the record, Your Honor, we

1    disagreed with that decision, and, you know, we're considering

2    next steps with respect to voicing our disagreement, so...

3              **MR. GIBBONS:**  They disagree that --

4         **THE COURT:**  There's a lot of room for you to disagree

5    with in this case so far.  I wonder if your client is

6    regretting having an arbitration provision at all.

7              **MR. PATEL:**  No comment, Your Honor.

8         **THE COURT:**  So, so strange.  This is very strange.  I

9    don't really know what to make of it.

10        I suppose -- I mean, I'm really just thinking out loud

11   here, but, I mean, you could -- there's sort of, I guess, a

12   technical way to look at it and a practical way to look at it.

13        The technical way to look at it, the language-based way to

14   look at it would be to say, well, there's this delegation

15   provision, and the delegation provision makes clear that the,

16   you know, arbitrator is the one to decide whether this dispute

17   is subject to arbitration.  The arbitrator has not decided

18   whether this dispute is subject to arbitration, and so we

19   should send it to the arbitrator so that she can decide in the

20   first instance whether this dispute is subject to arbitration.

21   And if she decides that it's not, then, you know, I wouldn't

22   dismiss the case; I would stay it, I guess, to give her a

23   chance to make that decision.

24        And then if she -- if she concludes, as she may well do,

25   that, you know, the request for emergency relief is not subject

1    to arbitration, then you file a motion to lift the stay, and

2    you file a renewed request for emergency relief.  That's one

3    way to -- that's sort of, I guess, the technical and the

4    textual way to approach it.

5         The more practical way to approach it is to say, well,

6    there's this delegation provision, but the arbitrator has

7    already weighed in on the issue.  And the arbitrator has

8    already issue a ruling within the context of this dispute, a

9    separate motion for emergency relief by the other side, but

10   she's already issued a ruling within the context of this

11   dispute that a dispute -- that an emergency application like

12   this is not subject to arbitration.

13        And so motion to compel denied, and then we decide whether

14   to grant the TRO and get into the other, you know, the

15   likelihood of success and the balance of hardships and all that

16   stuff.

17        Anybody else have anything to say before we wrap up and I

18   think about this some more?

19        **MR. KADOURA:**  Your Honor, yeah, I do, if I may, on

20   sort of the practical side of things.

21        **THE COURT:**  Mr. Kadoura, can you remind me again of

22   whose side you're on?  I forgot.

23        **MR. KADOURA:**  I am with Holland & Knight on behalf of

24   WSP.

25        **THE COURT:**  Thanks.

 1          **MR. KADOURA:**  So relating to the more practical aspect

 2     of this.  If -- I mean, you alluded before that, you know, it's

 3     strange that there may be a claim that sort of fell between the

 4     cracks of what you can and cannot get preliminary relief for.

 5     But if he were -- if Mr. Coon were to bring this claim in the

 6     arbitration as a defense, he would not need relief prior to a

 7     ruling from the arbitrator on his defense.  The arbitrator

 8     wouldn't be enforcing our restrictive covenants prior to that.

 9          So it's -- as a practical matter, whether or not he needs

10     preliminary injunctive relief is sort of -- it sort of takes

11     care of itself.

12          **THE COURT:**  But that goes to the -- that goes to the

13     question of whether this truly is an emergency, in other words.

14          **MR. KADOURA:**  Correct.

15          **THE COURT:**  That it's not irreparable harm --

16          Yeah, I mean, it's a good point that you make, because

17     when you read the motion for a TRO, you're left wondering what

18     precisely the temporary restraining order would say if it were

19     granted, right?

20          What is the plaintiff or what are the plaintiffs asking me

21     to prevent?  Are they asking me to enjoin the arbitration?  Are

22     they asking me to -- you know, I don't know.  Thank you for

23     saying that because it reminded me that I was going to ask

24     Mr. Gibson that question.

25          If you could -- you didn't submit, if I recall correctly,

 1  you did not submit a proposed order granting the TRO, right?

 2          **MR. GIBSON:**  I thought we did in the state court, Your

 3  Honor.

 4          **THE COURT:**  Okay.  Well, in any event, from reading

 5  your motion, right, it says -- let me go to the intro, for

 6  example.

 7              (As read) The restrictive covenants violate

 8          California law and policy.  Fundamental rights of

 9          plaintiffs will be violated by any enforcement of the

10          restrictive covenants.  Therefore, the Court should issue

11          a temporary restraining order to prevent a multiplicity of

12          actions and irreparable harm from occurring.

13      That's what the motion says.  I have no idea what that

14  means, right?

15      And then you say:  The Court should grant the temporary

16  restraining -- I'm reading from the conclusion now.

17              (As read) The Court should grant the temporary

18          restraining order and preliminary injunction enjoining

19          defendants from enforcing the restrictive covenants in the

20          agreement anywhere in the United States, because otherwise

21          plaintiff shall suffer irreparable harm during the course

22          of this litigation in which they are likely to prevail.

23      Well, again, I don't know exactly what that means:  Enjoin

24  the defendants from doing what, from taking this to

25  arbitration?  Are you trying to enjoin the arbitration from

 1   happening?

 2          **MR. GIBSON:**  We're trying to enjoin enforcement of the

 3   provision -- of the provisions, yes, Your Honor.

 4          **THE COURT:**  Okay.  So in other words, you're seeking

 5   to enjoin the arbitration?

 6          **MR. GIBSON:**  Yes.

 7          **THE COURT:**  Okay.  So the TRO, if I issue a TRO, it

 8   should say:  The defendants are enjoined from pursuing the

 9   arbitration to enforce the non-compete provisions of the

10   contract.

11          **MR. GIBSON:**  I think, more broadly, it would say:

12   Defendants are enjoined from seeking to enforce the provisions

13   of the restrictive covenants in any forum.

14          **THE COURT:**  Okay.  But while they are seeking to

15   enforce the restrictive covenants in arbitration, what harm is

16   befalling your clients?

17          **MR. GIBSON:**  Number one, he is sitting -- he is

18   sitting on the sideline.  He cannot proceed, because he does

19   not -- he has not competed.  He is sitting on the sideline

20   waiting, and they are gaining a *de facto* injunction simply

21   because he wishes to get court ruling before he proceeds.

22          **THE COURT:**  Well, but that's his choice, right?  I

23   mean, if he believes that California law entitles him to do

24   this --

25          And by the way, I'll say -- I mean, I don't think we need

1   to get into it now -- I do have some real questions about

2   whether California law applies to this situation, but I

3   haven't, you know, I haven't dived into that question as deeply

4   as the arbitration question.

5        But in any event, if he really believes that California

6   law entitles him to be doing this, then he can do it, right?

7   And if they win in arbitration, then he'll owe them damages,

8   right?

9        **MR. GIBSON:**  Perhaps, yes.

10       **THE COURT:**  So why do you need -- why do you need an

11  injunction to prevent them from enforcing the provisions?

12       **MR. GIBSON:**  Because California law specifically

13  grants him the right to pursue injunctive relief under

14  Section 16600.5E, where he has that right to pursue the

15  injunctive relief.

16       **THE COURT:**  Right.  But we have a -- we're in -- we're

17  in federal court and we have a federal test for whether a

18  preliminary injunction should issue, and you have to show

19  likelihood of success on the merits --

20       **MR. GIBSON:**  Understood.

21       **THE COURT:**  -- you have to show irreparable harm.

22       **MR. GIBSON:**  Yes.

23       **THE COURT:**  And you have to evaluate the balance of

24  the hardships, right?

25       So in terms of irreparable harm and balance of hardships,

1  why -- I mean, if he has the ability to go out and compete,

2  and, you know, thinks he's going to win on the merits at the

3  end of the day, why is -- what's the irreparable harm?

4       **MR. GIBSON:**  The harm is that he is unable to pursue

5  that at this point in time.  He has -- he's entitled to the

6  right to the injunction and the showing of irreparable harm.

7  We look at what is the difference between -- well, let me back

8  up.

9       There was irreparable harm in the fact that this is a

10  fundamental right that is granted to him.

11       **THE COURT:**  A fundamental right?

12       **MR. GIBSON:**  Yes, under California law.

13       **THE COURT:**  Okay.  But, you know, let me just -- let

14  me just try to think of a hypothetical example to illustrate

15  the question that I have.

16       Let's say I have a lemonade stand outside my house, and

17  I'm selling lemonade and I'm making money off the lemonade,

18  right?  And there's somebody else down the block who has a

19  lemonade stand, right, and they sue me.  They sue and they say

20  that my -- you know, I'm infringing on their lemonade

21  territory, right?  And I say that's ridiculous, I can sell

22  lemonade outside my house.  And if you want to sue me, go ahead

23  and sue me, but I'm going to keep selling the lemonade.  I'm

24  going to keep making my money.  And, hey, if you're right, in

25  the unlikely event that you turn out to be right, that I'm

1  violating the law by selling lemonade outside my house, then

2  I'll pay you the money, right?  I'll pay you damages, but

3  you're not going to stop me from selling lemonade outside my

4  house, right?

5       So what you seem to be saying in this case is, look, my

6  client has the right to go out and compete.  It's a fundamental

7  right under California law to go out and compete.  But they say

8  I can't, and they've initiated this arbitration, you know, to

9  enforce the provisions of their contract.  Let them do that,

10 but I'm going to keep competing because I have the right to do

11 so.

12      So what's the irreparable harm?  Like why is it that their

13 initiation of the arbitration prevents your client from doing

14 the stuff that he wants to do?

15      **MR. GIBSON:**  I guess it comes back to the -- how do I

16 want to say this?

17      **THE COURT:**  It almost seems like a request for

18 declaratory relief as opposed to a request for emergency

19 relief.  Like you want a declaration --

20      **MR. GIBSON:**  We do have --

21      **THE COURT:**  You want a declaration that you have the

22 right to do this, but it's -- is it really an emergency that

23 you need a ruling from a court on whether your clients have the

24 right to do this?

25      **MR. GIBSON:**  That is one of the avenues of relief that

**UNITED STATES COURT REPORTERS**

 1  we do seek in the complaint, which again was filed -- we

 2  submitted it January 1st.  It wasn't filed until January 2nd,

 3  so this --

 4          THE COURT:  You mean in state court?

 5          MR. GIBSON:  In state court.

 6          THE COURT:  Yeah, but that's your fault.  You needed

 7  to -- when it came up to federal court, you needed to re-notice

 8  the motion for a TRO.  It's not -- the delay is -- the delay is

 9  your fault.

10          MR. GIBSON:  Well, no, we were in communication with

11  the court, Your Honor.

12          THE COURT:  Right.  But you need to re-notice your TRO

13  motion when it gets removed to federal court.  You can't just

14  wait for the federal court to rule on it, so...

15          MR. GIBSON:  Well, I'm not faulting anyone.  We were

16  in communication with the court and understood that we had done

17  what we needed to do.

18          THE COURT:  Okay.

19          MR. GIBSON:  But the key is we filed -- these two

20  matters had been pending both since January 2nd.

21          THE COURT:  How long does it take the arbitrator?  I

22  mean, I thought arbitration was supposed to be like really fast

23  and inexpensive, and stuff like that, right?  How long is it

24  going to take the arbitrator to rule on whether you have this

25  defense under California law?

```
1           MR. GIBSON:  I don't know that we have an arbitrator
2    appointed yet.  I know that we addressed selections regarding
3    arbitrators, but I have not seen a notice appointing an
4    arbitrator yet.
5           THE COURT:  Wait a minute, but what about this -- but
6    this -- we have a ruling from an arbitrator.
7           MR. GIBSON:  She was the emergency arbitrator, the
8    arbitrator appointed that considered the emergency ruling that
9    WSP filed.
10          THE COURT:  Okay.  So you when was this arbitration
11   filed?
12          MR. GIBSON:  January 2nd.
13          THE COURT:  January 2nd.  And it's February 21st now,
14   or something like that, and you still don't have an arbitrator
15   selected?
16          MR. PATEL:  It actually just happened, Your Honor,
17   while we were on the phone.  I got a notice that David Singer
18   has been appointed as the arbitrator, so I imagine there will
19   be a preliminary hearing call shortly.
20          MR. GIBSON:  That's news to all of us.  Thank you.
21          THE COURT:  And how -- again, forgive my ignorance for
22   how arbitration works.  I mean, I just -- I keep, you know, we
23   always hear, you know, courts and businesses often in tone to
24   how fast it is and how cheap it is, and all that kind of stuff.
25   So how soon can you get this dispute teed up in arbitration?
```

1          **MR. PATEL:**  From our perspective, we'll be asking for

2   a pretty aggressive scheduling order.

3          **THE COURT:**  I mean, it's a purely legal question,

4   whether California law applies and, if so, whether it applies

5   to invalidate these non-compete provisions, right?

6          **MR. PATEL:**  Well, but that's just part of what would

7   be litigated in the arbitration.  You'd have our affirmative

8   claims which would also be litigated.  I mean, you know, I

9   understand Mr. Coon's representations --

10          **THE COURT:**  Yeah, but if the provisions are invalid,

11   that's the end of the matter, right?  I mean, you ought to be

12   able to tee that up really quickly.

13          **MR. PATEL:**  Well, yeah, and they're free to seek, you

14   know, the arbitrator's permission to file a dispositive motion

15   on that issue.  I believe that's what the rules permit, and

16   that's something that, you know, would be up to the

17   arbitrator's discretion, from a timing standpoint, on when that

18   briefing can be heard and when it will be decided.

19       Typically, Your Honor, arbitrators like to have hearings,

20   right?  They like to have a multi-day hearing, and I won't

21   comment on --

22          **THE COURT:**  Because they get paid by the hour, right?

23          **MR. PATEL:**  Well, exactly.  I was just going to say

24   I'm not going to comment on financial incentives.  But that is

25   my experience, is that arbitrators like to have hearings after

1   some limited discovery.  And we'll have a little mini trial,

2   basically, mini bench trial.

3        THE COURT:  Right.  But, I mean, if the arbitrator is,

4   you know, interested in doing justice, they would find a way to

5   adjudicate this legal question quite quickly, right?

6        MR. PATEL:  Well, I think that's up to Mr. Gibson to

7   file a dispositive motion or request for leave to file a

8   dispositive motion in the arbitration.

9        From our perspective, Your Honor, California law has

10  nothing to do with this case or this employment agreement,

11  right?  This is something that they have essentially --

12       THE COURT:  Yeah, I mean, I don't know, because I

13  haven't, like I said, I haven't dived into, you know, the

14  evidence regarding the, you know, authenticity of the

15  connection to California, and all of that stuff.  I haven't

16  really dived into that.

17       MR. PATEL:  Sure.

18       THE COURT:  Okay.  All right.  I'm going to think

19  about this a little more.

20       MR. PATEL:  Your Honor --

21       THE COURT:  I can't imagine -- I mean, I can't imagine

22  there's another case out there like this where, you know, like

23  I said, on the one hand, you know, the arbitration provision

24  seems to compel a conclusion that it has to go to the

25  arbitrator at a minimum to decide arbitrability, and on the

1   other hand the arbitrator has issued a ruling that seems to

2   preclude arbitrability in a different motion.  Very strange.

3       All right.  Somebody else was trying to say something, and

4   then we'll wrap up.

5           **MR. PATEL:**  Your Honor, just two quick points before

6   we wrap up, with your permission.

7       You know, just first, we're hearing today from Mr. Gibson

8   that they're actually seeking an injunction that would enjoin

9   the arbitration proceeding from happening, I just heard that.

10      And, Your Honor, respectfully, that argument has -- that

11  ship has sailed.  They've waived the right to seek an

12  injunction enjoining the arbitration from proceeding.  They've

13  actively participated in the arbitration process by

14  selecting -- making arbitrator selections, and they have not

15  objected to the arbitration proceeding.  So we think that

16  issue -- that point has been waived.

17      And then Mr. Kadoura wanted to make a quick point, which

18  is, you know, I think I'll just try to summarize it for

19  efficiency sake, which is that he can't succeed on the merits

20  here because even if the preliminary injunction request is not

21  arbitrable, the ultimate merits issue is, and the arbitration

22  clause clearly, you know, it falls clearly within the scope of

23  the arbitration provision in paragraph 17.

24          **MR. GIBSON:**  And, Your Honor, we would disagree with

25  that, because, obviously, if the Court grants the injunctive

```
 1  relief that we seek, that the agreement is unenforceable, then
 2  there would be no ruling in favor of --
 3          THE COURT:  But that's not a preliminary injunction.
 4  That's a permanent injunction.
 5          MR. GIBSON:  Understood.
 6          THE COURT:  Or that's a declaratory ruling.  I mean,
 7  right now you're seeking a TRO.  But, again, I don't exactly
 8  know what it is that you're, you know, what relief you're
 9  seeking by way of TRO.
10      It seems like what you have really done is not -- you're
11  not really seeking a temporary restraining order or a
12  preliminary injunction, which, after all, is the purpose of
13  which is to preserve the status quo while the litigation is
14  pending.  What it seems like you are requesting is an emergency
15  permanent injunction to enjoin the enforcement of these
16  provisions.
17          MR. GIBSON:  And I don't know that we're asking for an
18  emergency permanent injunction.
19          THE COURT:  Well, you're asking me to enjoin the
20  arbitration.
21          MR. GIBSON:  Well, the net effect is that if the
22  agreement -- if the Court were to determine that the agreement
23  was void, as we believe it is, then there would be -- I don't
24  know what discovery, what additional hearings, what additional
25  evidence could be had to address whether the void condition of
```

1  the agreement remains --

2       **THE COURT:**  But I can't determine that the agreement

3  is void in the context of a temporary restraining order or a

4  preliminary injunction, right?  I can't do that.

5       **MR. GIBSON:**  You can determine that there's a

6  likelihood of success given the statement of voidability --

7       **THE COURT:**  And, therefore, therefore I would enjoin

8  the arbitration --

9       **MR. GIBSON:**  Yes.

10      **THE COURT:**  -- and then adjudicate the matter on the

11  merits myself, even though, even though adjudication of the

12  matter on the merits -- I mean, say what you want about the

13  preliminary injunction motion, but an adjudication of the

14  matter on the merits is designated by the agreement to the

15  arbitrator.

16      **MR. GIBSON:**  And I think at the end of the day, and in

17  concluding the litigation that we have here, we would need to

18  have a final -- we would need to present that issue to the

19  Court in a manner -- in an appropriate manner by way of a

20  motion for summary judgment, for example, and have the Court

21  rule on that as the final determination.

22      So I think as a practical matter, a ruling granting the

23  preliminary injunction would have the practical effect of

24  leading to that conclusion.  It would not be a judicial finding

25  at this point in time, a final --

1          **THE COURT:**  All right.  I think I get what you're

2   trying to do.

3      All right.  I'll think about it a little more and issue a

4   ruling.  Thank you.

5          **MR. PATEL:**  Thank you, Your Honor.

6          **MS. GIBSON:**  Thank you, Your Honor.

7           (Proceedings adjourned at 11:12 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      CERTIFICATE OF REPORTER

2          I certify that the foregoing is a correct transcript

3  from the record of proceedings in the above-entitled matter.

4

5  Dated:  February 28, 2024

6

7

8

9

10

11  _____

12       Rhonda L. Aquilina, CSR #9956, RMR, CRR, CRC
             U.S. Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25